

February 2, 2018

**VIA FEDERAL EXPRESS**

The Honorable Lewis A. Kaplan
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 5 2018

Re:   *Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.)

Dear Judge Kaplan:

Consistent with Your Honor's remarks at the January 23, 2018 hearing, Plaintiffs believe that Defendants' affirmative defense of capacity to sue (assuming it has not already been waived)[1] is best suited for resolution after the Court rules on Defendants' pending motions to dismiss. *See* Jan. 23, 2018 Hr'g Tr. at 4:21-22 ("[Y]ou may want to see how this all comes out before going forward with any more litigation on that issue.").

Further, because Defendants' capacity to sue objections deny the allegations of the Amended Class Action Complaint [ECF No. 63] ("Complaint"), and are grounded in counterfactual attacks on the validity, scope, and meaning of Plaintiffs' Assignments,[2] these arguments (like other affirmative defenses) are not ripe for adjudication on a Rule 12 motion. *See* Def. Supp. Br., ECF No. 186, at 1 n.2 (citing *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965) ("Although the defense of lack of capacity is not expressly mentioned in rule 12(b), the practice has grown up of examining it by a 12(b)(6) motion *when the defect appears upon the face of the complaint*.") (emphasis added); *see also Ainie v. Sun Taiyang Co., Ltd.*, 978 F. Supp. 533, 539 n.31 (S.D.N.Y. 1997) (Kaplan, J.) (collecting cases where capacity to sue objections are pleaded as an affirmative defense).

Defendants must point to a capacity defect that "appears on the face of the complaint" to have their objection considered on a motion to dismiss. *Klebanow*, 344 F.2d at 296, n.1. However, because none exists, Defendants go beyond the pleading to manufacture one, arguing that FrontPoint and Sonterra lack capacity to sue as dissolved entities. *See* Def. Supp. Br., at 2-4. This is

---

[1] *See* Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1559 (3d ed. 2014) ("A party who wishes to raise an issue as to capacity must do so by specific denial, and since it is a threshold defense, somewhat analogous to lack of personal jurisdiction or improper venue, it should be considered waived under Rule 12(h)(1) if not raised by a preliminary motion before trial.").

[2] *See* Declaration of Geoffrey M. Horn, Ex. A ("Sonterra Assignment"); Ex. B ("Frontpoint Assignment") (collectively, the "Assignments").

www.lowey.com
44 South Broadway, Suite 1100, White Plains, NY 10601-4459 (p) 914-997-0500 (f) 914-997-0035
Four Tower Bridge, 200 Barr Harbor Drive, Suite 400, West Conshohocken, PA 19428-2977 (p) 610-941-2760 (f) 610-862-9777



not a facial deficiency because, as detailed in Plaintiffs' supplemental opposition, Fund Liquidation Holdings, LLC ("FLH") correctly filed this action in FrontPoint's and Sonterra's names.

Prior to dissolution, FrontPoint and Sonterra entered valid Assignments transferring all claims arising out of certain transactions in financial instruments to FLH. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (holding that "to make a valid assignment, the owner must manifest an intention to make the assignee the owner of the claim . . . [and] accomplish a completed transfer of the entire interest of the assignor in the particular subject of the assignment"). The Assignments included claims relating to the BBSW-based swaps and foreign exchange forwards alleged in the Complaint. *See* ¶¶ 286-94 (Sonterra); ¶¶ 294-99 (FrontPoint).

In addition, FrontPoint and Sonterra entered powers of attorney (governed by New York law) with FLH granting it the "right, power, and authority," among other powers, to act in FrontPoint's and Sonterra's "name, place and stead, with respect to any of the Claims" governed by the Assignments. *See* Sonterra Assignment at 7; FrontPoint Assignment at 7-8. Each of the powers of attorney were structured in a way that they would survive the dissolution of FrontPoint and Sonterra. *See id.* ("The foregoing power of attorney is coupled with an interest and may not be terminated or revoked by such Seller at any time."); *see also Hunt v. Rousmanier's Adm'rs*, 21 U.S. 174, 204-6 (1823) ("The general rule, that a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an 'interest,' it survives the person giving it, and may be executed after his death."); *Steinbeck v. McIntosh & Otis, Inc.*, No. 04-cv-5497, 2009 WL 928171, at *3 (S.D.N.Y. Mar. 31, 2009) (citing Restatement (Third), Agency § 3.12(1)). Thus, FLH had the authority to file this action in the "name, place and stead" of FrontPoint and Sonterra even after they dissolved. In fact, Cayman law mandated that FLH sue in the name of FrontPoint and Sonterra. *See* Declaration of Laura Hatfield at ¶¶ 24-25 ("[A]n agent acting under a power of attorney should, as a general rule, act in the name of the principal. If he is authorised to sue on the principal's behalf, the claim should be brought in the principal's name.").[3]

Defendants have not identified a single case which prohibits FLH from acting in accordance with the Assignments and powers of attorney as described above. Only after Plaintiffs demonstrated that FrontPoint and Sonterra had (prior to their dissolution) properly assigned their claims to FLH, and that FLH had properly sued in FrontPoint's and Sonterra's names, did the Defendants create counterfactual attacks on the validity, scope, and meaning of the Assignments and powers of attorney. *See* Def. Supp. Reply at 2-7. Because Defendants' counterfactual attacks are grounded in their self-serving interpretations of the Assignments and powers of attorney, they are not appropriate for resolution on a motion to dismiss. *See trueEx, LLC v. MarkitSERV Limited*, 266 F. Supp. 3d, 705, 722 (S.D.N.Y. 2017) (Kaplan, J.) (explaining that contractual interpretation "ultimately is a question of fact for trial."). To the extent Defendants choose to attack the validity of

---

[3] Defendants incorrectly sidestep the broad powers and rights conferred to FLH by the Assignments and powers of attorney, relying instead on unremarkable cases holding that dissolved entities lack capacity to sue or be sued. *See, e.g., New Asia Enters. Ltd. v. Fabrique, Ltd.*, No. 13 Civ. 5271 (JFK), 2017 WL 384687 (S.D.N.Y. Jan. 26, 2017) (dissolved Hong Kong corporation could not "sue or do any other legal act" under Hong Kong law.).



the Assignments or offer a competing interpretation, they can do so at summary judgment. *See Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 360 (S.D.N.Y. 2015) ("To the extent discovery reveals that the assignment of rights was somehow ineffective, defendants may pursue this argument on summary judgment").

An example of one of the many counterfactual arguments that are inappropriate for resolution now, is Defendants' claim that the Assignments only transfer certain "Recovery Rights," *i.e.*, the right to participate in settlements reached by other investors, and not the power to file new cases. *See* Def. Supp. Reply at 2-3. However, this is directly rebutted by the express terms of the Assignments, which define "Recovery Rights" as:

> "all monetary, legal, and other rights accruing to the applicable Seller in respect of such Claims, *including, without limitation*, the aggregate amount which a Seller is, or may become, entitled to receive pursuant to any Settlement and/or Judgment in connection with such Claim." Sonterra Assignment, at 3; FrontPoint Assignment, at 4 (emphasis added).

The use of "without limitation" here is dispositive: filing claims or collecting payments are only some of the rights that FLH acquired from the Assignments. *See Princeton Digital Image Corp. v. Hewlett-Packard Co.*, No. 12-cv-779 (RJS), 2015 WL 1408754 at *7 (S.D.N.Y. Mar. 16, 2015) (explaining that "use of the word 'includes' or 'including' in a sentence 'makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive.'") (citations omitted). In short, the Assignments do not prohibit FLH from initiating a lawsuit. Accepting Defendants' interpretation would impose a restriction that would improperly rewrite the Assignments and frustrate the parties' intent. *See Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 201 (S.D.N.Y. 1997) (Kaplan, J.) (explaining that contract interpretation examines "the objective manifestations of the parties' intentions.").

Defendants' last-ditch attempt to create an Article III standing issue should be rejected. It is well established that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Natural Resources v. Stevens*, 529 U.S. 765, 775 (2000); *see also Ct. v. Physicians Health Services of Ct. Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) (explaining that the assignee "stands in the assignor's stead with respect to both injury and remedy.").[4] Thus FLH, as assignee, has standing to bring this action and correctly filed suit in FrontPoint's and Sonterra's names.

\* \* \*

---

[4] Unlike FLH, plaintiffs in Defendants' standing cases did not own the claims they sued on. *See Valdin Invs. Corp v. Oxbridge Capital Mgmt., LLC*, 651 Fed. App'x 5, 7 (2d Cir. 2016) (finding that plaintiff could not enforce rights in "Settlement Orders" that it assigned to a third-party); *Cortland St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418 (2d Cir. 2015) (finding plaintiff lacked standing for a claim it was not assigned).



The Honorable Lewis A. Kaplan
February 2, 2018
Page 4

Respectfully Submitted,

_____　　　　　_____
Vincent Briganti　　　　　　　　　　　Christopher Lovell

cc: Counsel of Record (via email)