# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD DENNIS, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., AND FRONTPOINT FINANCIAL HORIZONS FUND, L.P., on behalf of themselves and all others similarly situated, | Docket No. 16-cv-06496 (LAK) |
| Plaintiffs, | |
| -against- | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE BANK, N.A. AUSTRALIA BRANCH, BNP PARIBAS, S.A., BNP PARIBAS, AUSTRALIA BRANCH, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS N.V., RBS GROUP (AUSTRALIA) PTY LIMITED, UBS AG, UBS AG, AUSTRALIA BRANCH, AUSTRALIA AND NEW ZEALAND BANKING GROUP LTD., COMMONWEALTH BANK OF AUSTRALIA, NATIONAL AUSTRALIA BANK LIMITED, WESTPAC BANKING CORPORATION, DEUTSCHE BANK AG, DEUTSCHE BANK AG, AUSTRALIA BRANCH, HSBC HOLDINGS PLC, HSBC BANK AUSTRALIA LIMITED, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, LLOYDS TSB BANK PLC, AUSTRALIA, MACQUARIE GROUP LTD., MACQUARIE BANK LTD., ROYAL BANK OF CANADA, RBC CAPITAL MARKETS LLC, ROYAL BANK OF CANADA, AUSTRALIA BRANCH, MORGAN STANLEY, MORGAN STANLEY AUSTRALIA LIMITED, CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, ICAP PLC, ICAP AUSTRALIA PTY LTD., TULLETT PREBON PLC, TULLETT PREBON (AUSTRALIA) PTY LTD., AND JOHN DOES NOS. 1-50. | **STIPULATION AND AGREEMENT OF SETTLEMENT AS TO DEFENDANTS JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.** |
| Defendants. | |

**TABLE OF CONTENTS**

1.    TERMS USED IN THIS AGREEMENT ........................................................ 3

2.    SETTLEMENT CLASS .......................................................................... 11

3.    SETTLEMENT PAYMENT ..................................................................... 12

4.    JPMORGAN'S COOPERATION ............................................................. 13

5.    PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPLICATION FOR INCENTIVE AWARD ..................................... 20

6.    APPLICATION FOR APPROVAL OF FEES, EXPENSES, AND COSTS OF SETTLEMENT FUND ADMINISTRATION ............................................. 23

7.    NO LIABILITY FOR FEES AND EXPENSES OF PLAINTIFFS' COUNSEL ........... 23

8.    DISTRIBUTION OF AND/OR DISBURSEMENTS FROM SETTLEMENT FUND ... 23

9.    DISBURSEMENTS PRIOR TO EFFECTIVE DATE .................................... 24

10.   DISTRIBUTION OF BALANCES REMAINING IN NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS ................................................................. 25

11.   ADMINISTRATION/MAINTENANCE OF SETTLEMENT FUND .................. 26

12.   RELEASE AND COVENANT NOT TO SUE .............................................. 27

13.   MOTION FOR CONDITIONAL CERTIFICATION .................................... 29

14.   CLASS NOTICE ................................................................................. 30

15.   PUBLICATION ................................................................................... 32

16.   MOTION FOR FINAL APPROVAL AND ENTRY OF FINAL JUDGMENT ........... 32

17.   BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT ............................ 34

18.   EFFECTIVE DATE .............................................................................. 34

19.   OCCURRENCE OF EFFECTIVE DATE ................................................... 35

20.   FAILURE OF EFFECTIVE DATE TO OCCUR .......................................... 35

21.   TERMINATION .................................................................................. 35

22.   EFFECT OF TERMINATION ................................................................ 37

23.   SUPPLEMENTAL AGREEMENT ........................................................... 39

24.   IMPACT OF ANY OTHER SETTLEMENT ............................................... 39

25.   CONFIDENTIALITY PROTECTION ....................................................... 40

26.   BINDING EFFECT .............................................................................. 40

27.   INTEGRATED AGREEMENT ................................................................ 41

28.   NO CONFLICT INTENDED .................................................................. 41

29.   NO PARTY IS THE DRAFTER .............................................................. 42

30.   CHOICE OF LAW ................................................................................................ 42
31.   EXECUTION IN COUNTERPARTS .................................................................... 42
32.   SUBMISSION TO AND RETENTION OF JURISDICTION .................................. 42
33.   CONTRIBUTION AND INDEMNIFICATION ...................................................... 43
34.   RESERVATION OF RIGHTS .............................................................................. 43
35.   NOTICES ............................................................................................................ 43
36.   AUTHORITY ...................................................................................................... 44
37.   DISPUTES OR CONTROVERSIES ...................................................................... 44
38.   STAY .................................................................................................................. 46

## STIPULATION AND AGREEMENT OF SETTLEMENT AS TO DEFENDANTS JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the **"Settlement Agreement"**) is made and entered into on November 20, 2018. This Settlement Agreement is entered into on behalf of Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and Fund Liquidation Holdings, LLC, and any subsequently named plaintiff(s) (collectively, the "Representative Plaintiffs", as defined in Section 1(JJ) herein), and the Settlement Class (as defined in Section 1(H) herein), by and through Plaintiffs' Counsel (as defined in Section 1(EE) herein), and on behalf of Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan," as defined in Section 1(Z) herein), by and through their undersigned counsel of record in the Action (as defined in Section 1(A) herein).

WHEREAS, Representative Plaintiffs have filed a civil class action, *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.), and have alleged, among other things, that Defendants (as defined in Section 1(O) herein), including JPMorgan, from January 1, 2003, through at least December 31, 2012, acted unlawfully by, *inter alia*, manipulating, aiding and abetting the manipulation of, and conspiring, colluding or engaging in racketeering activities to manipulate the Bank Bill Swap Rate ("BBSW") and the prices of BBSW-Based Derivatives (as defined in Sections 1(E) and 1(F) respectively herein), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the common law;

WHEREAS, Representative Plaintiffs further contend that they and the Settlement Class suffered monetary damages as a result of JPMorgan's and other Defendants' conduct;

WHEREAS, JPMorgan denies each and all of the claims and allegations of wrongdoing in Representative Plaintiffs' pleadings, expressly incorporates its responsive pleadings, as applicable, and maintains that it has good and meritorious defenses to the claims of liability and damages made by Representative Plaintiffs;

WHEREAS, arm's-length settlement negotiations have taken place between Representative Plaintiffs, Plaintiffs' Counsel, and JPMorgan, and this Settlement Agreement has been reached, subject to the final approval of the Court;

WHEREAS, JPMorgan agrees to cooperate with Representative Plaintiffs and Plaintiffs' Counsel as set forth below in this Settlement Agreement;

WHEREAS, Plaintiffs' Counsel conducted an investigation of the facts and the law regarding the Action, considered the Settlement (as defined in Section 1(KK) herein) set forth herein to be fair, reasonable, adequate and in the best interests of Representative Plaintiffs and the Settlement Class, and determined that it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of complex litigation and to assure a benefit to the Settlement Class;

WHEREAS, JPMorgan, while continuing to deny that it is liable for the claims asserted against it in the Action and that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction of burdensome and protracted litigation, thereby putting this controversy to rest and avoiding the risks inherent in complex litigation and to obtain complete dismissal of the Action as to JPMorgan and a release of claims as set forth herein;

WHEREAS, Representative Plaintiffs, for themselves individually and on behalf of each Settling Class Member, and JPMorgan agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by JPMorgan or of the truth of any of the claims or allegations in the Action;

NOW, THEREFORE, Representative Plaintiffs, on behalf of themselves and the Settlement Class by and through Plaintiffs' Counsel, and JPMorgan, by and through the undersigned counsel, agree that the Action and Released Claims (as defined in Section 1(GG) herein) be settled, compromised, and dismissed on the merits and with prejudice as to JPMorgan and without costs as to Representative Plaintiffs, the Settlement Class, or JPMorgan, subject to the approval of the Court, on the following terms and conditions:

## 1.        Terms Used In This Agreement

The words and terms used in this Stipulation and Settlement Agreement, which are expressly defined below, shall have the meaning ascribed to them.

(A)     **"Action"** means *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) and any actions that may be consolidated thereunder in the future.

(B)     **"Agreement"** or **"Settlement Agreement"** means this Stipulation and Agreement of Settlement, together with any exhibits attached hereto, which are incorporated herein by reference.

(C)     **"Any"** means one or more.

(D)     **"Authorized Claimant"** means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund (as defined in Section 1(AA) herein) pursuant to any Distribution Plan or order of the Court.

(E)     **"BBSW"** means the Bank Bill Swap Rate.

(F)     **"BBSW-Based Derivatives"** means (i) a BBSW-based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (ii) an option on a BBSW-based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a BBSW-based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S; (iv) an Australian dollar currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) an Australian dollar futures contract on the Chicago Mercantile Exchange ("CME"); (vi) an Australian dollar foreign exchange forward entered into by a U.S. Person, or by a Person from or through a location within the U.S.; and/or (vii) 90-day Bank Accepted Bill futures contracts on the Australian Securities Exchange entered into by a U.S. Person, or by a Person from or through a location within the U.S.

(G)     **"Business Days"** means any days from Monday through Friday, inclusive, that are not holidays in the United States.

(H)     **"Class"** or **"Settlement Class"** means all Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in BBSW-Based Derivatives during the Class Period (as defined in Section 1(J) herein), provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be

4

expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants (as defined in Section 1(O) herein) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

(I)     **"Class Member"** means a Person who is a member of the Class.

(J)     **"Class Period"** means the period of January 1, 2003 through December 31, 2012.

(K)     **"Class Notice"** means the form of notice of the proposed Settlement to be distributed to the Settlement Class as provided in this Agreement.

(L)     **"Conditional Certification Order"** means an order by the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court substantially in the form attached hereto as Exhibit A, issued in response to the Motion for Conditional Certification in Section 13 providing for, *inter alia*, conditional certification of the Settlement Class for purposes of the Settlement only, and for a stay of all proceedings in the Action against JPMorgan until the Court renders a final decision on approval of the Settlement..

(M)     **"Cooperation Materials"** means those materials described in Section 4 of this Settlement Agreement.

(N)     **"Court"** means the United States District Court for the Southern District of New York.

(O)     **"Defendants"** means the defendants currently named in the Action and any parties that may be added to the Action as defendants through amended or supplemental pleadings.

(P)    **"Distribution Plan"** means the plan of allocation of the Net Settlement Fund developed by Representative Plaintiffs and Plaintiffs' Counsel and submitted to the Court for approval, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(Q)    **"Effective Date"** means the date when this Settlement Agreement becomes final as set forth in Section 18 of this Settlement Agreement.

(R)    **"Escrow Agent"** means any Person designated by Plaintiffs' Counsel with the consent of JPMorgan and approved by the Court to act as escrow agent for the Settlement Fund (as defined in Section 1(NN) herein), who Plaintiffs' Counsel anticipates will be Citibank N.A.

(S)     **"Execution Date"** means the date on which this Agreement is executed by the last Party to do so.

(T)    **"Fairness Hearing"** means a hearing scheduled by the Court following the issuance of the Conditional Certification Order (as defined in Section 1(L) herein), to consider the fairness, adequacy and reasonableness of the proposed Settlement and Settlement Agreement.

(U)    **"Final"** means, with respect to any court order, including, without limitation, the Final Approval Order and Final Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. An order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its

6

entirety and the prescribed time, if any, for commencing any further appeal has expired. Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses pursuant to Sections 5 and 6 below, shall not in any way delay or prevent the Final Judgment from becoming Final.

(V)      **"Final Approval Order"** means an order from the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court substantially in the form attached hereto as Exhibit B, approving of the Settlement following (i) submission of the Settlement Agreement for conditional certification, (ii) the issuance of the Class Notice pursuant to the Conditional Certification Order or any other related order, and (iii) the Fairness Hearing.

(W)      **"Final Judgment"** means the order of judgment and dismissal of the Action with prejudice as to JPMorgan, the form of which shall be mutually agreed upon by the Parties and submitted to the Court substantially in the form attached hereto as Exhibit C, for approval thereof.

(X)      **"Incentive Award"** means any award by the Court to Representative Plaintiffs as described in Section 5.

(Y)      **"Investment Vehicles"** means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

(Z)      **"JPMorgan"** means JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., collectively.

(AA)  **"Net Settlement Fund"** means the Settlement Fund less Court-approved disbursements, including: (i) notice, claims administration and escrow costs; (ii) any attorneys' fees and/or expenses awarded by the Court; (iii) any Incentive Award(s) awarded by the Court; and (iv) all other expenses, costs, taxes and other charges approved by the Court.

(BB)  **"Other Settlement"** means any settlement Representative Plaintiffs reach with any other Defendant involving the Action that will be submitted to the Court for notice and approval purposes at the same time as this Settlement.

(CC)  **"Parties"** means JPMorgan and Representative Plaintiffs collectively, and "**Party**" applies to each individually.

(DD)  **"Person"** means a natural person, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint-stock company, estate, legal representative, trust, unincorporated association, proprietorship, municipality, state, state agency, entity that is a creature of any state, any government, governmental or quasi-governmental body or political subdivision, authority, office, bureau, agency or instrumentality of the government, any business or legal entity, or any other entity or organization; and any spouses, heirs, predecessors, successors, representatives or assigns of any of the foregoing.

(EE)  **"Plaintiffs' Counsel"** means Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP.

(FF)   **"Proof of Claim and Release"** means the form to be sent to Class Members, upon further order(s) of the Court, by which any Class Member may make a claim against the Net Settlement Fund.

(GG)   **"Released Claims"** means those claims described in Section 12 of this Settlement Agreement.

(HH)   **"Released Parties"** means JPMorgan, its predecessors, successors and assigns, its past, present, and future direct and indirect parents, subsidiaries and affiliates, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of JPMorgan), shareholders (in their capacity as shareholders of JPMorgan), attorneys, insurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Released Party.  For the avoidance of doubt, "Released Parties" shall not include any named Defendants other than JPMorgan.

(II)   "**Releasing Parties**" means each and every Representative Plaintiff and each and every Settling Class Member (as defined in Section 1(OO) herein) on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacity as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacity as such, whether or not they object to the Settlement or make a claim for payment under the Net Settlement Fund. Notwithstanding that the U.S. Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasing Parties include any Settling Class Member as to which the government entity has the legal right to release such claims.  As

9

used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasing Party.  For the avoidance of doubt, the "Releasing Parties" include all Persons entitled to bring or release claims on behalf of Settling Class Members, relating to their transactions in BBSW-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to BBSW held by Representative Plaintiffs or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.).

(JJ)    **"Representative Plaintiffs"** means Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and Fund Liquidation Holdings, LLC and any other Person named as a plaintiff in the Action who was not subsequently withdrawn as a named plaintiff, and any named plaintiff who may be added to the Action through amended or supplemental pleadings.  This Settlement Agreement is entered into with each and every Representative Plaintiff.   In the event that one or more Representative Plaintiff(s) fails to secure Court approval to act as a Representative Plaintiff, the validity of this Settlement Agreement as to the remaining Representative Plaintiffs, the Settlement Class, and Plaintiffs' Counsel shall be unaffected.

(KK)    **"Settlement"** means the settlement of the Released Claims set forth herein.

(LL)    **"Settlement Administrator"** means any Person that the Court approves to perform the tasks necessary to provide notice of the Settlement to the Class and to otherwise administer the Settlement Fund, as described further herein.

(MM)   **"Settlement Amount"** means seven million U.S. dollars ($7,000,000.00).

10

(NN)   **"Settlement Fund"** means the Settlement Amount plus any interest that may accrue.

(OO)   **"Settling Class Members"** means Representative Plaintiffs and other members of the Settlement Class who do not timely and validly exclude themselves from the Settlement pursuant to FED. R. CIV. P. 23(c) and in accordance with the procedure to be established by the Court.

(PP)   **"U.S. Person"** means a citizen, resident, or domiciliary of the United States or its territories; a corporation, including a limited liability company, either incorporated or headquartered in the United States or its territories; a partnership created or resident in the United States or its territories; any other Person or entity created and/or formed under the laws of the United States, including any state or territory thereof; or any other Person or entity residing or domiciled in the United States or its territories.

## 2.      Settlement Class

Representative Plaintiffs will file an application seeking the certification of the Settlement Class as described herein pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Notwithstanding the sentence in Section 1(H) above that "[e]xcluded from the Settlement Class are the Defendants (as defined in Section 1(O) herein) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, the Parties agree that Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants. However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised, and (ii) directly or

11

indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

The Parties' agreement as to certification of the Class is solely for purposes of effectuating the Settlement and for no other purpose. JPMorgan retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective. The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Class becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Class, or in support of an argument for certifying any class for any purpose related to this Action or any other proceeding.

### 3.        Settlement Payment

JPMorgan shall pay by wire transfer to the Escrow Agent one million five hundred thousand U.S. dollars ($1,500,000.00) of the Settlement Amount within seven (7) Business Days after the Court grants the Conditional Certification Order, and the balance of the Settlement Amount within seven (7) business days after entry of the Final Approval Order and Final

Judgment. This seven (7) Business Day time period shall not begin to run unless and until Plaintiffs' Counsel have provided appropriate wire instructions and a Form W-9 to JPMorgan's counsel.  All interest earned by any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  Upon occurrence of the Effective Date, no funds may be returned to JPMorgan through a reversion or other means.  The Escrow Agent shall only act in accordance with instructions mutually agreed upon by the Parties in writing, except as otherwise provided in this Agreement.  Other than the payment of the Settlement Amount as set forth in this Section 3, JPMorgan shall have no responsibility for any interest, costs, or other monetary payment, including any attorneys' fees and expenses, taxes, or costs of notice or claims administration, except that JPMorgan shall be responsible for notice as required by 28 U.S.C. § 1715, as set forth in Section 14(C).

## 4.        JPMorgan's Cooperation

(A)     JPMorgan has agreed to provide Representative Plaintiffs with Cooperation Materials as enumerated below.  Any dispute concerning whether JPMorgan has performed its obligations to provide Representative Plaintiffs with such Cooperation Materials that the Parties cannot themselves resolve by meeting and conferring shall be decided in accordance with the alternative dispute resolution process set forth in Section 37 below.

(B)     JPMorgan shall provide reasonable cooperation in the Action, including discovery cooperation, requested by Plaintiffs' Counsel, to benefit the Settlement Class, as provided herein. All cooperation shall be coordinated in such a manner so that all unnecessary duplication, burden and expense is avoided.  Plaintiffs' Counsel shall tailor its requests for the production of documents with a view toward minimizing unnecessary burdens and costs to JPMorgan in connection with collecting, reviewing and producing materials that have not already been

13

collected in the course of the Action, related settlements, reports and/or investigations by governmental authorities.

(C)     Notwithstanding any other provision in this Agreement, JPMorgan shall have no obligation to produce any document or provide any information that is privileged under the attorney-client privilege, work-product doctrine, joint-defense privilege, common-interest doctrine, bank examination privilege, and/or other applicable privilege or immunity from disclosure.  None of the cooperation provisions set forth herein are intended to, nor do they waive any such privileges or immunities.  JPMorgan agrees that its counsel will meet with Plaintiffs' Counsel as is reasonably necessary to discuss any applicable privilege.  Any disputes regarding privilege that cannot be resolved amongst the Parties shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.  At a reasonable time to be negotiated in good faith, JPMorgan agrees to provide Representative Plaintiffs, through Plaintiffs' Counsel, with (a) privilege logs for any relevant documents reasonably requested by Representative Plaintiffs as cooperation discovery in accordance with this Settlement Agreement that JPMorgan withholds on the basis of any privilege, doctrine, immunity or regulatory objection, if and to the extent such privilege logs are reasonably necessary to establish the basis for JPMorgan's withholding of the documents; and (b) any existing privilege logs for documents that JPMorgan withheld from governmental authorities, as applicable, as part of any investigation into JPMorgan's alleged manipulation of BBSW, to the extent such privilege logs relate to documents reasonably requested by Representative Plaintiffs as Cooperation Materials herein if and to the extent such privilege logs are reasonably necessary. JPMorgan's production of existing privilege logs, if any, will be made in such a way so as not to identify the governmental authority or authorities to which JPMorgan provided the logged

14

documents.  The Parties agree that their counsel shall meet and confer with each other regarding any dispute as to the privileges and protections described in this Section.  To the extent the Parties cannot resolve any such disputes, they shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.  If any document protected by the attorney-client privilege, work-product doctrine, the common interest doctrine, the joint defense privilege, the bank examination privilege, and/or any other applicable privilege or protection is accidentally or inadvertently produced, Representative Plaintiffs shall, upon notice from JPMorgan, promptly cease reviewing the document and shall return the document and all copies of it to JPMorgan's counsel within five (5) business days.  Representative Plaintiffs and Plaintiffs' Counsel shall also delete or destroy the portions of any other documents or work product which refer to or summarize the document. The document shall not be used or referred to in any way by Representative Plaintiffs or Plaintiffs' Counsel, and its production shall in no way be construed to have waived any privilege, protection or restriction attached to such document or information.

(D)     Notwithstanding any other provision in this Agreement, JPMorgan shall have no obligation to produce any document or provide any information that is restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secrets, or other law. In the event that Plaintiffs' Counsel reasonably request documents or information otherwise within the scope of the Cooperation Materials to be provided under this Section that JPMorgan reasonably believes in good faith to be restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secret, or other law and the restriction can be avoided without undue burden to JPMorgan through a reasonable workaround, such as by removing or

15

anonymizing identifying information, JPMorgan shall cooperate in good faith with Representative Plaintiffs to implement such a workaround.

(E)     Notwithstanding any other provision of this Agreement, in the event that JPMorgan believes that Plaintiffs' Counsel has requested cooperation of a kind or to an extent that is not reasonable or not within the scope of JPMorgan's obligations as set forth herein, JPMorgan's counsel and Plaintiffs' Counsel agree to meet and confer with each other regarding such disagreement and, if necessary, to seek resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.

(F)     Plaintiffs' Counsel agree to use any and all of the information and documents obtained from JPMorgan only for the purpose of the Action and agree to be bound by the terms of the Stipulation and protective order entered in the Action.  If no protective order is in effect as of the execution date of the Stipulation, the Parties agree that JPMorgan will have no obligation to produce any documents until either (a) the Court enters a mutually acceptable protective order; or (b) JPMorgan and Representative Plaintiffs enter into a separate confidentiality agreement. For the avoidance of doubt, Plaintiffs' Counsel expressly agrees that the documents, materials and/or information provided by JPMorgan, including without limitation oral presentations, may be used directly or indirectly by Plaintiffs' Counsel solely in connection with the prosecution of the Action against the non-settling Defendants, but not used directly or indirectly by any Person for the institution or prosecution of any other action or proceeding against any Released Party or for any other purpose whatsoever, including, but not limited to, actions or proceedings in jurisdictions outside the United States.

(G)     **Document Production.**  Subject to the restrictions set forth above, JPMorgan will provide cooperation to Representative Plaintiffs by producing to Plaintiffs' Counsel the

following categories of documents, to the extent that any such documents exists, in an equivalent format to that in which they were produced to governmental authorities, including any metadata included in such production or, with respect to any documents not previously produced to governmental authorities, in a format to be agreed, to the extent that such documents are reasonably available and accessible to JPMorgan and have not already been produced to Representative Plaintiffs in the Action.  Unless otherwise indicated, the time period of the documents subject to production shall be January 1, 2003 – December 31, 2012.

(i) All documents and data produced by JPMorgan to any governmental authorities in connection with any investigation by such entities of conduct related to BBSW, together with information sufficient to show the search parameters that were utilized in connection with such productions (*e.g.*, custodians, time frames, and search terms), as well as information sufficient to identify JPMorgan personnel who worked on the relevant trading and treasury desks. JPMorgan also agrees to consider, in good faith, requests from Plaintiffs' Counsel to identify additional JPMorgan personnel whom Plaintiffs' Counsel believe may have relevant information concerning the Action.

(ii) To the extent not included within the documents and data produced pursuant to the above paragraphs, and to the extent any such documents exist:

a. Reasonably available trade data pertaining to JPMorgan's transactions in Australian Dollar-denominated inter-bank money market instruments for the years 2003 through 2012, that meet the parameters to be agreed upon by JPMorgan and Plaintiffs' Counsel;

17

    b. Reasonably available trade data pertaining to JPMorgan's transactions in BBSW-Based Derivatives for the years 2003 through 2012, that meet the parameters to be agreed upon by JPMorgan and Plaintiffs' Counsel;

    c. Reasonably available documents sufficient to show BBSW reporting rules or standards; and

    d. Reasonably available documents sufficient to show BBSW submissions made by JPMorgan.

(iii)    Documents reflecting substantially the same information as that reflected in JPMorgan's submissions to the Federal Reserve Bank of New York, Bank of International Settlements, and OTC Derivatives Supervisors Group relating to their surveys on turnover in foreign exchange and interest rate derivatives markets for BBSW-Based Derivatives, to the extent such information exists and is reasonably available and accessible, and to the extent such disclosure is permitted by relevant authorities and under applicable banking or other laws and regulations, for the years 2000, 2004, 2007, 2010, and 2013.

(iv)    Non-privileged declarations, affidavits, or other sworn or unsworn written statements of former and/or current JPMorgan directors, officers or employees concerning the allegations set forth in the Action with respect to BBSW and BBSW-Based Derivatives to the extent such documents exist, are reasonably available and accessible to JPMorgan, and may be disclosed under applicable confidentiality or regulatory restrictions.

(H)    Subject to Section 4(E) above, and subject to Section 37 of this Settlement Agreement, Representative Plaintiffs may request as Cooperation Materials such further

18

documents and information as Plaintiffs' Counsel may reasonably request that are relevant to the claims or defenses in the Action and are reasonably available and accessible to JPMorgan and not unduly burdensome to produce. JPMorgan will consider such requests in good faith, but JPMorgan need not agree to any such requests. In the event that JPMorgan believes Plaintiffs' Counsel has unreasonably requested cooperation, or Plaintiffs' Counsel believes JPMorgan has unreasonably withheld cooperation, JPMorgan and Plaintiffs' Counsel agree to meet and confer regarding such disagreement and seek resolution if necessary pursuant to the alternative dispute resolution procedures set forth in Section 37 below.  If such alternative dispute resolution is sought, the disputed aspect of cooperation shall be held in abeyance until such resolution by the procedures set forth in Section 37, and such abeyance shall not constitute a breach of the Settlement Agreement.

(I)     **Other Information.** JPMorgan will cooperate to provide reasonably available information necessary for Representative Plaintiffs to authenticate or otherwise make usable at trial the aforementioned documents or other documents as Representative Plaintiffs may request. JPMorgan also will provide Representative Plaintiffs with an attorney proffer concerning JPMorgan's knowledge of the BBSW-related conduct alleged in Representative Plaintiffs' complaints.  JPMorgan will also provide Representative Plaintiffs with a description of the data fields included in any trade data produced by JPMorgan to the extent reasonably requested by Representative Plaintiffs, to the extent reasonably necessary.

(J)     **Witnesses.** JPMorgan shall designate witness(es) to serve as JPMorgan's corporate representative pursuant to the framework of Rule 30(b)(6) of the Federal Rules of Civil Procedure in connection with any depositions, hearing or trial of the Defendants without issuance of a subpoena. JPMorgan will work in good faith with Representative Plaintiffs to designate such

witness(es) to the extent reasonably necessary and only to the extent that the information sought by Representative Plaintiffs cannot be otherwise obtained, such as through written statements. With respect to any production of documents arising from JPMorgan's obligations under this settlement, JPMorgan will cooperate in providing declarations to authenticate documents Plaintiffs may seek to introduce as evidence at proceedings in this Action, to the extent reasonably necessary.

(K)      **Timing of Production.** JPMorgan agrees to begin a rolling production of documents and data pursuant to this Section 4 within ten (10) Business Days of the Court entering the Conditional Certification Order.  Notwithstanding the prior sentence, JPMorgan agrees to begin rolling production of reasonably available documents and data pursuant to Section 4(G) (ii) within sixty (60) days after the parties reach agreement as to the parameters of which production, which shall not be prior to the date which is fifteen (15) Business Days after the Conditional Certification Order is entered.

(L)      **Continuation, Scope, and Termination of JPMorgan's Obligation.** JPMorgan's obligations to cooperate are continuing until and shall terminate upon the earlier of: (i) the date when final judgment has been rendered with no remaining rights of appeal, in the Action against all defendants; or (ii) four (4) years after the Court enters the Conditional Certification Order.

### 5.      Payment of Attorneys' Fees and Reimbursement of Expenses, and Application for Incentive Award

(A)      Subject to Court approval, Representative Plaintiffs and Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all fees and expenses including, but not limited to, attorneys' fees, and past, current or future litigation expenses, and any Incentive Award approved by the Court. JPMorgan shall have no responsibility for any costs, fees, or

expenses incurred for or by Representative Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives. Nothing in this provision shall expedite the date(s) for JPMorgan's payment as set forth in Section 3.

(B)     Plaintiffs' Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees, plus interest. Plaintiffs' Counsel also may apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsel's litigation expenses, plus interest. JPMorgan shall take no position with respect to Plaintiffs' Counsel's motion for attorneys' fees and expenses. Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(C)     The Released Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees, litigation expenses, or Incentive Award that the Court may award in the Action.

(D)     The procedures for, and the allowance or disallowance by the Court of, any application for approval of fees, expenses and costs or an Incentive Award (collectively, "Fee and Expense Application") are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement. Any order or proceeding relating to a Fee and Expense Application, or the reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment and the Settlement of the Action as set forth herein. No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Application or the Distribution Plan shall constitute grounds for termination of this Agreement.

(E)     Prior to the Fairness Hearing, Plaintiffs' Counsel and Representative Plaintiffs shall file any motions seeking awards from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses, and for the payment of an Incentive Award as follows:

(i)     Plaintiffs' Counsel shall seek attorneys' fees of no more than one-third of the Settlement Fund;

(ii)    Plaintiffs' Counsel shall seek reimbursement for their costs and expenses incurred as of the date the Motion for Final Approval and Entry of Final Judgment is filed pursuant to Section 16; and

(iii)   Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(F)     Upon the Court's approval of an award of attorneys' fees, costs and expenses, such approved amount from Subsections (E)(i) and (E)(ii), above, shall be paid from the Escrow Account within ten (10) Business Days after their approval by the Court.  If an event occurs that will cause the Settlement Agreement not to become Final pursuant to Section 18 or if Representative Plaintiffs or JPMorgan terminates the Settlement Agreement pursuant to Sections 21 through 23, then within ten (10) Business Days after receiving written notice of such an event from counsel for JPMorgan or from a court of appropriate jurisdiction, Plaintiffs' Counsel shall refund to the Settlement Fund any attorneys' fees, costs and expenses (not including any non-refundable expenses as described in Section 9(B)) that were withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund.  In the event the Settlement is terminated, Plaintiffs' Counsel including each of the law firm's individual partners and/or

principals shall be jointly and severally liable for the return to JPMorgan of any sums paid as attorneys' fees and expenses.

6. **Application for Approval of Fees, Expenses, and Costs of Settlement Fund Administration**

Plaintiffs' Counsel may apply to the Court, at the time of any application for distribution to Authorized Claimants, for an award from the Settlement Fund of attorneys' fees for services performed and reimbursement of expenses incurred in connection with the administration of the Settlement after the date of the Fairness Hearing. Plaintiffs' Counsel reserves the right to make additional applications to the Court for payment from the Settlement Fund for attorneys' fees for services performed and reimbursement of expenses incurred. Any such applications are subject to Court approval.

7. **No Liability for Fees and Expenses of Plaintiffs' Counsel**

The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Plaintiffs' Counsel for attorneys' fees, costs and expenses and/or to any other Person who may assert some claim thereto, or any fee and expense award the Court may make in the Action.

8. **Distribution of and/or Disbursements from Settlement Fund**

The Settlement Administrator, subject to such supervision and direction by the Court and/or Plaintiffs' Counsel as may be necessary, shall administer the Proof of Claim and Release forms submitted by the Settling Class Members and shall oversee the distribution of the Settlement Fund pursuant to the Distribution Plan. Upon the Effective Date (or earlier if provided in Section 5 herein), the Settlement Fund shall be applied in the order and as follows:

(i)    to pay costs and expenses associated with the distribution of the Class Notice and administration of the Settlement as provided in this

23

Section and Section 6, including all costs and expenses reasonably and actually incurred in assisting Class Members with the filing and processing of claims against the Net Settlement Fund at any time after JPMorgan makes payments described in Section 3;

(ii)     to pay Escrow Agent costs;

(iii)    to pay taxes assessed on the Settlement Fund, and tax preparation fees in connection with such taxes;

(iv)    to pay any attorneys' fees, costs and expenses approved by the Court upon submission of a Fee and Expense Application, as provided in Section 5;

(v)     to pay the amount of any Incentive Award for Representative Plaintiffs, as provided in Section 5; and

(vi)    to pay the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, any Distribution Plan, or order of the Court.

### 9.     Disbursements Prior to Effective Date

(A)     Except as provided in Subsection (B) herein or by Court order, no distribution to any Class Member or disbursement of fees, costs and expenses of any kind may be made from the Settlement Fund until the Effective Date. As of the Effective Date, all fees, costs and expenses and Incentive Awards as approved by the Court may be paid out of the Settlement Fund.

(B)     Upon written notice to the Escrow Agent by Plaintiffs' Counsel with a copy to JPMorgan, the following may be disbursed prior to the Effective Date: (i) reasonable costs of Class Notice and administration may be paid from the Settlement Fund as they become due (up

24

to a maximum of $500,000); (ii) reasonable costs of the Escrow Agent may be paid from the Settlement Fund as they become due; (iii) taxes and tax expenses may be paid from the Settlement Fund as they become due; and (iv) Plaintiffs' Counsel's attorneys' fees and costs and expenses as approved by the Court (in accordance with Section 5(F)). In the event the Settlement is terminated or does not become final for any reason, JPMorgan shall be entitled to return of all such funds, plus all interest accrued thereon, except for up to $500,000 for reasonable costs of Class Notice and administration that have been actually disbursed prior to the date the Settlement was terminated or otherwise does not become final for any reason, on the terms specified in Section 22.

(C)     Plaintiffs' Counsel will attempt in good faith to minimize the costs of the Escrow Agent, Class Notice and administration.

## 10.     Distribution of Balances Remaining in Net Settlement Fund to Authorized Claimants

The Net Settlement Fund shall be distributed to Authorized Claimants and, except as provided in Section 9(B), there shall be no reversion to JPMorgan.   The distribution to Authorized Claimants shall be in accordance with the Distribution Plan that has been or hereafter is to be approved by the Court upon such notice to the Class as may be required.   Plaintiffs' Counsel will develop the Distribution Plan that will be submitted to the Court.   JPMorgan shall take no position with respect to the Distribution Plan or any revisions to the Distribution Plan. The Distribution Plan is not a part of this Agreement. No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the later of (i) the Effective Date; or (ii) the date by which the Distribution Plan has received final approval and the time for any further appeals with respect to the Distribution Plan has expired. Should there be any balance remaining

in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Plaintiffs' Counsel shall submit an additional distribution plan to the Court for its approval.

### 11.        Administration/Maintenance of Settlement Fund

The Settlement Fund shall be maintained by Plaintiffs' Counsel under supervision of the Court and shall be distributed solely at such times, in such manner, and to such Persons as shall be directed by subsequent orders of the Court (except as provided for in this Agreement) consistent with the terms of this Settlement Agreement.  The Parties intend that the Settlement Fund be treated as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. Plaintiffs' Counsel shall ensure that the Settlement Fund at all times complies with Treasury Regulation § 1.468B-1 in order to maintain its treatment as a qualified settlement fund. To this end, Plaintiffs' Counsel shall ensure that the Settlement Fund is approved by the Court as a qualified settlement fund and that any Escrow Agent, Settlement Administrator or other administrator of the Settlement Fund complies with all requirements of Treasury Regulation § 1.468B-2. Any failure to ensure that the Settlement Fund complies with Treasury Regulation § 1.468B-2, and the consequences thereof, shall be the sole responsibility of Plaintiffs' Counsel, and JPMorgan and its counsel shall have no responsibility or liability for any act, omission, or determination of the Escrow Agent or the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund and bank accounts that are either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government.  The proceeds of these

accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

Any Class Member who does not submit a valid proof of claim and release form will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

## 12.        Release and Covenant Not To Sue

(A)     The Releasing Parties finally and forever release and discharge from and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties concerning any BBSW-Based Derivatives or any similar financial instruments priced,

27

benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law). The following claims shall not be released by this Settlement: (i) any claims against former JPMorgan employees arising solely from those former employees' conduct that occurred while not employed by JPMorgan; (ii) any claims against the named Defendants in this Action other than JPMorgan; or (iii) any claims against any Defendant not affiliated with JPMorgan who may be subsequently added in this Action. For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code. Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

### 13.        Motion for Conditional Certification

As soon as practicable after the Execution Date, at a time to be mutually agreed by JPMorgan and Plaintiffs' Counsel, Plaintiffs' Counsel shall submit this Settlement Agreement to the Court and shall file a motion for entry of the Conditional Certification Order.

### 14.        Class Notice

(A)     Plaintiffs' Counsel shall be responsible for selecting a Settlement Administrator to be approved by the Court, and JPMorgan shall not object to Plaintiffs' Counsel's selection. Subject to approval by the Court, in accordance with FED. R. CIV. P. 23(e), Plaintiffs' Counsel shall provide reasonable notice of the Settlement (the "Class Notice") to the Class Members whose identities can be determined after reasonable efforts, with notice of the date of the Fairness Hearing.  The Class Notice may be sent solely for this Settlement or combined with notice of Other Settlements.  The Class Notice shall explain the general terms of the Settlement Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application, and a description of Class Members' rights to object to the Settlement, request exclusion from the Class and appear at the Fairness Hearing.  The text of the Class Notice shall be agreed upon by the Parties before its submission to the Court for approval thereof.  The cost of providing the Notice to Class Members in the manner set forth above shall be paid out of the Settlement Fund, and the Settlement Administrator shall administer dissemination of the Notice.  To the extent the Motion for Conditional Certification does not seek approval for the timing, plan, and forms of Class Notice to the Settlement Class and the date for the Fairness Hearing, then after the Court enters the Conditional Certification Order, Plaintiffs' Counsel and JPMorgan shall meet and confer as to the timing, to be mutually agreed by JPMorgan and Plaintiffs' Counsel, as to when Plaintiffs' Counsel shall move for an order approving the timing, plan, and forms of Class Notice to the Settlement Class and the date for the Fairness Hearing.

(B)     JPMorgan agrees to provide Plaintiffs' Counsel with reasonably available contact information for counterparties to BBSW-Based Derivatives they transacted with during the Class

Period, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other rule of any regulatory agency or governmental body restricting disclosure of such information.  If necessary as a result of data protection, privacy, or bank secrecy law requirements or any other law, rule, or regulation, Representative Plaintiffs agree that JPMorgan may, at its sole discretion, opt to provide, or have a third-party agent provide, the Class Notice to any counterparties to BBSW-Based Derivatives JPMorgan transacted with during the Class Period who cannot be included in the general class-wide notice process.  Alternatively, JPMorgan may, at its sole discretion, directly provide counterparty information only to the Settlement Administrator for purposes of distributing the Class Notice, to the extent that JPMorgan reasonably concludes in good faith that such steps are required or advisable based on such counterparty information being subject to any applicable domestic or foreign data protection, privacy, or bank secrecy law requirements, or any other law, rule, or regulation.  If JPMorgan exercises its discretion to provide Class Notice pursuant to this Section, JPMorgan shall complete such notice no later than the date set by the Court.

(C)     In the event that the Court issues the Conditional Certification Order, JPMorgan shall bear the costs and responsibility for timely serving notice of the Settlement as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  JPMorgan shall also cause a copy of such CAFA notice and proof of service of such notice to be provided to Plaintiffs' Counsel.

(D) In the event that the Settlement is not approved, Representative Plaintiffs will not be required to return to JPMorgan any sums actually paid from the Settlement Fund for the reasonable costs of Class Notice, up to a maximum of $500,000.

### 15.        Publication

Plaintiffs' Counsel shall cause to be published a summary in accord with the Class Notice submitted to the Court by the Parties and approved by the Court. JPMorgan shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of the Settlement to Class Members except as provided for in Section 9(B). The Parties shall mutually agree on any content relating to JPMorgan that will be used by Plaintiffs' Counsel and/or the Settlement Administrator in any Settlement-related press release or other media publication, including on websites.

### 16.        Motion for Final Approval and Entry of Final Judgment

(A)      After Class Notice is issued, and prior to the Fairness Hearing, Plaintiffs' Counsel shall move for entry of a Final Approval Order and Final Judgment:

   (i)        finally certifying solely for settlement purposes the Settlement Class;

   (ii)       finding that the Class Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

   (iii)      finally approving this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of the Settlement Class' claims under Rule 23 of the Federal Rules of Civil Procedure;

(iv)      directing that, as to the Released Parties, the Action be dismissed with prejudice and without costs as against the Settling Class Members;

(v)      discharging and releasing the Released Claims as to the Released Parties;

(vi)      barring claims by any Person against the Released Parties for contribution, indemnification, or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise;

(vii)      determining pursuant to FED. R. CIV. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal shall be final and appealable;

(viii)      reserving the Court's continuing and exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Agreement; and

(ix)      containing such other and further provisions consistent with the terms of this Agreement to which JPMorgan and Representative Plaintiffs expressly consent in writing.

(B)      Before the Fairness Hearing, as provided in Section 5, Plaintiffs' Counsel will timely request by separate motion that the Court approve its Fee and Expense Application. The Fee and Expense Application and the Distribution Plan are matters separate and apart from the Settlement between the Parties. If the Fee and Expense Application or the Distribution Plan are not approved, in whole or in part, it will have no effect on the finality of the Final Approval

Order approving the Settlement and the Final Judgment dismissing the Action with prejudice as to JPMorgan.

### 17.        Best Efforts to Effectuate This Settlement

The Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

### 18.        Effective Date

Unless terminated earlier as provided in this Settlement Agreement, this Settlement Agreement shall become effective and final as of the date upon which all of the following conditions have been satisfied:

(A)     The Settlement Agreement has been fully executed by JPMorgan and Representative Plaintiffs through their counsel;

(B)     The Court has certified a Settlement Class, and entered the Conditional Certification Order in substantially the form agreed to in Exhibit A , and approved the program and form for the Class Notice;

(C)     Class Notice has been issued as ordered by the Court;

(D)     The Court has entered the Final Approval Order finally approving the Settlement Agreement in all respects as required by Rule 23(e) of the Federal Rules of Civil Procedure; however, this required approval does not include the approval of the Fee and Expense Application and the Distribution Plan;

(E)     The Court has entered its Final Judgment of dismissal with prejudice as to the Released Parties with respect to Representative Plaintiffs and Settling Class Members; and

(F)     Upon the occurrence of the later of the following: (i) the resolution of any and all appeals regarding the Settlement (subject to Section 21 below) or (ii) the time to appeal or seek permission to appeal from the approval of the Settlement has expired.

## 19.     Occurrence of Effective Date

Upon the occurrence of all of the events in Section 18, any and all remaining interest or right of JPMorgan in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Settlement Administrator at the written direction of Plaintiffs' Counsel.

## 20.     Failure of Effective Date to Occur

If any of the conditions specified in Section 18 are not satisfied, then this Agreement shall be terminated, subject to and in accordance with Section 21, unless the Parties mutually agree in writing to continue with it for a specified period of time.

## 21.     Termination

(A)     JPMorgan shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement by providing written notice to Plaintiffs' Counsel within twenty-five (25) Business Days of any of the following events:

   (i)        the Court enters an order declining to enter the Conditional Certification Order or the Final Approval Order in any material respect;

   (ii)       the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

   (iii)      the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

   (iv)       the Court enters an alternative judgment;

(v)        the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect; or

(vi)        an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect.

(B)        Plaintiffs' Counsel, acting on behalf of the Representative Plaintiffs, shall also have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement by providing written notice to JPMorgan's counsel within twenty-five (25) Business Days of any of the following events, provided that the occurrence of the event substantially deprives Plaintiffs of the benefit of the Settlement:

(i)        the Court enters an order declining to grant Representative Plaintiffs' Motion for Conditional Certification pursuant to Section 13 or the Motion for Final Approval pursuant to Section 16 in any material respect;

(ii)        the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

(iii)        the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

(iv)        the Court enters an alternative judgment;

(v)        the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect;

(vi)        an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect; or

(vii)      JPMorgan, for any reason, fails to comply with Section 3 and fails to cure such non-compliance as contemplated by Section 21(D) below.

(C)      Notwithstanding the Parties' respective termination rights under paragraphs (A) and (B) of this Section, if the Court declines to approve Plaintiffs' Motion for Conditional Certification under Section 13 because the Settlement Agreement does not contain a plan for providing Class Notice to the Settlement Class, Plaintiffs' Counsel will have the right to file another Motion for Conditional Certification or other appropriate motion that incorporates a Class Notice plan.   In the above case, a Court order declining to enter the Conditional Certification Order because it lacks a Class Notice plan will not trigger either Party's termination rights.

(D)      In the event that JPMorgan, for any reason, fails to comply with Section 3, then on ten (10) Business Days' written notice to JPMorgan's counsel, during which ten-day period JPMorgan shall have the opportunity to cure the default without penalty, Representative Plaintiffs, by and through Plaintiffs' Counsel, may terminate this Settlement Agreement or elect to enforce it as provided by the Federal Rules of Civil Procedure and applicable law.

## 22.        Effect of Termination

Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not finally approved by the Court or the Final Judgment is reversed or vacated following any appeal, then:

(A)     Within ten (10) Business Days after written notification of such event is sent by counsel for JPMorgan or Plaintiffs' Counsel to all Parties and the Escrow Agent, the Settlement Amount, and all interest earned in the Settlement Fund will be refunded, reimbursed, and repaid by the Escrow Agent to JPMorgan, except as provided in Section 9(B).

(B)     The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to JPMorgan, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(C)     The Parties shall be returned, to the maximum extent possible, to their respective positions in the Action as of immediately prior to the execution of the Settlement Term Sheet dated June 5, 2018, with all of their respective legal claims and defenses preserved as they existed at that time; and

(D)     Upon termination of this Settlement Agreement, then:

(i)     this Agreement shall be null and void and of no further effect, and none of JPMorgan, the Representative Plaintiffs, or members of the Settlement Class shall be bound by any of its terms;

(ii)     any and all releases shall be of no further force and effect;

(iii)     the Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date; and

(iv)     any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

(E)     Unless the Settlement is terminated, JPMorgan shall take no position with respect to any motion for class certification that Representative Plaintiffs anticipate filing and/or file in connection with their claims against other Defendants in the Action. Nothing in this Settlement Agreement shall preclude JPMorgan from opposing motions for class certification or from taking positions in actions other than the Action.

## 23.     Supplemental Agreement

In addition to the provisions contained in Section 21(A) herein, JPMorgan shall have the right, but not the obligation, in its sole discretion, to terminate this Agreement pursuant to the Supplemental Agreement as to Defendants' JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("Supplemental Agreement") to be executed by the parties contemporaneously with the execution of this Agreement.  The Supplemental Agreement shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Parties shall seek to file it only under seal.

## 24.     Impact of Any Other Settlement

(A)     If any Other Settlement (as defined in Section 1(BB)) is reached prior to the Fairness Hearing, the "Settlement Class," definition in Section 1(H), as well as the terms contained within the "Cooperation," "Release and Covenant Not to Sue," and "Termination" provisions herein (as described in Sections 4, 12, and 21 respectively) shall be no less favorable to JPMorgan than the corresponding term or provision applicable to any Other Settlement.

(B)     If JPMorgan believes one or more terms or provisions referenced in subsection (A) is less favorable than a corresponding term or provision in any Other Settlement, JPMorgan will provide written notice of such belief to Plaintiffs' Counsel as prescribed in this Settlement Agreement within ten (10) Business Days of the filing of such Other Settlement with the Court.

Following receipt of the written notice, JPMorgan and Plaintiffs' Counsel will confer as to whether the relevant term or provision in this Settlement Agreement is less favorable as compared to the Other Settlement. If there is agreement between JPMorgan and Plaintiffs' Counsel that the provision at issue is less favorable, JPMorgan and Plaintiffs' Counsel will execute an amendment to the Settlement Agreement, adopting and incorporating the provision as drafted in the Other Settlement into the Settlement Agreement, and will submit the amendment to the Court for its approval. If JPMorgan and Plaintiffs' Counsel are unable to reach an agreement on the relevant provision, JPMorgan or Plaintiffs' Counsel may move the Court to resolve the dispute.

### 25.        Confidentiality Protection

Representative Plaintiffs, Plaintiffs' Counsel, and JPMorgan agree to keep private and confidential the terms of this Settlement Agreement, except for disclosure at the Court's direction or disclosure *in camera* to the Court, until this document is filed with the Court, provided, however, that nothing in this Section shall prevent JPMorgan from making any disclosures it deems necessary to comply with any relevant laws, subpoena or other form of judicial process. Nothing in this provision shall preclude JPMorgan from disclosing, without notice to Plaintiffs' Counsel, the fact, amount, or terms of the Settlement as a result of a good faith determination that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements, or other legal or regulatory requirements, or from disclosing the fact, amount, or terms of the Settlement to its regulators, insurers, or external auditors.

### 26.        Binding Effect

(A)     The Parties intend this Settlement Agreement to be binding upon, and inure to the benefit of, the successors and assigns of JPMorgan, the Released Parties, the Representative

Plaintiffs, and Settling Class Members.  The Parties enter into this Settlement Agreement with full knowledge that adverse or favorable court decisions and/or other events, including those pertaining to any of the Representative Plaintiffs' capacity to serve as litigants or class representatives, may take place in the future that might affect the positions of either or both parties, including prior to Final Approval of the Settlement.  The Parties intend to be bound by this Settlement Agreement notwithstanding the possibility or occurrence of any such future events or changes in position.

(B)     The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

## 27.        Integrated Agreement

This Settlement Agreement, including any exhibits hereto and agreements referenced herein, contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for or referenced herein. This Settlement Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Parties to this Settlement Agreement with respect hereto, including the Term Sheet executed on June 5, 2018. This Settlement Agreement may not be modified in any respect except by a writing that is executed by all the Parties hereto.

## 28.        No Conflict Intended

The headings used in this Settlement Agreement are for the convenience of the reader only and shall not have any substantive effect on the meaning and/or interpretation of this Settlement Agreement.

### 29. No Party is the Drafter

None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision herein for the purpose of any statute, case law, or rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 30. Choice of Law

All terms within the Settlement Agreement and its exhibits hereto shall be governed by and interpreted according to the substantive laws of the State of New York, without regard to its choice of law or conflict of laws principles, including N.Y. General Obligations Law § 15-108.

### 31. Execution in Counterparts

This Settlement Agreement may be executed in one or more counterparts. Facsimile and scanned/PDF signatures shall be considered valid signatures. All executed counterparts shall be deemed to be one and the same instrument. There shall be no agreement until the fully signed counterparts have been exchanged and delivered on behalf of all Parties.

### 32. Submission to and Retention of Jurisdiction

The Parties, Released Parties, and the Settlement Class irrevocably submit, to the fullest extent permitted by law, to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or the exhibits hereto. For the purpose of such suit, action, or proceeding, to the fullest extent permitted by law, the Parties, Released Parties and the Settlement Class irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court

lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.

### 33.        Contribution and Indemnification

This Settlement Agreement is expressly intended to absolve the Released Parties against any claims for contribution, indemnification, or similar claims from other Defendants arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York or any other jurisdiction that might be construed or deemed to apply for claims of contribution, indemnification, or similar claims against any Released Party. Notwithstanding the foregoing, should any court determine that any Defendant is or was legally entitled to any kind of contribution or indemnification from JPMorgan arising out of or related to the Released Claims, the Releasing Parties agree that any money judgment subsequently obtained by the Releasing Parties against any Defendant shall be reduced to an amount such that, upon paying the entire amount, the Defendant would have no claim for contribution, indemnification, or similar claims against JPMorgan.

### 34.        Reservation of Rights

This Settlement Agreement does not settle or compromise any claims by Representative Plaintiffs or any Class Member asserted against any Defendant or any potential defendant other than JPMorgan and the Released Parties. The rights of any Class Member against any other Person other than JPMorgan and the Released Parties are specifically reserved by Representative Plaintiffs and the Class Members.

### 35.        Notices

All notices and other communications under this Settlement Agreement shall be sent to the Parties to this Settlement Agreement at their address set forth on the signature page herein,

*viz*, if to Representative Plaintiffs, then to: Vincent Briganti & Geoffrey M. Horn, Lowey Dannenberg, P.C., 44 South Broadway, Suite 1100, White Plains, New York 10601, and Christopher Lovell, Lovell, Stewart, Halebian, Jacobson LLP, 61 Broadway, Suite 501, New York, NY 10006; and if to JPMorgan, then to Paul C. Gluckow, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, with a copy to Nancy E. Schwarzkopf, JPMorgan Chase, 4 New York Plaza, Mail Code NY1 E076, New York, New York 10004-2413, or such other address as each party may designate for itself, in writing, in accordance with this Settlement Agreement.

### 36.      Authority

In executing this Settlement Agreement, Plaintiffs' Counsel represent and warrant that they have been fully authorized to execute this Settlement Agreement on behalf of the Representative Plaintiffs and the Settlement Class (subject to final approval by the Court after notice to all Class Members), and that all actions necessary for the execution of this Settlement Agreement have been taken. JPMorgan represents and warrants that the undersigned is fully empowered to execute the Settlement Agreement on behalf of JPMorgan, and that all actions necessary for the execution of this Settlement Agreement have been taken.

### 37.      Disputes or Controversies

(A)      Any dispute or controversy arising out of or relating to the cooperation or termination provisions of this Settlement Agreement shall be resolved first by discussion among counsel for the Parties and, failing that, by confidential mediation, or, if mediation fails to resolve the dispute, by arbitration, in each case administered by a sole neutral arbitrator agreed upon by all Parties at JAMS, Inc., formerly known as Judicial Arbitration and Mediation Services ("JAMS"), in accordance with its procedures and Comprehensive Arbitration Rules &

Procedures then in effect ("Rules") and in accordance with the Expedited Procedures in those Rules (or such other alternative dispute resolution organization as all parties shall agree), except as modified herein. If the Parties are unable to agree on the sole arbitrator within thirty (30) calendar days from the date on which the arbitration is commenced, JAMS shall appointment the sole arbitrator. The seat of arbitration shall be New York, New York.

(B)    The arbitration shall be conducted on a strictly confidential basis, and the Parties shall not disclose the existence or nature of any claim; any documents, correspondence, briefing, exhibits, or information exchanged or presented in connection with any claim; or any rulings, decisions, or results in the context of arbitration (collectively, "Arbitration Materials") to any third party, except to the Parties' respective legal counsel (who shall also be bound by these confidentiality terms), under seal in any judicial proceeding commenced in connection with this Section 37, or to the extent that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements, or other legal or regulatory requirements.

(C)    The arbitral decision shall be final and binding upon the parties hereto.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction. Except as the Rules may provide, the Parties shall share JAMS's administrative fees and the mediator's or arbitrator's fees and expenses. Each Party shall be responsible for such Party's attorneys' fees and costs except as otherwise provided by any applicable statute or other law. Either Party may commence litigation in any state or federal court of competent jurisdiction located in New York County, New York to obtain injunctive relief in aid of arbitration, to compel arbitration, or to confirm or vacate an arbitrator's award.  The Parties agree to take all steps necessary to protect the confidentiality of the Arbitration Materials in connection with any such proceeding, agree to use their best efforts to file all confidential information (and

45

documents containing confidential information) under seal, and agree to the entry of an appropriate protective order encompassing the confidentiality terms of any settlement agreement.

### 38.        Stay

The Parties stipulate and agree that all proceedings and deadlines in the Action (including with respect to discovery, except with respect to JPMorgan's cooperation obligations as provided in Section 4 above) between Representative Plaintiffs and JPMorgan shall be stayed pending the Court's entry of the Conditional Certification Order.  The stay will automatically be dissolved if (a) the Court does not enter the Conditional Certification Order, the Final Approval Order, or the Final Judgment, or (b) the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Final  Judgment is finally vacated, modified, or reversed, unless the Parties, in their sole discretion within thirty (30) calendar days from the date of the mailing of such ruling to such Parties, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Conditional Certification Order, the Final Approval Order, or the Final Judgment, as modified by the Court or on appeal.

[*remainder of page intentionally left blank*]

46

Dated:  November 20, 2018

By: _____

Vincent Briganti
Geoffrey M. Horn
LOWEY DANNENBERG, P.C.
44 South Broadway
White Plains, New York 10601
Telephone: (914) 997-0500
vbriganti@lowey.com


By: _____

Christopher Lovell
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
clovell@lshllp.com

*Counsel for Representative Plaintiffs and the Proposed Class*


Dated:  November 20, 2018

By: _____

Paul C. Gluckow
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
pgluckow@stblaw.com

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

Dated:  November 20, 2018      By: _____
                               Vincent Briganti
                               Geoffrey M. Horn
                               LOWEY DANNENBERG, P.C.
                               44 South Broadway
                               White Plains, New York 10601
                               Telephone: (914) 997-0500
                               vbriganti@lowey.com


                               By: _____
                               Christopher Lovell
                               LOVELL STEWART HALEBIAN
                               JACOBSON LLP
                               61 Broadway, Suite 501
                               New York, NY 10006
                               Telephone: (212) 608-1900
                               clovell@lshllp.com

                               *Counsel for Representative Plaintiffs and the Proposed
                               Class*


Dated:  November 20, 2018      By: _____
                               Paul C. Gluckow
                               SIMPSON THACHER & BARTLETT LLP
                               425 Lexington Avenue
                               New York, New York 10017
                               Telephone: (212) 455-2000
                               pgluckow@stblaw.com

                               *Counsel for Defendants JPMorgan Chase & Co. and
                               JPMorgan Chase Bank, N.A.*

Dated:  November 20, 2018          By: _____
                                        Vincent Briganti
                                        Geoffrey M. Horn
                                        LOWEY DANNENBERG, P.C.
                                        44 South Broadway
                                        White Plains, New York 10601
                                        Telephone: (914) 997-0500
                                        vbriganti@lowey.com


                                   By: _____
                                        Christopher Lovell
                                        LOVELL STEWART HALEBIAN
                                        JACOBSON LLP
                                        61 Broadway, Suite 501
                                        New York, NY 10006
                                        Telephone: (212) 608-1900
                                        clovell@lshllp.com

                                        *Counsel for Representative Plaintiffs and the Proposed Class*

Dated:  November 20, 2018          By: _____
                                        Paul C. Gluckow
                                        SIMPSON THACHER & BARTLETT LLP
                                        425 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 455-2000
                                        pgluckow@stblaw.com

                                        *Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

47

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD DENNIS, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., AND FRONTPOINT FINANCIAL HORIZONS FUND, L.P., on behalf of themselves and all others similarly situated, | Docket No. 16-cv-06496 (LAK) |
| Plaintiffs, | |
| -against- | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE BANK, N.A. AUSTRALIA BRANCH, BNP PARIBAS, S.A., BNP PARIBAS, AUSTRALIA BRANCH, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS N.V., RBS GROUP (AUSTRALIA) PTY LIMITED, UBS AG, UBS AG, AUSTRALIA BRANCH, AUSTRALIA AND NEW ZEALAND BANKING GROUP LTD., COMMONWEALTH BANK OF AUSTRALIA, NATIONAL AUSTRALIA BANK LIMITED, WESTPAC BANKING CORPORATION, DEUTSCHE BANK AG, DEUTSCHE BANK AG, AUSTRALIA BRANCH, HSBC HOLDINGS PLC, HSBC BANK AUSTRALIA LIMITED, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, LLOYDS TSB BANK PLC, AUSTRALIA, MACQUARIE GROUP LTD., MACQUARIE BANK LTD., ROYAL BANK OF CANADA, RBC CAPITAL MARKETS LLC, ROYAL BANK OF CANADA, AUSTRALIA BRANCH, MORGAN STANLEY, MORGAN STANLEY AUSTRALIA LIMITED, CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, ICAP PLC, ICAP AUSTRALIA PTY LTD., TULLETT PREBON PLC, TULLETT PREBON (AUSTRALIA) PTY LTD., AND JOHN DOES NOS. 1-50. | **EXHIBIT A**<br><br>**[PROPOSED] ORDER GRANTING CONDITIONAL CLASS CERTIFICATION FOR PURPOSES OF CLASS ACTION SETTLEMENT WITH JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.** |
| Defendants. | |

This putative class action comes before the Court on Plaintiffs' Unopposed Motion for Conditional Class Certification ("Motion") and on the Stipulation and Agreement of Settlement as to Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan") dated November 20, 2018 ("Settlement Agreement") entered into by Representative Plaintiffs and JPMorgan in the above-entitled action ("Action").  The Court has reviewed the Motion and the Settlement Agreement, and attached exhibits, which set forth the terms and conditions for a proposed settlement of and for dismissal of the Action with prejudice as against JPMorgan upon the terms and conditions set forth therein; and the Court having read and considered the Stipulation and the attached exhibits finds that the Motion is due to be granted.

All defined terms used in this Order shall have the same meanings as set forth in the Settlement Agreement, except as otherwise defined herein.  Representative Plaintiffs and JPMorgan are referred to collectively as the "Settling Parties."

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.      For purposes of settlement only, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court hereby certifies a Settlement Class consisting of all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class in accordance with the requirements set forth herein) who purchased, sold, held, traded, or otherwise had any interest in BBSW-Based Derivatives[1] during period January 1, 2003 through December 31, 2012 ("Class Period"), provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class

---

[1] "BBSW-Based Derivatives" means (i) a BBSW-based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (ii) an option on a BBSW-based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a BBSW-based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S; (iv) an Australian dollar currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) an Australian dollar futures contract on the Chicago Mercantile Exchange ("CME"); (vi) an Australian dollar foreign exchange forward entered into by a U.S. Person, or by a Person from or through a location within the U.S.; and/or (vii) 90-day Bank Accepted Bill futures contracts on the Australian Securities Exchange entered into by a U.S. Person, or by a Person from or through a location within the U.S.

motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants (as defined in the Settlement Agreement) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government. Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants (as defined in the Settlement Agreement) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles[2] are not to be excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants. However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

2.      Solely for the purposes of effectuating the Settlement, the Court finds and concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) have been satisfied as follows:

(a)     the members of the Settlement Class are so numerous that joinder of all class members is impracticable;

(b)     there are questions of law and fact common to the Settlement Class which predominate over any individual questions;

(c)     the claims of the Representative Plaintiffs are typical of the claims of the Settlement Class;

---

[2] "Investment Vehicles" means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

(d)     Representative Plaintiffs and Class Counsel will fairly and adequately represent and protect the interests of all of the Settlement Class Members; and

(e)     a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.     If for any reason the Effective Date of the Settlement, as defined in Section 1(Q) and Section 18 of the Settlement Agreement, does not occur, the Settlement Agreement, including any amendment(s) thereof, and this Order conditionally certifying the Settlement Class solely for purposes of the Settlement shall, without the need for further action by the Court or either of the Settling Parties, be null and void, of no further force or effect, and without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity.  Each party shall be restored to his, her or its respective position as it existed as of June 5, 2018.  In such circumstances, each of the Settling Parties shall retain its currently existing rights to seek or to object to the certification of this litigation as a class action under Fed. R. Civ. P. 23, or any state or federal rule, statute, law, or provision, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any other grounds.

4.     The Court appoints Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP as Class Counsel to such Settlement Class for purposes of the Settlement, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

5.     The Court appoints Citibank N.A as Escrow Agent for purposes of the Settlement Fund defined in the Settlement Agreement.  The Court preliminarily approves the establishment of the Settlement Fund as qualified settlement funds pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

6. Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and Fund Liquidation Holdings, LLC will serve as representatives of such Settlement Class for purposes of the Settlement.

7. The timing, plan, and forms of the Class Notice to the Settlement Class and the date of the Fairness Hearing before this Court to consider any member(s) of the Settlement Class's objections to final approval of the Settlement and to consider the fairness, adequacy and reasonableness of the proposed Settlement and Settlement Agreement shall all be determined by separate order of this Court.

8. At a later date, Class Counsel shall submit for the Court's approval a proposed plan of distribution of the Settlement Funds.

9. This civil action was commenced after February 18, 2005. The Court directs JPMorgan to notify the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). Counsel for JPMorgan shall, at or before the Fairness Hearing, file with the Court proof of compliance with CAFA.

10. All proceedings in the Action as to JPMorgan, other than proceedings as may be necessary to implement the proposed Settlement or to effectuate the terms of the Settlement Agreement, are hereby stayed and suspended until further order of this Court. Pending determination of whether the Settlement should be approved, Representative Plaintiffs, Class Counsel and Settlement Class Members are barred and enjoined from commencing or prosecuting any Released Claims against any of the Released Persons.

11. Neither this Order, the Settlement Agreement, the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or Settlement, whether or not the Settlement shall become final, is or shall be deemed or construed

to be an admission, adjudication, or evidence of (i) any violation of any statute or law or of the validity of any claims, alleged wrongdoing, or liability of JPMorgan or any Released Party; (ii) the incurrence of any damage, loss, or injury by Representative Plaintiffs or any Person; (iii) the existence or amount of any artificiality; (iv) any fault or omission of JPMorgan in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (v) the propriety of certification of a class other than solely for purposes of the Settlement.  Further, neither this Order, the Settlement Agreement, nor the Settlement contained therein, whether or not the Settlement shall become final, nor any negotiations, documents and discussions associated with them, nor the Final Approval Order and Final Judgment, may be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, whether by the Settlement Class or any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action in which either Settlement Agreement is asserted as a defense (in which case this paragraph does not apply).  All rights of JPMorgan and Representative Plaintiffs are reserved and retained if either Settlement does not become final in accordance with the terms of the Settlement Agreement.

12.     Neither this Order, the Settlement Agreement, the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement is or may be used as an admission or evidence that the claims of Representative Plaintiffs lacked merit in any proceeding against anyone other than JPMorgan in any court, administrative agency, or other tribunal.

13.     Except as otherwise provided herein, in the event that the Settlement Agreement is terminated, vacated, not approved, or the Effective Date fails to occur for any reason, then the Parties shall be deemed to have reverted to their respective status in the Action as of the Execution Date and the Settlement Amount, and all interest earned in the Settlement Fund on that Settlement

Amount, shall be refunded, reimbursed, and repaid to the Settling Defendant to the extent provided in the Settlement Agreement.

14.     All funds held by the Escrow Agent shall be deemed and considered to be *in custodial legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement, returned to the Person(s) paying the same pursuant to the Settlement Agreement and/or further order(s) of the Court.

15.     If the Settlement is terminated pursuant to Section 21 of the Settlement Agreement or if the Settlement is ultimately not approved or does not become final for any reason, the Court will modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation.

16.     The Court's conditional certification of the Settlement Class and appointment of Representative Plaintiffs as class representatives, as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest any other request by Representative Plaintiffs to certify a class.  The Court's findings in this Conditional Certification Order shall have no effect on the Court's ruling on any motion to certify any class in this litigation, or appoint class representatives, and no party may cite or refer to the Court's approval of the Settlement Class as binding or persuasive authority with respect to any motion to certify such class or appoint class representatives.

ENTERED this _____ day of _____, _____.

_____
Hon. Lewis A. Kaplan
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

RICHARD DENNIS, SONTERRA CAPITAL MASTER
FUND, LTD., FRONTPOINT FINANCIAL SERVICES
FUND, L.P., FRONTPOINT ASIAN EVENT DRIVEN
FUND, L.P., AND FRONTPOINT FINANCIAL HORIZONS
FUND, L.P., on behalf of themselves and all others similarly
situated,

Docket No. 16-cv-06496 (LAK)

Plaintiffs,

-against-

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK,
N.A., JPMORGAN CHASE BANK, N.A. AUSTRALIA
BRANCH, BNP PARIBAS, S.A., BNP PARIBAS, AUSTRALIA
BRANCH, THE ROYAL BANK OF SCOTLAND GROUP
PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS N.V.,
RBS GROUP (AUSTRALIA) PTY LIMITED, UBS AG, UBS
AG, AUSTRALIA BRANCH, AUSTRALIA AND NEW
ZEALAND BANKING GROUP LTD., COMMONWEALTH
BANK OF AUSTRALIA, NATIONAL AUSTRALIA BANK
LIMITED, WESTPAC BANKING CORPORATION,
DEUTSCHE BANK AG, DEUTSCHE BANK AG,
AUSTRALIA BRANCH, HSBC HOLDINGS PLC, HSBC
BANK AUSTRALIA LIMITED, LLOYDS BANKING GROUP
PLC, LLOYDS BANK PLC, LLOYDS TSB BANK PLC,
AUSTRALIA, MACQUARIE GROUP LTD., MACQUARIE
BANK LTD., ROYAL BANK OF CANADA, RBC CAPITAL
MARKETS LLC, ROYAL BANK OF CANADA, AUSTRALIA
BRANCH, MORGAN STANLEY, MORGAN STANLEY
AUSTRALIA LIMITED, CREDIT SUISSE GROUP AG,
CREDIT SUISSE AG, ICAP PLC, ICAP AUSTRALIA PTY
LTD., TULLETT PREBON PLC, TULLETT PREBON
(AUSTRALIA) PTY LTD., AND JOHN DOES NOS. 1-50.

**EXHIBIT B**

**[PROPOSED]
FINAL APPROVAL ORDER
OF CLASS ACTION
SETTLEMENT WITH
JPMORGAN CHASE & CO. AND
JPMORGAN CHASE BANK, N.A.**

Defendants.

This matter came for a duly-noticed hearing on _____ 201_ (the "Fairness Hearing"), upon the Representative Plaintiffs'[1] Motion for Final Approval of Class Action Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan") in the action captioned *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) (the "Action"), which was consented to by JPMorgan (together with Representative Plaintiffs, the "Parties").  Due and adequate notice of the Stipulation and Agreement of Settlement, dated November 20, 2018 (the "Settlement Agreement") having been given to the members of the Settlement Class, the Fairness Hearing having been held and the Court having considered all papers filed and proceedings had in the Action, and otherwise being fully informed in the premises and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      This Final Approval Order hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.      For purposes only of the settlement of the Released Claims[2] set forth in the Settlement Agreement (the "Settlement"), the Court hereby finally certifies the Settlement Class:

---

[1] Representative Plaintiffs are Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and Fund Liquidation Holdings, LLC, and any subsequently named plaintiff(s).

[2] "Released Claims" means any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties concerning any BBSW-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.),  including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise

All Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in BBSW-Based Derivatives during the period January 1, 2003 through December 31, 2012. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

3.      Based on the record, the Court reconfirms that the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for purposes only of the Settlement.

4.      In so holding, the Court finds that, solely for purposes of settlement, the Settlement Class meets all of the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3).  The Court hereby finds, in the specific context of this Settlement, that: (i) the Settlement Class is so numerous that joinder of all members of the Settlement Class is impracticable, FED. R. CIV. P. 23(a)(1); (ii) common questions of law and fact exist with regard to JPMorgan's alleged manipulation of BBSW and the prices of BBSW-Based Derivatives, FED. R. CIV. P. 23(a)(2); (iii) the Representative Plaintiffs' claims in this litigation are typical of those of the members of the Settlement Class, FED. R. CIV. P. 23(a)(3); and (iv) the Representative Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent members of the Settlement Class and Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP  ("Class Counsel") has adequately represented the interests of the Settlement Class, FED. R. CIV. P. 23(a)(4).  The Court also finds that common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior

---

had any interest, including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., the Commodity Exchange Act, 7 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law).  The following claims shall not be released by this Settlement: (i) any claims against former JPMorgan employees arising solely from those former employees' conduct that occurred while not employed by JPMorgan; (ii) any claims against the named Defendants in this Action other than JPMorgan; or (iii) any claims against any Defendant not affiliated with JPMorgan who may be subsequently added in this Action.  For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States."  Settlement Agreement § 12.

to other available methods for fairly and efficiently adjudicating this controversy.  FED. R. CIV. P. 23(b)(3).

5.     Representative Plaintiffs are hereby approved to serve as representatives of such Settlement Class for purposes of the Settlement.

6.     Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP are appointed Class Counsel to the Settlement Class for the purposes of the Settlement.

7.     This Court has personal jurisdiction over the Plaintiffs and JPMorgan (in the Action only and for purposes of the Settlement), and all members of the Settlement Class and subject matter jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached.

8.     The Court finds that the mailed notice, publication notice, website, and Class Notice plan implemented pursuant to the Settlement Agreement and approved by the Court in the Order dated _____, 201_: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, of their right to exclude themselves from or object to the proposed Settlement, of their right to appear at the Fairness Hearing, of the Distribution Plan, and of Class Counsel's application for the Attorneys' Fees Award and any Incentive Award, and for reimbursement of expenses associated with the Action; (c) provided a full and fair opportunity to all members of the Settlement Class to be heard with respect to the foregoing matters; and (d) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process, and any other applicable rules or law.  Based upon JPMorgan's submission to the Court dated _____, the Court further finds that JPMorgan has complied with the obligations imposed on it under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

9.     The Court finds that ___ members of the Settlement Class have validly requested to be excluded from the Settlement Class as it relates to the Settlement. Those excluded members of the Settlement Class are identified at ECF No. __.

10.    The Court finds that __ objections to the proposed Settlement have been submitted. Notwithstanding the [lack of] objections, the Court has independently reviewed and considered all relevant factors and has conducted an independent examination into the propriety of the proposed Settlement. [The Court finds all objections are without merit and they are hereby overruled.]

11.    It is hereby determined that all members of the Settlement Class are bound by the Settlement Agreement and this Final Approval Order regardless of whether such members of the Settlement Class execute and deliver a Proof of Claim and Release, and all of their Released Claims against the Released Parties,[3] as provided under the Settlement Agreement, are hereby dismissed with prejudice and released.

12.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Settlement, as set forth in the Settlement Agreement, and finds that the Settlement is, in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Class, including the Representative Plaintiffs.  In reaching this conclusion, the Court considered the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties, and that Class Counsel and the

---

[3]  "Released Parties" means "JPMorgan, its predecessors, successors and assigns, its past, present, and future direct and indirect parents, subsidiaries and affiliates, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of JPMorgan), shareholders (in their capacity as shareholders of JPMorgan), attorneys, insurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, 'affiliates' means entities controlling, controlled by, or under common control with a Released Party.  For the avoidance of doubt, 'Released Parties' shall not include any named Defendants other than JPMorgan."  Settlement Agreement § 1(HH).

Representative Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Settlement Agreement.  Accordingly, the Settlement embodied in the Settlement Agreement is hereby approved in all respects.  The Parties are hereby directed to carry out the Settlement Agreement in accordance with all of its terms and provisions, including the termination provisions.

13.     Notwithstanding the entry of this Final Approval Order, if the Settlement Agreement is validly terminated by the Representative Plaintiffs or JPMorgan, is disapproved in whole or in part by the Court, any appellate court, or any other court of review, or does not become final in accordance with its terms, then the provisions of this Final Approval Order dismissing the Representative Plaintiffs' and Settlement Class' claims shall be null and void with respect to the Settlement; the Representative Plaintiffs' and Settlement Class' claims shall be reinstated; JPMorgan's defenses shall be reinstated; the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with it, including but not limited to any requests for exclusion from the Settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any and all negotiations, documents, and discussions associated with it and the releases set forth in the Settlement Agreement, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions before the Settlement Agreement was signed.  Notwithstanding the language in this section, any provision(s) in the Settlement Agreement that the Parties have agreed shall survive their termination shall continue to have the same force and effect intended by the Parties.

14.     The Settlement Fund defined in the Settlement Agreement has been established as a trust and shall be established as a fiduciary account (the "Settlement Fiduciary Account").  The Court further approves the establishment of the Settlement Fiduciary Account under the Settlement

Agreement as qualified settlement funds pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

15.     Without affecting the finality of the Final Approval Order for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement contemplated thereby and over the enforcement of this Final Approval Order.  The Court also retains exclusive jurisdiction to resolve any disputes that arise out of or relate to the Settlement Agreement, the Settlement, or the Settlement Fund (except for such disputes and controversies as are subject to Section 37 of the Settlement Agreement, which disputes and controversies shall be governed by the respective terms of such section), to consider or approve administration costs and fees, including but not limited to fees and expenses incurred to administer the Settlement after the entry of the Final Approval Order, and to consider or approve the amounts of distributions to members of the Settlement Class.  In addition, without affecting the finality of this Final Approval Order, the Representative Plaintiffs, JPMorgan, and the Settlement Class hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Final Approval Order or the Settlement Agreement.  Any disputes involving the Representative Plaintiffs, JPMorgan, or members of the Settlement Class concerning the implementation of the Settlement Agreement shall be submitted to the Court.

16.     Each Class Member must execute a release and covenant not to sue, in conformity with the Settlement Agreement, as incorporated into the Proof of Claim and Release form, in order to receive the Class Member's share, if any, of the Net Settlement Fund defined in the Settlement Agreement.  The Court hereby confirms the appointment of _____ as Settlement Administrator, and directs that the Settlement Administrator shall ensure that each Proof of Claim and Release form provided to Class Members contains a copy of such release and covenant not to

sue.  However, Class Members' claims shall be released pursuant to Section 12 of the Settlement Agreement regardless of whether the Class Member executes a release and covenant not to sue pursuant to this paragraph 16.

17.     The Court hereby approves the Releasing Parties' releases of the Released Claims as set forth in this Final Approval Order as of the Effective Date.

18.     The Court declares that the Settlement Agreement and the Final Approval Order shall be binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings against the Released Parties involving the Released Claims that are maintained by or on behalf of any Releasing Party regardless of whether the Releasing Party previously initiated or subsequently initiates individual litigation or other proceedings involving the Released Claims, and even if such Releasing Party never received actual notice of the Action or the proposed Settlement.

19.     The Court permanently bars and enjoins the Releasing Parties and all Settling Class Members from: (a) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction against JPMorgan or any Released Parties based on the Released Claims; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any members of the Settlement Class (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), against JPMorgan or any Released Parties based on the Released Claims; (c) organizing members of the Settlement Class into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) against JPMorgan or any Released Parties based on

the Released Claims; or (d) assisting any third party in the prosecution of any Released Claims against any Released Parties.

20.     The Court permanently bars and enjoins claims by any Person against JPMorgan or any Released Parties for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.  To the extent permitted by law, the Court permanently bars and enjoins claims against JPMorgan and any Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise by (a) any of the other Defendants currently named in the Action; (b) any other Person formerly named as a party in the Action; or (c) any other Person subsequently added or joined as a party in the Action.  Should any court determine that any Defendant is or was legally entitled to any kind of set-off, apportionment, contribution, or indemnification from JPMorgan or any Released Parties arising out of or related to Released Claims, any money judgment subsequently obtained by the Releasing Parties against any Defendant shall be reduced to an amount such that, upon paying the entire amount, the Defendant would have no claim for set-off, apportionment, contribution, indemnification, or similar claims against JPMorgan or any Released Parties.

21.     Neither the Settlement Agreement (nor its respective exhibits), whether or not it shall become final, nor any negotiations, documents exchanged among counsel for the Representative Plaintiffs and JPMorgan in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or evidence of: (a) any violation of any statute or law or of any liability or wrongdoing by JPMorgan or any Released Party; (b) the truth of any of the claims or allegations alleged in the Action; (c) the incurrence of any damage, loss, or injury by any Person; (d) the existence or amount of any artificiality; or (e) the propriety of certification of a class other

than solely for purposes of the Settlement.  Further, neither the Settlement Agreement (nor its exhibits), whether or not it shall become final, nor any negotiations, documents exchanged among counsel for the Representative Plaintiffs and JPMorgan in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Final Judgment, may be discoverable, offered or received in evidence, or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, by any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action (including this Action) in which the Settlement Agreement is asserted as a defense.  Notwithstanding anything to the contrary herein, the foregoing provisions do not apply to discovery or cooperation materials provided by JPMorgan to the Representative Plaintiffs or by the Representative Plaintiffs to the JPMorgan in connection with the Settlement or the Action. The Parties, without the need for approval from the Court, may adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) shall be consistent in all material respects with the Final Approval Order; and (ii) do not limit the rights of Settling Class Members.

22.     The Court finds that, during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure as to each other.  Any data or other information provided by members of the Settlement Class in connection with the submission of claims shall be held in strict confidence, available only to the Settlement Administrator, Class Counsel, and experts or consultants acting on behalf of the Settlement Class.  In no event shall a member of the Settlement Class's data or personal information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

23.     The Proof of Claim and Release form, Distribution Plan, and the Supplemental Agreement referenced in Section 23 of the Settlement Agreement are each approved as fair, reasonable, and adequate.

24.     The word "days," as used herein, means calendar days.  In the event that any date or deadline set forth herein falls on a weekend or federal or state legal holiday, such date or deadline shall be deemed moved to the first business day thereafter.

25.     The Court's certification of the Settlement Class and appointment of the Representative Plaintiffs as Class Representatives, as provided herein, is without prejudice to, or waiver of, the rights of any Defendant to contest any other request by the Representative Plaintiffs to certify a class.  The Court's findings in this Final Approval Order shall have no effect on the Court's ruling on any motion to certify any class or to appoint Class Representatives in this litigation or any challenge to the Representative Plaintiffs' capacity to litigate or to represent a putative class, and no party may cite or refer to the Court's approval of the Settlement Class as binding or persuasive authority with respect to any such motion or challenge.

**IT IS SO ORDERED.**

Signed this ____ day of _____, 201_.

_____
Hon. Lewis A. Kaplan
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD DENNIS, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., AND FRONTPOINT FINANCIAL HORIZONS FUND, L.P., on behalf of themselves and all others similarly situated, | Docket No. 16-cv-06496 (LAK) |
| Plaintiffs, | |
| -against- | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE BANK, N.A. AUSTRALIA BRANCH, BNP PARIBAS, S.A., BNP PARIBAS, AUSTRALIA BRANCH, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS N.V., RBS GROUP (AUSTRALIA) PTY LIMITED, UBS AG, UBS AG, AUSTRALIA BRANCH, AUSTRALIA AND NEW ZEALAND BANKING GROUP LTD., COMMONWEALTH BANK OF AUSTRALIA, NATIONAL AUSTRALIA BANK LIMITED, WESTPAC BANKING CORPORATION, DEUTSCHE BANK AG, DEUTSCHE BANK AG, AUSTRALIA BRANCH, HSBC HOLDINGS PLC, HSBC BANK AUSTRALIA LIMITED, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, LLOYDS TSB BANK PLC, AUSTRALIA, MACQUARIE GROUP LTD., MACQUARIE BANK LTD., ROYAL BANK OF CANADA, RBC CAPITAL MARKETS LLC, ROYAL BANK OF CANADA, AUSTRALIA BRANCH, MORGAN STANLEY, MORGAN STANLEY AUSTRALIA LIMITED, CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, ICAP PLC, ICAP AUSTRALIA PTY LTD., TULLETT PREBON PLC, TULLETT PREBON (AUSTRALIA) PTY LTD., AND JOHN DOES NOS. 1-50. | **EXHIBIT C**<br><br>**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE OF JPMORGAN CHASE & CO., AND JPMORGAN CHASE BANK, N.A.** |
| Defendants. | |

This matter came for a duly-noticed hearing on _____ 201_ (the "Fairness Hearing"), upon the Representative Plaintiffs'[1] Motion for Final Approval of Class Action Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan") in the action captioned *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) (the "Action"), which was consented to by JPMorgan (together with Representative Plaintiffs, the "Parties"). The Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    This Final Judgment hereby incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 20, 2018 between Representative Plaintiffs and JPMorgan (the "Settlement Agreement"), and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.    The Action, including each claim in the Action, is hereby dismissed with prejudice on the merits as to JPMorgan without fees or costs.

3.    Upon the Settlement becoming final in accordance with its terms, all of the following claims shall be released. Specifically, the Releasing Parties[2], and any other Person claiming against

---

[1] Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and Fund Liquidation Holdings, LLC, and any subsequently named plaintiff(s). Unless otherwise noted, ECF citations are to the docket in *Richard Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) and internal citations and quotation marks are omitted.

[2] "Releasing Parties" means "each and every Representative Plaintiff and each and every Settling Class Member (as defined in Section 1(OO) herein) on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacity as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacity as such, whether or not they object to the Settlement or make a claim for payment under the Net Settlement Fund. Notwithstanding that the U.S. Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasing Parties include any Settling Class Member as to which the government entity has the legal right to release such claims. As used in this provision, 'affiliates' means

the Settlement Fund (now or in the future) through or on behalf of any Releasing Party, shall be

deemed to have, and by operation of the Judgment shall have, fully, finally and forever released,

relinquished and discharged from and covenanted not to sue the Released Parties[3] for any and all

manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges,

liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for

any obligations of any kind whatsoever (however denominated), whether class, derivative, or

individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or

otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages,

whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or

unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of

them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any

other capacity, against the Released Parties arising from or relating in any way to conduct alleged in

the Action, or which could have been alleged in the Action against the Released Parties concerning

any BBSW-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to

BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, Class

Members, and/or Settling Class Members (to the extent such similar financial instruments were

entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including

---

entities controlling, controlled by, or under common control with a Releasing Party.  For the avoidance of doubt, the 'Releasing Parties' include all Persons entitled to bring or release claims on behalf of Settling Class Members, relating to their transactions in BBSW-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to BBSW held by Representative Plaintiffs or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.)."  Settlement Agreement § 1(II).

    [3] "Released Parties" means "JPMorgan, its predecessors, successors and assigns, its past, present, and future direct and indirect parents, subsidiaries and affiliates, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of JPMorgan), shareholders (in their capacity as shareholders of JPMorgan), attorneys, insurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, 'affiliates' means entities controlling, controlled by, or under common control with a Released Party.  For the avoidance of doubt, 'Released Parties' shall not include any named Defendants other than JPMorgan."  Settlement Agreement § 1(HH).

additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law).  The following claims shall not be released by this Settlement: (i) any claims against former JPMorgan employees arising solely from those former employees' conduct that occurred while not employed by JPMorgan; (ii) any claims against the named Defendants in this Action other than JPMorgan; or (iii) any claims against any Defendant not affiliated with JPMorgan who may be subsequently added in this Action.  For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

4.      Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code. Releasing Parties

and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts. In entering and making this Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

5.      Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

6.      The Court, finding no just reason for delay, directs pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the judgment of dismissal as to JPMorgan shall be final and entered forthwith.

**IT IS SO ORDERED.**

Signed this ____ day of _____, 201_.

_____
Hon. Lewis A. Kaplan
United States District Judge