UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD DENNIS, et al.,

                Plaintiffs

            -against-                        16-cv-6496 (LAK)

JPMORGAN CHASE & CO., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Christian Levis
        Geoffrey Milbank Horn
        Lee Jason Lefkowitz
        Peter Dexter St. Phillip, Jr.
        Raymond Peter Girnys
        Roland Raymond St. Louis, III
        Sitso W. Bediako
        Vincent Briganti
        LOWEY DANNENBERG P.C.

        Christopher Lovell
        Edward Y. Kroub
        LOVELL STEWART HALEBIAN JACOBSON LLP

        *Attorneys for Plaintiffs*

        Paul Christopher Gluckow
        Abram Jeremy Ellis
        Alan Craig Turner
        Alexander Nuo Li
        Eamonn Wesley Campbell
        Francis John Acott
        Jonathan Thomas Menitove

Mary Beth Forshaw
Michael Steven Carnevale
Rachel Serenity Sparks Bradley
Sarah Emily Phillips
SIMPSON THACHER & BARTLETT LLP (NY)
*Attorneys for Defendants JPMorgan Chase & Co. & JPMorgan Chase Bank, N.A.*

Jayant W. Tambe
Kelly A. Carrero
Stephen Jay Obie
JONES DAY (NYC)
*Attorneys for Defendant BNP Paribas, S.A.*

David Sapir Lesser
Fraser Lee Hunter, Jr.
Jamie Stephen Dycus
WILMER CUTLER PICKERING HALE & DORR LLP (NYC)
*Attorneys for Defendants The Royal Bank of Scotland Group plc, RBS N.V., RBS Group (Australia) Pty Limited & The Royal Bank of Scotland plc*

Eric Jonathan Stock
Jefferson Eliot Bell
Mark Adam Kirsch
GIBSON, DUNN & CRUTCHER, LLP (NY)
*Attorneys for Defendant UBS AG*

Jeffrey T. Scott
Mark Aaron Popovsky
SULLIVAN & CROMWELL, LLP (NYC)
*Attorneys for Defendant Commonwealth Bank of Australia*

Penny Shane, II
Corey Omer
SULLIVAN & CROMWELL, LLP (NYC)

Christopher Michael Viapiano
SULLIVAN & CROMWELL, LLP (WASHINGTON DC)
*Attorneys for Defendant Australia and New Zealand Banking Group Ltd.*

ii

David Harold Braff
Matthew Joseph Porpora
Stephen Hendrix Oliver Clarke
SULLIVAN & CROMWELL, LLP (NYC)
*Attorneys for Defendant National Australia Bank Limited*

Daniel Slifkin
Michael A. Paskin
Timothy Gray Cameron
CRAVATH, SWAINE & MOORE LLP
*Attorneys for Defendant Westpac Banking Corporation*

Andrew Joshua Lichtman
Stephen Louis Ascher
JENNER & BLOCK LLP (NYC)

Thomas J. Perrelli
JENNER & BLOCK LLP (DC)
*Attorneys for Defendant Deutsche Bank AG*

Lewis J. Liman
Breon Stacey Peace
Charity Eunah Lee
Jennifer Kennedy Park
Nowell D. Bamberger
CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for Defendants HSBC Holdings plc & HSBC*
*Bank Australia Limited*

Marc Joel Gottridge
Benjamin Andrew Fleming
Kevin Timothy Baumann
Lisa Jean Fried
HOGAN LOVELLS US LLP (NYC)
*Attorneys for Defendant Lloyds Banking Group plc*

Christopher Martin Paparella
Marc Alan Weinstein
HUGHES HUBBARD & REED LLP
*Attorneys for Defendants Macquarie Group Ltd. &*
*Macquarie Bank Ltd.*

iii

Marshall Howard Fishman
Christine Vanessa Sama
GOODWIN PROCTER, LLP (NYC)
*Attorneys for Defendants Royal Bank of Canada & RBC*
*Capital Markets LLC*

Jon Randall Roellke
Kenneth Ian Schacter
Anthony R. Van Vuren
MORGAN, LEWIS & BOCKIUS LLP (NY)
*Attorneys for Defendants Morgan Stanley & Morgan*
*Stanley Australia Limited*

Adam Shawn Mintz
David George Januszewski
Elai E. Katz
Herbert Scott Washer
Jason Michael Hall
Sheila Chithran Ramesh
CAHILL GORDON & REINDEL LLP
*Attorneys for Defendants Credit Suisse Group AG & Credit*
*Suisse AG*

Brian S. Fraser
AKERMAN LLP

H. Rowan Gaither, IV
Shari A. Brandt
RICHARDS KIBBE & ORBE LLP (NYC)
*Attorneys for Defendants ICAP plc & ICAP Australia Pty*
*Ltd.*

Brian Theodore Kohn
Harry Simeon Davis
SCHULTE, ROTH & ZABEL LLP
*Attorneys for Defendants Tullett Prebon plc & Tullett*
*Prebon (Australia) Pty Ltd.*

iv

LEWIS A. KAPLAN, *District Judge.*

In this purported class action, defendants – a collection of entities from fifteen major banks and two major brokerage firms – are accused of conspiring to manipulate the Bank Bill Swap Reference Rate ("BBSW"), a rate set at the relevant times in Australia but allegedly used widely in the United States and elsewhere in the world as a benchmark for the pricing of various financial derivatives among other purposes.  Plaintiffs are one individual and four entities, each of whom or which entered into financial derivatives that allegedly were priced, benchmarked, and/or settled based on BBSW.

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each of the claims brought by certain of the plaintiffs.  For the reasons discussed below, the motion is granted in all respects.

## Background

Plaintiffs filed this action on August 16, 2016, and the operative amended complaint was filed on December 19, 2016.  It alleges that defendants used various means systematically to manipulate BBSW and seeks damages for alleged violations of the Sherman Act, the Commodity Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act and claims of unjust enrichment and breach of the implied covenant of good faith and fair dealing.  The Court dismissed certain of those claims in an opinion filed of even date.

All defendants[1] now move to dismiss each of the claims asserted by Sonterra Capital

---

[1] Per the request of defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. the motion to dismiss is stayed as to them.

1

Master Fund, Ltd. ("Sonterra"), FrontPoint Financial Services Fund, L.P. ("FrontPoint Financial Services"), FrontPoint Asian Event Driven Fund, L.P. ("FrontPoint Event Driven"), and FrontPoint Financial Horizons Fund, L.P. ("FrontPoint Horizons" and, together with FrontPoint Financial Services and FrontPoint Event Driven, the "FrontPoint Plaintiffs") because, defendants allege, these plaintiffs no longer exist and therefore lack standing and legal capacity to sue.[2]

There is no dispute that Sonterra and the FrontPoint Plaintiffs were dissolved before the complaint in this case was filed.[3] Plaintiffs maintain that an entity called Fund Liquidation Holdings, LLC ("FLH"), a Delaware LLC, "is (and has always been) the one acting in this case and, as an assignee, unquestionably has the right to enforce the claims that it received."[4] They assert that Sonterra and the FrontPoint Plaintiffs granted FLH the requisite authority by virtue of two asset purchase agreements, one for Sonterra (the "Sonterra APA") and one for the FrontPoint Plaintiffs (the "FrontPoint APA").

Defendants argue that Sonterra and the FrontPoint Plaintiffs lack any personal stake

---

[2] The only named plaintiff not implicated in this motion to dismiss is Richard Dennis.

[3] Sonterra, an exempted company incorporated under Part VII of the Companies Law of the Cayman Islands, was dissolved on December 28, 2012. Declaration of Penny Shane, Exhibit 1 ("Harris Aff.") at ¶¶ 8, 27; *see also* Harris Aff., Exhibits 1 & 4. FrontPoint Financial Services and FrontPoint Event Driven were exempted limited partnerships incorporated under the Exempted Limited Partnership Law of the Cayman Islands. They were dissolved on October 3, 2014 and November 11, 2011, respectively. Harris Aff. at ¶¶ 8, 28-29; *see also* Harris Aff., Exhibits 2-3, 5-6. FrontPoint Horizons, a Delaware limited partnership, was dissolved when a certificate of cancellation was filed on its behalf on November 7, 2014. Defs' Brief of Feb. 23, 2018 ("Defs' Br.") at 4, 9-10.

[4] Pls' Brief of March 13, 2018 ("Pls' Br.") at 1.

in the outcome of this litigation and therefore lack standing.[5]

Plaintiffs do not argue that Sonterra or the FrontPoint Plaintiffs have standing in this case or, in any event, capacity to sue.  Nor do they argue that Sonterra or the FrontPoint Plaintiffs would have been able to bring this suit without the assistance of FLH.  Plaintiffs instead oppose this motion on the grounds that FLH (1) had standing because Sonterra and the FrontPoint Plaintiffs successfully assigned their claims to FLH, and (2) properly brought this lawsuit in Sonterra's and the FrontPoint Plaintiffs' names.  In the alternative, plaintiffs argue that the appropriate remedy would be to permit FLH to be substituted into this action pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure.

## *Discussion*

*Standing and Capacity to Sue*

Assuming *arguendo* that Sonterra and the FrontPoint Plaintiffs completely assigned the claims brought in this case to FLH, they do not have standing to sue because they no longer have an interest in the litigation.[6]

---

[5]

Defs' Br. at 6-7.

[6]

*See, e.g., Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." (citation omitted)); *Rodriguez v. Compass Shipping Co.*, 617 F.2d 955, 958 (2d Cir. 1980), *aff'd*, 451 U.S. 596 (1981) ("A person, such as the employer here, to whom a claim has been assigned under § 33(b), is the real party in interest. Assuming the assignment here to be valid, the right to sue is exclusively that of the employer." (citations omitted)); *Valdin Invs. Corp. v. Oxbridge Cap. Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016) (holding assignors' assignment of its rights extinguished its claims against defendant, depriving assignor of "any interest in this litigation" and concluding assignor "therefore lack[ed] standing"); *see also* 6A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE: CIVIL § 1545, at 496 (2010) ("When

3

Relying on *Valdin Investments Corporation v. Oxbridge Capital Management, LLC*,[7] defendants ask the Court to go one step further and hold that the mere assertion by these plaintiffs that they assigned their claims to FLH deprives them of standing.  In *Valdin*, the Second Circuit held in an unpublished opinion that a complaint should have been dismissed because the plaintiff previously had assigned the claims it asserted against the defendant to a third party.[8]  The Circuit there noted that it "assume[d]" that the assignment had been effective in part because plaintiff, "as the party invoking federal jurisdiction, [bore] the burden of establishing standing" and the court chose not to "question [the plaintiff's] assertions insofar as they demonstrate[d] the absence of standing."[9]  This Court need not reach defendants' argument, however, because even if Sonterra and the FrontPoint Plaintiffs had standing, they would still lack capacity to sue by virtue of having dissolved.

Rule 17(b) provides that capacity to sue is determined (1) "for a corporation, by the law under which it was organized;" and (2) "for all other parties, by the law of the state where the court is located."[10]

The Court first considers Sonterra, an exempted company incorporated under Part VII

---

all the rights to a claim have been assigned, courts generally have held that the assignor no longer may sue."); *cf. Sompo Japan Ins. Co. of Am. v. Norfolk So. Ry. Co.*, 966 F. Supp. 2d 270, 279-80 (S.D.N.Y. 2013) ("An assignee takes all rights of the assignor, no greater and no less." (internal quotation marks and citations omitted)).

[7]

651 F. App'x 5 (2d Cir. 2016).

[8]

*Id.* at 6-7.

[9]

*Id.* at 7 n.3 (emphasis omitted).

[10]

Fed. R. Civ. P. 17(b).

4

of the Companies Law of the Cayman Islands.[11]  There is no binding precedent to guide the Court in determining how it should treat a Cayman Islands exempted company.  Defendants urge the Court to treat Sonterra as a corporation for purposes of Rule 17(b) and therefore apply the law of the Cayman Islands[12] under which the dissolved company would have no capacity to sue.[13]  With no opposition from plaintiffs, the Court is persuaded by defendants' analysis.

As to the FrontPoint Plaintiffs, the Court looks to New York law, which provides that "a partnership formed under the laws of any jurisdiction, including any foreign country, other than the laws of this state and having as partners one or more general partners and one or more limited partners" is deemed a "foreign limited partnership."[14]  New York law provides also that a foreign limited partnership's capacity to sue is determined by reference to the laws of the jurisdiction under

---

[11]

Harris Aff. at ¶ 10.

[12]

Defs' Br. at 8 n.6; *see also Bautista Cayman Asset Co. v. Ferrer Grp., Inc.*, Civil No. 15-2277 (GAG), 2016 WL 1642630, at *3 (D. P.R. Apr. 25, 2016) (treating a Cayman exempt company as a corporation for diversity jurisdiction purposes (citing U.S. GOV'T ACCOUNTABILITY OFFICE, *Cayman Islands: Review of Cayman Islands and U.S. Laws Applicable to U.S. Persons' Financial Activity in the Cayman Islands (GAO-08-1028SP), an E-supplement to GAO-08-778*, at 3 n.1 (July 2008))); Harris Aff. at ¶ 10 n.1 ("Under Cayman Islands law, a company (including an exempted company) is an entity with one or more members (also referred to as contributories or shareholders) whose liability may be limited or unlimited and its business and management is controlled by directors.").

[13]

Harris Aff. at ¶ 24 ("Under Cayman Islands law, dissolution brings the existence of the company or exempted limited partnership to an end.  It no longer has any legal personality and cannot take any lawful action.  It no longer has the capacity to sue or be sued or to assign a claim."); *see id.* at ¶¶ 25-26.

[14]

N.Y. P'SHIP LAW § 121-101(e) (McKinney 2018); *see also* Harris Aff. at ¶ 10 n.2 (stating in affidavit that under Cayman Islands law, an exempted limited partnership is an entity that has partners, including one or more general partners and one or more limited partners); *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 248 (S.D.N.Y. 2012) (treating Delaware limited partnership as "foreign limited partnership" under New York's Partnership Law).

which the foreign limited partnership is organized.[15]  Accordingly, for FrontPoint Financial Services and FrontPoint Event Driven, the Court looks to the law of the Cayman Islands, and for FrontPoint Horizons, the Court looks to Delaware law.  Under each jurisdiction, these dissolved entities lack capacity to sue.[16]

Although plaintiffs do not dispute that Sonterra and the FrontPoint Plaintiffs lacked capacity to sue, they do argue that defendants waived this defense by failing to raise it at the outset of the litigation.[17]

Although plaintiffs' argument is not wholly frivolous, the cases upon which they rely are inapposite.  For example, in *Pressman v. Estate of Steinvorth*,[18] the court held that the capacity to sue defense had been waived where a defendant had not explicitly raised the issue in its answer.[19]

---

[15]

N.Y. P'SHIP LAW § 121-901 (McKinney 2018); *see also In re Residential Capital, LLC*, 527 B.R. 590, 595-96 (S.D.N.Y. Bankr. 2015) ("While New York statutory law may be unclear, 'New York courts judge the liability of partners of an out-of-state partnership according to the laws of the jurisdiction where the partnership was organized.'" (quoting *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 485 (S.D.N.Y. 1996))).

[16]

Harris Aff. at ¶¶ 24-26 (describing Cayman Islands law); DEL. CODE ANN. tit. 6, § 17-803(b) (2017) ("Upon dissolution of a limited partnership *and until the filing of a certificate of cancellation* as provided in § 17-203 of this title, the persons winding up the limited partnership's affairs may, in the name of, and for and on behalf of, the limited partnership, prosecute and defend suits, whether civil, criminal or administrative, . . . without affecting the liability of limited partners and without imposing the liability of a general partner on a liquidating trustee." (emphasis added)); *see also United States v. Ovid*, No. 09-cr-216 (JG) (ALC), 2012 WL 2087084, at *4 n.2 (E.D.N.Y. June 8, 2012) (stating that "the right to bring suits on behalf of the partnership ends after the filing of a certificate of cancellation" (citation omitted)).

[17]

Pls' Br. at 15-17.

[18]

860 F. Supp. 171 (S.D.N.Y. 1994).

[19]

*Id.* at 176-77.

The defendant there had stated in its answer only that the plaintiff lacked legal standing to sue.  It did not meet the pleading standards set forth in Rule 9(a) of the Federal Rules of Civil Procedure, which then required, and still require, a more particular showing when asserting a party's lack of capacity to sue or be sued.[20]  The court therefore held that "[e]ven accepting [the defendant's] assertion that standing and capacity are in effect the same due to their often blurred distinctions among litigants and the courts," the defendant "in effect waived the capacity defense by failing to be more explicit in his answer."[21]

It is true that, as was the case in *Pressman*, a capacity to sue defense may be waived if it is not raised in a party's initial responsive pleading to a claim.[22]  However, "[w]aiver of an

---

[20]

Rule 9(a) then read:

"When a party desires to raise an issue as to the legal existence of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment, which shall include supporting particulars as are peculiarly within the pleader's knowledge."

Rule 9(a)(2) now reads:

"To raise [a party's capacity to sue or be sued, a party's authority to sue or be sued in a representative capacity, or the legal existence of an organized association of persons that is made a party], a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."

[21]

*Pressman*, 860 F. Supp. at 176-77; *see also F.D.I.C. v. Horn*, No. CV-12-5958 (DRH) (AKT), 2015 WL 1611995, at *11-12 (E.D.N.Y. 2015) (rejecting request to amend answer to include more specific capacity to sue defense after finding that defendant "failed to act with the requisite diligence in asserting" this defense because defendant waited nearly seven months to make request); *Hoskins v. E. Air Lines, Inc.*, 265 F. Supp. 842, 845-46 (E.D.N.Y. 1967) (rejecting request to amend answer where court believed defendants had learned or could have learned facts relevant to the plaintiff's capacity to sue two years prior).

[22]

*Animazing Entm't, Inc. v. Louis Lofredi Assocs., Inc.*, 88 F. Supp. 2d 265, 268 (S.D.N.Y. 2000); *see also Domino Media, Inc. v. Kranis*, Nos. 98-9039L, 98-9131, 1999 WL 248156, *1 (2d Cir. Apr. 26, 1999) (holding capacity to sue defense to summary judgment motion was waived by party's "failure to raise the issue in their pleadings"); *Pressman*, 860 F. Supp. at

---

7

affirmative defense 'may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party.'"[23]

In this case, the original complaint described each plaintiff as currently in business at the time of filing.[24]  The amended complaint then changed the descriptions of Sonterra and the FrontPoint Plaintiffs to use the past tense with respect to their business operations.[25]  Defendants moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim on February 24, 2017,[26] but subsequently sought leave to file a supplemental brief addressing these plaintiffs' lack of capacity to sue on October 19, 2017.[27]  In that letter, defendants asserted that they had "recently learned" that Sonterra and the FrontPoint Plaintiffs had been dissolved before the litigation was initiated.[28]

In this case, unlike in *Pressman*, defendants raised their capacity to sue argument in a Rule 12 motion to dismiss before filing an answer to the amended complaint.  Plaintiffs

---

[23]
176 (holding that defense can be waived unless raised "in a timely manner, *i.e.*, at the outset of a lawsuit").

*Animazing Entm't, Inc.*, 88 F. Supp. 2d at 268 (quoting *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998)); *accord Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 464946, at *4 (S.D.N.Y. Feb. 25, 2009).

[24]
DI 1 ¶¶ 33-36.

[25]
DI 63 at ¶¶ 36-39.

[26]
DI 132.

[27]
DI 184.

[28]
*Id.*

8

nonetheless argue that defendants waived the argument because the facts of Sonterra's and the FrontPoint Plaintiffs' dissolutions had been public for years by the time this motion was filed. They argue also that certain defendants had actual knowledge of plaintiffs' dissolution.[29]  Defendants argue in response that plaintiffs owed a duty of candor and that the pleadings were misleading.

It is true that defendants offer no reason for why they did not raise this argument in their initial motion to dismiss. Indeed, ten months went by between the filing of the amended complaint and defendants' letter to the court seeking leave to file a supplemental brief. On the other hand, the case is still in its initial stages and it seems that even plaintiffs are willing to admit that defendants would prevail were the court to consider the motion on the merits. Accordingly, any resulting prejudice to plaintiffs would not be "unfair" because Sonterra and the FrontPoint Plaintiffs in fact do not exist and lack capacity to sue.

On balance, the Court concludes that defendants did not waive the argument that Sonterra and the FrontPoint Plaintiffs lack capacity to sue.

*FLH Suing in Plaintiffs' Names*

The Court now addresses plaintiffs' argument that FLH properly brought this action in Sonterra's and the FrontPoint Plaintiffs' names.

Rule 17(a)(1) of the Federal Rules of Civil Procedure clearly instructs that if FLH indeed was the "real party in interest," then it should have brought this lawsuit in its own name.[30]

---

[29]
Pls' Br. at 16-17.

[30]
Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").

Plaintiffs argue that the respective APAs with FLH "included valid and irrevocable powers of attorney, giving FLH the authority to sue for the claims assigned in FrontPoint's and Sonterra's names."[31]  Although in the ordinary course, and depending on the specific powers granted, a grant of a power of attorney may entitle the holder to bring a lawsuit in the name of the grantor,[32] the power of attorney generally terminates when the grantor ceases to exist.[33]

Plaintiffs here argue that the powers of attorney granted to FLH survived the dissolutions of Sonterra and the FrontPoint Plaintiffs because such powers were granted with

---

[31]

Pls' Br. at 4.

The only two cases plaintiffs cite for this proposition predate the Federal Rules of Civil Procedure and come from outside of this circuit.  Plaintiffs argue also that Cayman law requires that a party acting pursuant to a power of attorney bring such action in the name of the assignor.  But plaintiffs provide no legal basis for why Cayman law, even assuming that it so requires, would apply in this case.  The "party in interest" rule is one of procedure.  Accordingly, the Federal Rules of Civil Procedure would govern.  *See, e.g., Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, No. 93 Civ. 0373 (KTD), 2000 WL 204524, at *2 (S.D.N.Y. Feb. 18, 2000) ("[I]n actions where the rights of parties are grounded on the laws of jurisdictions other than the forum, 'it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure.'  Thus, plaintiff's assertion that the rules of the civil law countries do not recognize the Real Party in Interest doctrine is irrelevant here.  I will therefore continue to apply Rule 17(a) of the Federal Rules of Civil Procedure." (quoting *Bournias v. Atl. Mar. Co.*, 220 F.2d 152, 154 (2d Cir. 1955))).

[32]

*See W.R. Huff Asset Mmgt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 108 (2d Cir. 2008) ("'The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and standing alone, a power of attorney does not enable the grantee to bring suit in his own name.'" (quoting *Advanced Magnetics, Inc. v. Bayfront Partners Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997))); *Clark v. Chase Nat'l Bank of City of N.Y.*, 45 F. Supp. 820, 824 (S.D.N.Y. 1942) ("I have held that the Committee is not, in fact, the real party in interest, because the Committee has not either legal or equitable title to the bonds, but only a power of attorney to bring the suit.").

[33]

*Hunt v. Rousmanier's Adm'rs*, 21 U.S. (1 Wheat.) 174, 202 (1823) ("We think it well settled, that a power of attorney, though irrevocable during the life of the party, becomes extinct by his death."); *see also* N.Y. GEN. OBLIG. LAW § 5-1511(1)(a) (McKinney 2018).

interests in the claims asserted in this case.[34]  They cite to the language in the APAs, which is identical in all material respects:

> "Each Seller hereby designates and appoints each of (1) Buyer and (2) Buyer's designated agents as Seller's attorney-in-fact, each with the right, power and authority to take any of the following actions on behalf of such Seller, *in such Seller's name*, place and stead, with respect to any of the Claims: (i) the right, power and authority to grant releases from such Seller with respect to any of the Claims in favor of any . . . of the Defendants or Potential Defendants now or hereafter named in any of the Cases, whether pending or threatened, known, unknown or unknowable or settled or unsettled; (ii) the right, power and authority to execute and submit proofs of Claim, filings and releases relating to any of the Claims and other documents relating thereto; and (iii) the right, power and authority to execute and submit any and all other documents necessary, appropriate or helpful to enable Buyer to maximize its recovery on the Assets.  The foregoing power of attorney *is coupled with an interest and may not be terminated or revoked by such Seller at any time.*"[35]

Assuming without deciding that the list of actions in the power of attorney provision above encompassed FLH's right to bring this lawsuit, the Court considers whether FLH retained the right to bring this lawsuit in Sonterra's and the FrontPoint Plaintiffs' names after their respective dissolutions.

In the Court's view, plaintiffs cannot have it both ways.  In *Hunt v. Rousmanier's Administrators*,[36] the Supreme Court held that there was one exception to the general rule that a power of attorney could not survive the death of the grantor – that is, "[i]f a power be coupled with

---

[34]

Pls' Br. at 11; *see also Hunt*, 21 U.S. (1 Wheat.) at 203 ("This general rule, that a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an 'interest,' it survives the person giving it, and may be executed after his death.").

[35]

Sonterra APA at § 5.3 (emphasis added); *see also* FrontPoint APA at § 5.3.

[36]

21 U.S. (1 Wheat.) 174 (1823)

an 'interest,' it survives the person giving it, and may be executed after his death."[37]  The Court further stated that the "interest" with which the power of attorney must be coupled "must be an interest in the thing itself.  In other words, the power must be engrafted on an estate in the thing."[38]

But if the holder of a power of attorney holds also an interest in "the thing itself," which in this case would be the assignment of the claims asserted in the litigation, the holder of such power and interest then would become the "real party in interest" for purposes of Rule 17(a).[39]

This conclusion follows naturally from the case law in the Second Circuit, which holds that "a mere power-of-attorney . . . does not confer standing to sue in the holder's own right" and that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim."[40]  The Supreme Court's reasoning in *Hunt* also supports the view that, assuming *arguendo* the effectiveness of the assignments, FLH was the "real party in interest" in this case and therefore should have brought the litigation in its own name:

> "The interest or title in the thing being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. *The act of the substitute, therefore, which, in such a case, is the act of the principal, to be legally effectual, must be in his name, must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him*. Such a power necessarily ceases with the life of

---

[37]

    *Id.* at 203.

[38]

    *Id.* at 204.

[39]

    Plaintiffs in fact concede that FLH is the "real party in interest," Pls' Br. at 20, and yet offer no legal basis for why Rule 17(a) should not carry the day.

[40]

    *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 420 (2d Cir. 2015) (quoting *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 108) (internal quotation marks omitted).

the person making it. *But if the interest, or estate, passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name.* The estate, being in him, passes from him by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate. The legal reason which limits a power to the life of the person giving it, exists no longer, and the rule ceases with the reason on which it is founded. The intention of the instrument may be effected without violating any legal principle.[41]

The Court concludes, even assuming that FLH in fact was assigned the claims asserted in this case and was entitled to pursue them after the respective dissolutions of Sonterra and the FrontPoint Plaintiffs, that it was improper for FLH to file the case in their names.

*Availability of Rule 17(a)(3) Substitution*

Plaintiffs next argue that even if FLH improperly brought this action in Sonterra's and the FrontPoint Plaintiffs' names, substitution of FLH into the action under Rule 17(a)(3), rather than dismissal, is the appropriate remedy.  Defendants advance four arguments for why the claims brought by Sonterra and the FrontPoint Plaintiffs should be dismissed without permitting them to substitute FLH as the real party in interest.  First, defendants argue that "[p]laintiffs have not moved for substitution and the Court should not grant Plaintiffs relief for which they have not moved."[42] Second, they argue that substitution would be futile because the assignments were ineffective as to FLH.  Third, they assert that Rule 17 substitution cannot be used to cure a standing defect.  And fourth, they contend that Rule 17 does not permit substitution in this case.

---

[41]

> *Hunt*, 21 U.S. (1 Wheat.) at 204-05 (emphasis added).  Moreover the Restatement (Third) of Agency states that a "power coupled with an interest" does not create an agency relationship. Restatement (Third) of Agency § 3.12 cmt. c (2006).

[42]

> Defs' Reply Brief of March 23, 2018 at 8.

*No Formal Motion*

Although plaintiffs have not moved for substitution, the Court declines to dismiss Sonterra and the FrontPoint Plaintiffs' claims on this ground.  Plaintiffs have requested substitution in their brief opposing defendants' motion.  Requiring plaintiffs to reassert presumably identical arguments in a formal motion would be an inefficient use of the Court's and the parties' resources.

*Futility*

Ordinarily, it would be for the Court to determine the effectiveness of an assignment of claims.[43]  "In general, claims or choses in action may be freely transferred or assigned to others."[44] In order to make an assignment valid, however, "the owner must manifest 'an intention to make the assignee the owner of [the] claim.'"[45]  In this case, however, the Court need not reach the question because, as discussed below, the Court concludes for other reasons that Rule 17 substitution is not available to plaintiffs.

*Use of Rule 17 to Cure Standing Flaw*

Defendants next argue that substitution under Rule 17(a)(3) "is improper in cases

---

[43]

6A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE: CIVIL § 1545, at 494 (2010) (noting Court "must determine exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest with regard to the particular claim involved in the action").

[44]

*Advanced Magnetics, Inc.*, 106 F.3d at 17 (citation omitted).

[45]

*Id.* (quoting *Titus v. Wallick*, 306 U.S. 282, 288-89 (1939)).

where, as here, all of plaintiffs' asserted claims were allegedly assigned before initiation of the lawsuit" because Rule 17(a)(3) can remedy a defect in standing only if the plaintiff clearly had standing on another claim that it brought.[46]   The Court is not persuaded.

In *Cortlandt Street Recovery Corporation v. Hellas Telecommunications, S.a.r.l.*,[47] the Second Circuit considered a plaintiff that claimed it had standing to sue by virtue of an assignment.   The Circuit concluded that the plaintiff had not carried its burden of showing a valid assignment of claim and then considered whether the plaintiff should have been given an opportunity to cure the deficiency under Rule 17(a)(3).[48]   The Circuit noted that because the assignment to the plaintiff was insufficient with respect to each claim asserted in the litigation, the plaintiff had no standing to pursue any of the claims against the defendants.[49]   The district court there had reasoned that "absent a complete assignment of the only claims on which the lawsuit was based, there was no valid lawsuit pending before the district court in which to permit an amended complaint,"[50] but the Circuit nonetheless declined to reach the question of whether a jurisdictional defect in those circumstances could be cured by Rule 17(a)(3).[51]

---

[46]   Defs' Br. at 19.

[47]   790 F.3d 411 (2d Cir. 2015).

[48]   *Id.* at 418-20.

[49]   *Id.* at 422.

[50]   *Id.* (discussing district court opinion).

[51]   *Id.* at 423 (affirming instead because "neither of the requests made by Cortlandt in its effort to cure the standing problem would have been consistent with Rule 17(a)(3)").

Subsequent case law has taken varying approaches to the question.[52]  Most recently, in *Klein ex rel. Qlik Technologies, Inc. v. Qlik Technologies, Inc.*,[53] the Second Circuit considered a plaintiff who initially had brought a shareholder derivative suit on behalf of a corporation.  After the complaint was filed, the corporation was bought out in an all-cash merger, and the plaintiff consequently lost her interest in the case.  The Second Circuit concluded that this was an issue of mootness, rather than standing, and permitted amendment under Rule 17(a)(3).[54]  The Circuit noted in *dicta*, however, that substitution would have been unavailable to the plaintiff had the issue been one of standing.  It stated:

> "[I]n the absence of a plaintiff with standing . . . there [is] . . . no lawsuit pending for the real party in interest to ratify, join, or be substituted into under Rule 17(a)(3) or otherwise.  Whether the real party in interest made a mistake does not even enter into consideration."[55]

Nonetheless, this case arguably can be distinguished from *Qlik* because there is another named plaintiff in this case, Dennis, who has retained standing to sue.  Accordingly, even if the Court were to dismiss the complaint as to Sonterra and the FrontPoint Plaintiffs, FLH

---

[52]

> *Compare Valdins Invs. Corp.*, 651 F. App'x at 7 (concluding that although "[o]rdinarily, we would permit the real party in interest to ratify, join, or be substituted into the action pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure," "the sole plaintiff, lacked standing on all of its claims" and "[i]ts motion was therefore a nullity from the beginning, so that there is no lawsuit pending for the real party in interest to ratify, join, or be substituted into under Rule 17(a)(3) or otherwise" (internal quotation marks and citations omitted)), *with Digzip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 678-80 (S.D.N.Y. 2015) (permitting amendment where plaintiff lacked standing on all claims).

[53]

> 906 F.3d 215 (2d Cir. 2018).

[54]

> *Id.* at 220-25.

[55]

> *Id.* at 227 n.7 (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 423) (internal quotation marks omitted).

nonetheless could join the existing lawsuit brought by Dennis, assuming *arguendo* that the assignments were valid.[56] For this reason, the fact that Sonterra and the FrontPoint Plaintiffs lack standing over any claims would not necessarily foreclose amendment pursuant to Rule 17(a)(3). But the Court need not reach the question because the requirements of Rule 17 do not permit substitution in this case.

### Rule 17 Requirements

The Second Circuit has said that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants."[57] "Even if a proposed substitution meets these requirements, it should be denied if it is being proposed 'in bad faith or in an effort to deceive or prejudice the defendants.'"[58]

Under the standard set forth in *Cortlandt Street Recovery*, substitution here would require more than a "merely formal" alteration of the complaint.[59] In *Cortlandt*, the plaintiff whose

---

[56]    *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, *join*, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." (emphasis added)).

[57]    *Advanced Magnetics, Inc.*, 106 F.3d at 20.

[58]    *Klein ex rel. Qlik Techs., Inc.*, 906 F.3d at 226 (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 21).

[59]    Defendants argue also that plaintiffs should not be permitted to amend because they have not shown that the failure to have FLH bring the suit in its own name was the product of an honest mistake. Such a showing, however, is not required under Rule 17(a)(3). *Klein ex rel.*

assignment the Circuit had concluded was ineffective requested an opportunity to cure its standing

problem by obtaining a new assignment vesting it with sufficient title to maintain the lawsuit.[60]   The

Circuit rejected this request, stating:

> "Cortlandt's First Amended Complaint alleges that it was assigned 'full rights under
> the assignments to collect principal and interest due and to pursue all remedies.' Pl.'s
> First Am. Compl. ¶ 12 (J.A. 60). In order to have standing, however, Cortlandt would
> have to allege that it was assigned title to the claims, not merely a power of attorney.
> A new assignment would 'alter[ ] the original complaint's factual allegations as to
> the events or the participants,' *Advanced Magnetics*, 106 F.3d at 20, *because the
> language of the new complaint, to cure the standing bar, would necessarily reflect
> the contents of the new assignment.*
>
> "We have ordinarily allowed amendments under Rule 17 only 'when a mistake has
> been made as to the person entitled to bring suit and such substitution will not alter
> the substance of the action.' *Park B. Smith, Inc.*, 811 F. Supp. 2d at 773. Cortlandt's
> legal claims might remain unaltered if a new assignment were substituted for the old
> one, but *the factual allegations supporting them would not*. Unlike a substitution,
> such as the one requested in *Advanced Magnetics* . . . , pleading the existence of a
> new and substantively different assignment would require more than a 'merely
> formal' alteration of the complaint. *See Advanced Magnetics*, 106 F.3d at 20. Such
> an attempt to employ Rule 17(a)(3) to cure the standing problem here would thus be
> fated to fail."[61]

In this case, were FLH to join the lawsuit, the amended complaint would "necessarily

reflect" the contents of the relevant assignments in order to establish FLH's standing.   Plaintiffs

argue that this would entail "only a change in the caption and a short description of the assignments

and powers of attorney in the body of the Complaint" and that the "claims and allegations would

---

remain unchanged."[62] Unfortunately for plaintiffs, that is not the standard established by *Cortlandt*, and even the "short description" that plaintiffs describe would be impermissible.[63]

*Conclusion*

Defendants' motion is granted. The claims brought by Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., and FrontPoint Financial Horizons Fund, L.P. are dismissed as to all defendants except JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

SO ORDERED.

Dated:         November 26, 2018

Lewis A. Kaplan
United States District Judge

---

[62]

Pls' Br. at 18.

[63]

Although the Second Circuit permitted substitution of the corporation itself in place of the former shareholder in *Qlik*, it did so on the basis that the "proposed substitution . . . would alter none of the factual allegations of the complaint." *Klein ex rel. Qlik Techs., Inc.*, 906 F.3d at 226.

19