**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICHARD DENNIS, et al.,

               Plaintiffs,

        vs.

JPMORGAN CHASE & CO., et al.,

               Defendants.

1:16-cv-06496-LAK

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RBC CAPITAL MARKETS LLC'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Marshall H. Fishman
Christine V. Sama
Elizabeth M. Zito
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. (212) 813-8800
Fax (212) 355-3333
mfishman@goodwinlaw.com
csama@goodwinlaw.com
ezito@goodwinlaw.com

*Attorneys for Defendant*
*RBC Capital Markets LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

      A.     The Australian BBSW Investigations and Filing of this Case ............................ 3

      B.     The Opinion ........................................................................................... 4

      C.     The SAC's New Allegations Are Not Made Against Capital Markets ............... 5

ARGUMENT .......................................................................................................... 6

I.     The SAC Fails to State A Claim Against Capital Markets. .................................... 6

      A.     There Is No Allegation That Capital Markets Engaged in A Single
             Anticompetitive Act. .............................................................................. 7

      B.     Plaintiffs Cannot State A Claim Against Capital Markets Based on the
             Mere Trading of BBSW-Based Derivatives. ............................................... 8

      C.     Dismissal of Capital Markets Now Is Not Premature. ................................... 9

II.    If Capital Markets' 12(b)(6) Motion Is Denied and the Consolidated Motion Is
      Granted, Plaintiffs' Claim as to Capital Markets Should be Dismissed on the
      Basis of *Forum Non Conveniens*. ........................................................... 10

      A.     Plaintiffs' Choice of Forum Deserves Little Deference. ............................... 11

      B.     Australia Is an Adequate Alternative Forum .............................................. 12

      C.     Public and Private Factors Weigh in Favor of Dismissal because Absent
             the Panel Banks, Australia Would Be the Most Convenient Forum for this
             Dispute ............................................................................................... 14

CONCLUSION ...................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alcon S'holder Litig.*,
    719 F. Supp. 2d 263 (S.D.N.Y. 2010).............................................................................13, 17

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
    994 F.2d 996 (2d Cir. 1993).......................................................................................14, 16

*Alpha Lyracom Space Commc'ns, Inc. v. Commc'ns Satellite Corp.*,
    No. 89 CIV. 5021 (JFK), 1990 WL 135637 (S.D.N.Y. Sept. 13, 1990)..................................10

*Am. Sales Co. v. AstraZeneca AB*,
    No. 10 Civ. 6062 (PKC), 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) .................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................7

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
    481 F. Supp. 2d 274 (S.D.N.Y. 2007)..................................................................................17

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
    155 F.3d 603 (2d Cir. 1998)............................................................................... *passim*

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
    370 F.3d 234 (2d Cir. 2004)................................................................................................10

*Concord Assocs., L.P. v. Entm't Props. Trust*,
    No. 12 Civ. 1667 (ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ......................................7

*Fire & Police Pension Ass'n of Colorado v. Bank of America*,
    18 Civ. 342 (AT), 2019 WL 1344412 (S.D.N.Y. Mar. 14, 2019) ........................................2, 8

*First Union Nat'l. Bank v. Paribas*,
    135 F. Supp. 2d 443 (S.D.N.Y. 2001)..................................................................................12

*Flynn v. Nat'l Asset Mgmt. Agency*,
    42 F. Supp. 3d 527 (S.D.N.Y. 2014).....................................................................................15

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
    16 Civ. 5263 (AKH), 2017 WL 36000425 (S.D.N.Y. Aug. 18, 2017).....................................9

*Gelboim v. Bank of Am. Corp.*,
    823 F.3d 759 (2d Cir. 2016)...................................................................................................9

*GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*,
   No. 13 Civ. 1395 (PKC), 2013 WL 2244315 (S.D.N.Y. May 21, 2013) ..............................16

*Gulf Oil Corp. v. Gilbert*.
   330 U.S. 501 (1947)..................................................................................................17

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)........................................................................................11

*Kirch v. Liberty Media Corp.*,
   No. 04 Civ. 667 (NRB), 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ................................17

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)..................................................................................................13

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
   337 F. Supp. 3d 274 (S.D.N.Y. 2018)..................................................................12, 15, 17

*Meyer v. Kalanick*,
   291 F. Supp. 3d 526 (S.D.N.Y. 2018).........................................................................10

*Murray v. British Broad. Corp.*,
   81 F.3d 287 (2d Cir. 1996)........................................................................................14

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005)......................................................................................11

*Palacios v. The Coca-Cola Co.*,
   757 F. Supp. 2d 347 (S.D.N.Y. 2010)..................................................................13, 16, 17

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003)..................................................................10, 11, 12, 17

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998)........................................................................................13

*PT United Can Co. v. Crown Cork & Seal Co.*,
   No. 96 Civ. 3669 (JGK), 1997 WL 31194 (S.D.N.Y. Jan. 28, 1997)....................................16

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*,
   81 F.3d 1224 (2d Cir. 1996)......................................................................................15

*Strategic Value Master Fund Ltd. v. Cargill Fin. Servs. Corp.*,
   421 F. Supp. 2d 741 (S.D.N.Y. 2006)..........................................................................15

*Sussman v. Bank of Israel*,
   801 F. Supp. 1068 (S.D.N.Y. 1992)............................................................................12

*TM Claims Serv. v. KLM Royal Dutch Airlines*,
    143 F. Supp. 2d 402 (S.D.N.Y. 2001)........................................................................................15

**Statutes and Rules**

Fed. R. Civ. P. 8.................................................................................................................................7

Fed. R. Civ. P. 12...........................................................................................................1, 4, 10, 17

**Other Authority**

*Competition and Consumer Act 2010* (Cth) (Austl.) ......................................................................13

*Privacy Act 1988* (Cth) sch 1 (Austl.)...........................................................................................15

Defendant RBC Capital Markets LLC ("Capital Markets") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). In the event that that the Court denies Capital Markets' 12(b)(6) motion and grants the contemporaneously-filed motion by the Panel Banks[1] and dismisses the Panel Banks entirely from this action, then Capital Markets should be dismissed under the doctrine of *forum non conveniens.*

## PRELIMINARY STATEMENT

The claims asserted in this case are the predictable aftermath of foreign regulatory investigations conducted by the Australian Securities Investments Commission ("ASIC") into the rate-setting processes of certain BBSW Panel Banks.  Each iteration of Plaintiffs' complaint to date has relied heavily on the findings, settlements, and documentary evidence in those investigations, none of which involves Capital Markets.  The First Amended Complaint ("FAC") obscured this fact by failing to distinguish between the Royal Bank of Canada and Capital Markets, defining them collectively as "RBC," and making it difficult to determine exactly what each was alleged to have done.  (ECF No. 63 ¶ 139.)

The Court dismissed the Section 1 Sherman Act conspiracy claim alleged in the FAC against the BBSW Panel Banks on jurisdictional grounds, which forced Plaintiffs to try to articulate a jurisdictional nexus between the Panel Banks and New York in the SAC.  In so doing, the SAC now includes allegations concerning the Royal Bank of Canada's trading activities with a U.S. counterparty (*see* SAC ¶ 108) but fails to set forth a *single* factual

---

[1]  Capitalized terms not specifically defined herein shall have the meaning ascribed to them in the SAC.

1

allegation that Capital Markets engaged in *any* of the conduct that the Court previously found plausibly stated a claim under the Sherman Act (Op. at 56-57).[2]

There is no allegation that Capital Markets made BBSW rate submissions or otherwise played any role in the pricing of BBSW, let alone colluded or traded Prime Bank Bills in advance of setting the rates.  Nor is there any allegation that Capital Markets was a member of the Australian Financial Markets Association ("AFMA") boards and committees that Plaintiffs claim provided a forum for collusion, or that Capital Markets was ever the subject of any regulatory action relating to the setting of BBSW in Australia.  The SAC also fails to allege a single allegedly collusive or anticompetitive communication between Capital Markets and any other Defendant.

At most, the SAC includes a vague allegation that Capital Markets together with myriad other Defendants transacted in BBSW-based derivatives in the United States.  (*See* SAC ¶ 17.) But this does not state an antitrust claim against Capital Markets because the trading of derivative instruments is "an innocent activity if not connected to the Panel Members' conspiracy."  *Fire & Police Pension Ass'n. of Colorado v. Bank of America,* 18 Civ. 342 (AT), 2019 WL 1344412, at *12 (S.D.N.Y. Mar. 14, 2019) ("*CDOR*").  Accordingly, the Sherman Act claim against Capital Markets fails to meet the pleading standard of Rule 8 of the FRCP.

Separately, as set forth in the motion to dismiss the SAC contemporaneously filed by the other Defendants in this case (the "Consolidated Motion"), the SAC fails to cure the jurisdictional deficiencies that led to the dismissal of the FAC against the foreign Panel Banks. To the extent that the Consolidated Motion is granted and the Court finds that the allegations

---

[2] The abbreviation "Op." and the capitalized term "Opinion" refer to this Court's November 26, 2018 Opinion deciding Defendants' Motion to Dismiss the FAC (ECF No. 227).

against Capital Markets are sufficient to state a plausible antitrust claim, the Court should dismiss the SAC against Capital Markets under the *forum non conveniens* doctrine.

There could not be a clearer case mandating a *forum non conveniens* dismissal. The alleged conspiracy starts and stops with the Panel Banks and their alleged Australian based rate setting. All witnesses (both party and non-party) and documents are in Australia. Plaintiffs' choice of forum in this case is entitled to little, if any, weight, because neither of the named Plaintiffs is a New York resident, and Plaintiffs' claims arise out of, and are based on, activities that took place exclusively in Australia, which is an adequate and available forum to adjudicate these claims. In short, there is no reason to litigate Plaintiffs' antitrust claim solely against Capital Markets in New York.

## STATEMENT OF FACTS

BBSW is a benchmarking rate "intended to reflect the observed rate of interest paid on Prime Bank Bills actually traded in the Australian money market." (Op. at 5.) The rate is calculated based on submissions made by a group of "Panel Banks" to AFMA. The antitrust conspiracy alleged "involves essentially all of the entities that contribute to setting BBSW and asserts that these banks and brokers affected the price of all derivatives priced or benchmarked by reference to BBSW." (Op. at 46.) All of the Panel Banks that contributed to the setting of BBSW are located outside of the United States where the rate-setting activities that gave rise to Plaintiffs' conspiracy claim took place. (SAC ¶¶ 1, 5.)

### A.     The Australian BBSW Investigations and Filing of this Case

As the SAC alleges, in 2013 and 2014, ASIC entered into settlements with three Defendant Panel Banks (UBS AG, Royal Bank of Scotland and BNP Paribas) each of which "admitted to making false BBSW submissions to manipulate the rate for their financial benefit."

(SAC ¶ 4.)  In 2016 and 2017, ASIC initiated proceedings against four additional Panel Banks (Australia and New Zealand Banking Group Limited, Westpac Banking Corporation, National Australia Bank Limited, and Commonwealth Bank of Australia), each of whom are named as Defendants.  (SAC ¶ 3.)  Materials produced in connection with ASIC's inquiries included email correspondence and electronic chats between personnel from different banks regarding BBSW.  (*Id*.)  Many of these materials have been made public and are quoted in the SAC.  (*See generally* ¶¶ 418-533.)

Plaintiffs commenced this action on August 16, 2016, after the ASIC investigations had become public.  (SAC ¶ 490 (ASIC Chairman testifies at an August 2015 Australian Senate hearing that ASIC was "investigating the banks of BBSW"); *id*. ¶ 491 (quoting press release issued in 2014 describing ASIC's then on-going investigation).)  Capital Markets is not alleged to have been the subject of the Australian proceedings in any way.

### B.      The Opinion

Plaintiffs filed the FAC in December 2016 (ECF No. 63) which all Defendants moved to dismiss on various grounds.  The Court granted Defendants' motion in part, and Plaintiffs thereafter filed the SAC.

In the Opinion, the Court dismissed all claims against the foreign Panel Banks on personal jurisdiction grounds.  (Op. at 116-128.)  The Opinion left only Capital Markets and one other U.S.-based entity as defendants.  The Court declined to dismiss Plaintiffs' federal antitrust claim under Rule 12(b)(6), finding that several allegations pled against all Defendants collectively were sufficient to sustain the claim.  (*See* Op. at 57 n.210.)  Specifically, the Court found that Plaintiffs had stated a plausible claim under the Sherman Act based on the following allegations:

- "[D]efendants each engaged in noneconomic transactions of Prime Bank Bills to push the prices of the bills up or down, thereby pushing BBSW submissions in the opposite direction";

- "Defendants made false BBSW rate submissions to AFMA and used their positions on the various AFMA committees to maintain the *status quo* and, hence, their ability to manipulate BBSW" with "a common motive" to earn "increased profits" on their respective BBSW-Based Derivatives positions; and

- "[E]xtensive allegations of inter-firm communications and cooperative efforts among defendants – including the sharing of information with one another about their respective exposures to BBSW, [and] the strategic trading of Prime Bank Bills ahead of the Fixing Window to enable one another to flood the market and artificially raise BBSW."

(Op. at 56-57.)

Not even one of the allegations the Court found sufficient is alleged in the SAC to have involved Capital Markets.

## C.    The SAC's New Allegations Are Not Made Against Capital Markets

In the SAC, only one of the eight claims for relief – the federal antitrust claim – is asserted against Capital Markets; the remaining seven claims are asserted against the other Defendants.  (SAC ¶¶ 551-607.)  Plaintiffs attempt to cure the jurisdictional deficiencies of the FAC by, for the first time, including specific allegations against Capital Markets' indirect parent, the Royal Bank of Canada,[3] that purport to establish a jurisdictional nexus between the Royal Bank of Canada and New York.  (*See* SAC ¶ 108.)  In furtherance of this effort, the SAC now draws a distinction between Royal Bank of Canada and Capital Markets, defining the Royal Bank of Canada separately as "RBC."  (SAC ¶ 345.)[4]

---

[3]  (Walmsley Decl. ¶ 3.)

[4]  Previously, the FAC confusingly defined these entities simply as "RBC" (FAC ¶ 139), without alleging which entity took actions in furtherance of a conspiracy.

The SAC specifically alleges that Royal Bank of Canada – but *not* Capital Markets – "traded foreign exchange and/or interest rate derivatives, including BBSW-Based Derivatives, in the United States throughout the Class Period." (SAC ¶ 17.) The SAC further alleges that Royal Bank of Canada "entered into at least 2 BBSW-based interest rate swap transactions and 10 BBSW-based Australian dollar foreign exchange forward transactions with" new Plaintiff Orange County Employees Retirement System ("OCERS") "between January 11, 2007 and May 2, 2014." (SAC ¶ 108.) Capital Markets is not alleged to have entered into any BBSW-Based Derivatives trades with OCERS, and the SAC does not identify any BBSW-Based Derivatives trades involving Capital Markets.

The SAC also alleges that Royal Bank of Canada, Australia Branch – *not* Capital Markets – "was on the BBSW Panel during the Class Period." (SAC ¶ 344.) There is no allegation that Capital Markets had any role in the BBSW rate setting process, no allegation that Capital Markets traded Prime Bank Bills, and no allegation that Capital Markets participated in any communications concerning BBSW or Prime Bank Bills with any other Defendant. The sole allegation concerning Capital Markets individually in the entirety of the 166-page SAC states that Capital Markets is "a premier global investment bank" and "a wholly-owned subsidiary of Royal Bank of Canada." (SAC ¶ 338.)[5]

## ARGUMENT

### I.

### The SAC Fails to State A Claim Against Capital Markets

The absence of a single allegation of anticompetitive conduct by Capital Markets in the SAC requires dismissal of the federal antitrust claim. Under Rule 8 of the FRCP, a defendant is

---

[5]  This is only partially correct: Capital Markets is an indirect wholly-owned subsidiary of the Royal Bank of Canada, but it is not a "global" investment bank. Rather, Capital Markets is a Minnesota limited liability company, and provides brokerage, investment banking, and asset management services to its clients. (Walmsley Decl. ¶¶ 3-5.)

entitled to notice of the claims brought against it.  Fed. R. Civ. P. 8(a) (pleading must contain "short and plain statement of the claim showing that the pleader is entitled to relief").  In a federal antitrust conspiracy case, "to provide reasonable notice . . . a complaint must plausibly suggest that the individual defendant actually joined and participated in the conspiracy." *Concord Assocs., L.P. v. Entm't Props. Trust*, No. 12 Civ. 1667 (ER), 2014 WL 1396524, at *23 (S.D.N.Y. Apr. 9, 2014) (dismissing antitrust claim); *see Am. Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (dismissing complaint that "fails to comport with the basic standards of notice pleading" because "defendant is entitled to know, at the very least, what allegedly unlawful conduct a plaintiff seeks to attribute to it"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation").

## A.  There Is No Allegation That Capital Markets Engaged in A Single Anticompetitive Act

The most searching review of the allegations in the SAC reveals that Capital Markets is not alleged to have engaged in any of the activities that previously led this Court to find that the FAC stated a plausible antitrust claim.  (Op. at 56-57.)  The SAC does *not* allege that Capital Markets engaged in any transactions to manipulate the supply of Prime Bank Bills in the Australian market.  According to the SAC, such manipulation occurred "during the Fixing Window."  (SAC ¶ 413.)  That is, "between 9:55 A.M. and 10:05 A.M. Sydney Time" or after New York trading hours.  (SAC ¶ 393.)  The SAC also does *not* allege that Capital Markets was on the BBSW Panel or ever served as an AFMA Prime Bank.  (*See* SAC ¶¶ 362, 363.)  Capital Markets never served as a Panel Bank; therefore, it cannot have "made false BBSW rate submissions to AFMA."  (Op. at 56.)  Capital Markets also is *not* alleged to have engaged in any of the "inter-firm communications and cooperative efforts" alleged in the SAC and previously

cited by the Court in the Opinion.  (*See* Op. at 57; SAC ¶¶ 420-533.)  And, although present in the United States, Capital Markets is *not* alleged to have been one of the "U.S.-based Defendants" that "formed part of the conspiracy to manipulate BBSW."  (SAC ¶ 34.)

**B.    Plaintiffs Cannot State A Claim Against Capital Markets Based on the Mere Trading of BBSW-Based Derivatives**

While the SAC now separates Capital Markets from the Royal Bank of Canada in alleging that the Royal Bank of Canada traded with United States counterparties (SAC ¶108), even assuming *arguendo* that the SAC's allegation extended to Capital Markets, mere trading allegations would be insufficient.  The recent *CDOR* decision is directly on point.  There, the plaintiff alleged that a group of banks involved in the setting of the Canadian Dollar Offered Rate ("CDOR") conspired to manipulate the rate "to benefit their derivatives trading positions." 2019 WL 1344412, at *1.  Certain defendants affiliated with Bank of America moved to dismiss the case on grounds that their affiliate withdrew from the CDOR panel as of a certain date, arguing that after the withdrawal, any allegation that those defendants continued to participate in the alleged conspiracy was implausible.  *Id.* at *12.  Plaintiff, on the other hand, argued that the affiliates continued to participate in the conspiracy by trading CDOR-Based derivatives.  *Id.*  The Court rejected plaintiff's contention that simply trading in CDOR-Based derivatives equated to an ongoing conspiratorial act.

> [T]he crux of Plaintiff's conspiracy claim is the artificial submission of CDOR Rates and there are no specific allegations that Bank of America, or its subsidiaries, communicated with CDOR Panel members or otherwise influenced CDOR outside of the Panel.  The trading of CDOR-Based Derivatives, therefore, even if adequately alleged, is an innocent activity if not connected to the Panel Members' conspiracy.

*Id.* (quotation omitted and emphasis added).

Accordingly, as in *CDOR*, there is no nexus whatsoever between the generalized allegations of trading in BBSW that link Capital Markets to the Panel Bank conspiracy in

-8-

Australia.[6]   *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 16 Civ. 5263 (AKH), 2017 WL 36000425, at *11 (S.D.N.Y. Aug. 18, 2017) (dismissing antitrust claims against all defendants other than those who served on the SIBOR panel during the relevant period).

### C.     Dismissal of Capital Markets Now Is Not Premature

In the Opinion, the Court expressed the view that "dismissing plaintiffs' claim for failing to include specific conspiracy allegations as to each defendant . . . would be premature at this early stage of litigation." (Op. at 57 n.210.) As support for this view, the Court cited the Second Circuit's decision in *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016). But even in *Gelboim*, the Court required a plaintiff to "put forth sufficient factual matter to plausibly suggest an inference of conspiracy." *Id.* at 782. The SAC, in distinguishing for the first time between Royal Bank of Canada and Capital Markets, falls far short of what the Second Circuit required in *Gelboim* as there are no such factual allegations from which a plausible inference can be made against Capital Markets.[7]

---

[6]  Notably, Capital Markets is *not* alleged to have participated in the Federal Reserve Bank of New York's survey of foreign exchange and interest rate derivatives dealers throughout the Class Period. (SAC ¶ 19.) Plaintiffs' claim that participation in this survey indicates that the participant "entered into foreign exchange and interest rate derivative transactions, including transactions priced, benchmarked, and/or settled based on BBSW from within the United States" cannot apply to Capital Markets. (*Id.*)

[7]  Capital Markets acknowledges that the Court previously permitted group pleading. (Op. at 57 n.210.) But whether the allegations in the SAC are pleaded as to the BBSW Panel Banks individually or as a group, the fact remains that Capital Markets was not a Panel Bank, is not alleged to have been a Panel Bank and is not alleged to have engaged in the allegedly manipulative trading of Prime Bank Bills during the Fixing Window in Australia (which occurred after trading hours in the United States) that Plaintiffs claim facilitated allegedly collusive BBSW rate-setting. (*See e.g.*, SAC ¶ 413.)

## II.

### If Capital Markets' 12(b)(6) Motion Is Denied and the Consolidated Motion Is Granted, Plaintiffs' Claim as to Capital Markets Should be Dismissed on the Basis of *Forum Non Conveniens*

In the event the Court denies Capital Markets' 12(b)(6) motion and grants the Consolidated Motion, Australia and not New York would be the most appropriate forum to adjudicate Plaintiffs' claims. The linchpin of this case is the setting of BBSW by the Panel Banks in Australia. Australian courts have already adjudicated claims relating to alleged BBSW manipulation, and the issue of whether Australian banks and bankers engaged in such manipulation is of substantial importance to Australia's economy and citizenry. (*See* Op. at 14 n.55-58 (referring to prior Australian court proceedings against certain Defendants).) Under these circumstances, there can be no doubt that Australia, and not New York, is the appropriate and most convenient forum in the event the Panel Banks are dismissed from this suit. *See Carey v. Bayerische Hypo-Und Vereinsbank AG,* 370 F.3d 234, 237 (2d Cir. 2004) (*forum non conveniens* dismissal appropriate "even if the court is a permissible venue with proper jurisdiction over the claim"); *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003) (affirming *forum non conveniens* dismissal of claims brought against a bank in connection with sale of derivative securities); *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998) (affirming the application of the forum non conveniens doctrine in Sherman Act cases).[8]

---

[8]  In addition to *forum non conveniens*, if the Consolidated Motion is granted, the Court could also dismiss this action against Capital Markets under FRCP 12(b)(7) because the case should not proceed without the necessary and indispensable Panel Banks. *See Meyer v. Kalanick*, 291 F. Supp. 3d 526, 535 (S.D.N.Y. 2018) (dismissing putative class action under Sherman Antitrust Act for failure to join indispensable party); *Alpha Lyracom Space Commc'ns, Inc. v. Commc'ns Satellite Corp.*, No. 89 CIV. 5021 (JFK), 1990 WL 135637, at *9-10 (S.D.N.Y. Sept. 13, 1990) (finding that "the Court could not meaningfully grant plaintiff's request for injunctive relief without the presence of [alleged co-conspirators] which purportedly engaged in violations of the antitrust laws") *rev'd in part on other grounds,* 946 F.2d 168 (2d Cir. 1991) (affirming dismissal of antitrust claim).

-10-

The Second Circuit has articulated a three-part test for evaluating a *forum non conveniens* motion:

> At step one, a court determines the degree of deference properly accorded the plaintiffs' choice of forum.   At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).   Application of this test here weighs heavily in favor of dismissal.

### A.      Plaintiffs' Choice of Forum Deserves Little Deference

Where, as here, the connection between a plaintiff and its chosen forum is minimal, the plaintiff's choice is given little weight.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (extent of deference to forum choice depends on "the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum").   Neither Plaintiff is resident in, or alleged to have any connection to, New York.   Plaintiff Dennis is a Florida resident alleged to have traded BBSW-Based Derivatives through the Chicago Mercantile Exchange in Illinois (SAC ¶ 164, 494, 496).   OCERS is organized under the laws of California, holds assets for the benefit of employees of Orange County, California, and is alleged to have traded BBSW-Based Derivatives with the Royal Bank of Canada – *not* Capital Markets – through an external asset manager, Pacific Investment Management Company LLC ("PIMCO").  (SAC ¶¶ 106-108, 163 & Ex. F.)[9]  Thus, the SAC alleges no discernable nexus between either of the named Plaintiffs and New York that would justify affording Plaintiffs' choice of forum much, if any, weight.

The fact that Plaintiffs are American citizens also does not militate against a dismissal in favor of litigation in Australia.  *Pollux*, 329 F.3d at 73 ("[T]here is no inflexible rule that protects

---

[9]  PIMCO, which is not a party to this action, is headquartered in Newport Beach, California.  *See* https://www.pimco.com/en-us/our-firm.

U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*."); *First Union Nat'l. Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) ("[W]hile the citizenship of the plaintiff is important, it is not dispositive").  Indeed, courts in this Circuit have frequently dismissed cases brought by American citizens in favor of litigation in a more convenient foreign jurisdiction.  *See, e.g.*, *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 298 (S.D.N.Y. 2018) (dismissing claims by New York entity after finding that "all of the participants in the unlawful enterprise are Belgian or otherwise foreign citizens, and since the majority of conduct occurred abroad, witnesses and evidence will likely be located outside of New York"); *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) ("Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished.") *aff'd*, 990 F.2d 71 (2d Cir. 1993).

### B.     Australia Is an Adequate Alternative Forum

An alternative forum is adequate for the purposes of a *forum non conveniens* inquiry if defendants are amenable to service of process there, and the alternative forum permits litigation of the subject matter of the dispute.  *Pollux,* 329 F.3d at 75.  Australia satisfies both conditions.

*First*, Defendants are amenable to service of process in Australia.  Each of the Panel Banks can be sued in Australia and many, if not all of them, have already been the subject of Australian regulatory proceedings.  (*See* SAC ¶ 491 ("ASIC's investigation extended to at least the fourteen Panel Banks").)  Capital Markets is not subject to service of process in Australia given that it is a U.S. based investment bank.  However, for purposes of this motion, Capital Markets consents to the jurisdiction of the Australian courts with respect to the specific claim

asserted against it in the SAC.  (*See* Walmsley Decl. ¶ 10.)  *See e.g.*, *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 75 (2d Cir. 1998) (*forum non conveniens* dismissal may be conditioned on consent to foreign jurisdiction).

*Second*, Australia is a capable forum to litigate Plaintiffs' claims.  For a foreign forum to be adequate, particular claims or certain desirable remedies need not be available, and plaintiffs "may not defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum."  *Palacios v. The Coca-Cola Co.*, 757 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) (quotation omitted).  The necessary inquiry is "whether the foreign court would be capable of litigating the essential subject matter of the dispute."  *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 274 (S.D.N.Y. 2010) (quotation omitted).

Here, Plaintiffs' conspiracy claim can be litigated in Australia under Australia's Competition and Consumer Act of 2010 which contains criminal and civil prohibitions on "cartel conduct," anti-competitive price signaling, and other information disclosures such as those prohibited under the Sherman Act.  *See Competition and Consumer Act 2010* (Cth) pt IV (Austl.) (prohibiting certain agreements and disclosures in restraint of competition).[10]  Importantly, the prohibitions in the Act are extended to "conduct outside of Australia by … bodies incorporated or carrying on business within Australia."  *Id.* at pt I s 5.  Australia's anti-competition laws provide Plaintiffs with a viable claim for relief sufficient to allow a *forum non conveniens* dismissal.  *Capital Currency,* 155 F.3d 603 at 610 (dismissing claim because "[g]iven the availability of a cause of action under Articles 85 and 86 . . . plaintiffs may litigate the subject matter of their Sherman Act claims in England").

---

[10]  *See Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 531-32 (1947) (evidence outside the pleadings may be considered in determining the most convenient and just forum for a dispute).

### C.   Public and Private Factors Favor Dismissal Because Absent the Panel Banks, Australia Would Be the Most Convenient Forum for this Dispute

"Once the court has identified an alternative forum, it must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action." *Murray v. British Broad. Corp.,* 81 F.3d 287, 293 (2d Cir. 1996) (citation omitted).   As demonstrated below, both sets of interests support dismissal.

### 1.   Private Factors Weigh in Favor of Dismissal

The private interests to be considered in evaluating a *forum non conveniens* motion include: "(1) ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive." *Capital Currency*, 155 F.3d at 609.   Consideration of these factors here compels the conclusion that Australia would be the more convenient and appropriate forum if the Panel Banks are dismissed and Capital Markets is left alone to defend this action.

*First*, virtually all of the relevant witnesses, including current and former employees of the Panel Banks who were party to the communications cited in the SAC, and the members of AFMA which presided over the rate-setting process, are in Australia.   Even if certain witnesses could be made available here, the costs of bringing those witnesses into the forum – both financial and individual in terms of the burdens of transcontinental travel – would be significant, which also weighs in favor of dismissal.   *See Capital Currency*, 155 F.3d at 611; *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993) (affirming *forum non conveniens* dismissal where the "cost of bringing witnesses to the United States for trial, assuming they would be willing, would be prohibitive").

-14-

*Second*, virtually all of the documentary evidence needed to try this case is in Australia. This includes potentially relevant documents and communications relating to the BBSW rate setting process and the trading of Prime Bank Bills – such as chats, emails, trade confirmations and other data – held by the Panel Banks and non-parties in Australia.   Importing these documents into the United States would require compliance with Australia's data privacy laws which would impose an additional burden and expense on the parties.  *See Privacy Act 1988* (Cth) sch 1 (Austl.) (Principle 8 imposing restrictions on the cross-border disclosure of personal information).[11]

*Third,* most if not all of the witnesses that are critical to the prosecution and defense of Plaintiffs' claims are not subject to compulsory process in the United States.   "The Second Circuit has held that a witness's live in-court testimony is the preferred method of presenting his or her testimony."  *Strategic Value Master Fund Ltd. v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006) (dismissing claim in favor of English forum); *see Lazare Kaplan*, 337 F. Supp. 3d at 301-02 (noting Second Circuit preference for live testimony at trial); *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 538 n.54 (S.D.N.Y. 2014) (Kaplan, J.) (observing there is "a strong preference for live testimony" at trial); *see also TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 n.6 (S.D.N.Y. 2001) ("Depositions, however, even when videotaped, are generally no substitute for live testimony.")  Thus, the risk of witness unavailability makes Australia "a more efficient and effective forum for trial of this dispute." *Capital Currency*, 155 F.3d. at 611; *see Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996) (dismissing case where "plaintiffs' primary theories of recovery involve oral assurances and a conspiracy" and live testimony was required for a jury to

---

[11]  *Available at* https://www.oaic.gov.au/resources/individuals/privacy-fact-sheets/general/privacy-fact-sheet-17-australian-privacy-principles.pdf.

assess witness credibility); *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, No. 13 Civ. 1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013) ("Perhaps most importantly, transferring the case will help ensure that material non-party witnesses are available to give live testimony, should the case proceed to trial.").

2.   <u>Public Factors Weigh in Favor of Dismissal</u>

The public interests to be considered include: "(1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community." *Capital Currency*, 155 F.3d at 609.  The significant interest of Australia in adjudicating claims that banks authorized under its laws to conduct banking activity manipulated BBSW in Australia far outweighs the interest of New York, or even the United States, in adjudicating such claims.  The investigation by the Australian regulators and resulting proceedings and settlements underscore Australia's significant interest here.  *See Allstate Life Ins. Co.*, 994 F.2d at 1002 (finding "there is a strong local interest in trying this case in Australia" where it involved "actions undertaken by . . .  Banks in furtherance of the alleged fraud were carried out in Australia by Australian corporations").

Conversely, because this case arose out of the Panel Bank's actions in Australia, without the Panel Banks as Defendants, New York should have little interest in adjudicating this dispute. *See PT United Can Co. v. Crown Cork & Seal Co.,* No. 96 Civ. 3669 (JGK), 1997 WL 31194, at *9 (S.D.N.Y. Jan. 28, 1997) (finding New York had no interest in case where parties were domiciled elsewhere, no case-related business was transacted there, and "none of the events giving rise to th[e] causes of action occurred in New York."), *aff'd*, 138 F.3d 65 (2d Cir. 1998).

In light of the foregoing, the "interest in protecting jurors from sitting on cases with no relevance to their own community weighs heavily in favor of dismissal." *Palacios*, 757 F. Supp.

-16-

2d at 362-63 *quoting Alfadda v. Fenn,* 159 F.3d 41, 46 (2d Cir. 1998); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947) ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."); *In re Alcon*, 719 F. Supp. 2d at 275 (rejecting claim that U.S. courts have prevailing interest in claims brought by American shareholders where "the core events, operative facts . . . and associated public policy interests are predominantly local to Switzerland"); *see also Palacios*, 757 F. Supp. 2d at 362 (concluding public interest factors favored dismissal where "dominant Guatemalan contacts . . . diminish any purported connection to the New York jury pool"); *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 287 (S.D.N.Y. 2007) (finding a New York jury "has little interest in adjudicating" dispute "between California and Russian companies over their interactions with the Nigerian government").

Finally, courts have cautioned against allowing claims to proceed here that "would open the doors of the Southern District to a plethora of international commercial and banking disputes with tangential connections" to New York. *Kirch v. Liberty Media Corp.*, No. 04 Civ. 667 (NRB), 2006 WL 3247363 at *8 (S.D.N.Y. Nov. 8, 2006); *see also Pollux*, 329 F.3d at 76 (affirming *forum non conveniens* dismissal because "New York's generalized interest in overseeing" bank headquartered in New York did not amount to a "strong local interest"); *Lazare Kaplan*, 337 F. Supp. 3d at 303 (*forum non conveniens* dismissal proper in case against banks with New York offices where "the brunt of the alleged misconduct" took place abroad).

In brief, without the Panel Banks, it is hard to envision a case with fewer New York, or even United States, connections.  This case should be dismissed against Capital Markets on *forum non conveniens* grounds if Capital Markets' 12(b)(6) motion is denied and the Consolidated Motion is granted.

-17-

## **CONCLUSION**

For the reasons set forth above, Capital Markets respectfully requests that the Court

dismiss the Second Amended Class Action Complaint against it.

Dated:        New York, New York
               May 20, 2019

                                               */s/ Marshall H. Fishman*
                                              Marshall H. Fishman
                                              Christine V. Sama
                                              Elizabeth M. Zito
                                            **GOODWIN PROCTER LLP**
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, New York 10018
                                            Tel. (212) 813-8800
                                            Fax (212) 355-3333
                                            mfishman@goodwinlaw.com
                                            csama@goodwinlaw.com
                                            ezito@goodwinlaw.com

                                            *Attorneys for Defendant*
                                            *RBC Capital Markets LLC*