**IMPORTANT LEGAL NOTICE TO ALL MEMBERS OF THE CLASS**
**FORWARD TO CORPORATE HEADQUARTERS/LEGAL COUNSEL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Dennis et al. v. JPMorgan Chase & Co. et al.*

No. 16-cv-06496 (LAK)

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENTS, _____, 2022 FAIRNESS HEARING THEREON,
AND SETTLEMENT CLASS MEMBERS' RIGHTS**

TO:    ALL PERSONS AND ENTITIES WHO TRANSACTED IN BBSW-BASED DERIVATIVES BETWEEN JANUARY 1, 2003 AND AUGUST 16, 2016 INCLUSIVE

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

*PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE ABOVE-CAPTIONED CLASS ACTION LAWSUIT PENDING IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. THIS NOTICE ADVISES YOU OF YOUR OPTIONS REGARDING THE CLASS ACTION SETTLEMENTS, INCLUDING WHAT YOU MUST DO IF YOU WISH TO SHARE IN THE NET SETTLEMENT FUNDS.*

*If you are a brokerage firm, swaps dealer, or trustee through which BBSW-Based Derivatives[1] were traded between January 1, 2003 and August 16, 2016, inclusive, on behalf of customers that are Settlement Class Members as defined in Section I.C below, you should provide the name and last known address of such customers to the Settlement Administrator at the address listed in Section VIII below within two weeks of receiving this Notice. The Settlement Administrator will cause copies of this Notice to be forwarded to each customer identified at the address so designated.*

This Notice of the pendency of this class action and of the proposed settlements with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"), Westpac Banking Corporation ("Westpac"), Australia and New Zealand Banking Group Ltd. ("ANZ"), Commonwealth Bank of Australia ("CBA"), National Australia Bank Limited ("NAB"), and Morgan Stanley and Morgan Stanley Australia Limited (collectively, "Morgan Stanley") is being given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "Court"). The purpose of this Notice is to inform you of your rights in connection with the proposed settlements and the pendency of the above-captioned class action (the "Action"). The proposed settlements concern only JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley. The action is ongoing with respect to the remaining Defendants.

Representative Plaintiffs[2] are traders of BBSW-Based Derivatives. Representative Plaintiffs allege that Defendants conspired to manipulate and manipulated the Bank Bill Swap Reference Rate ("BBSW") and the prices of BBSW-Based Derivatives during a period beginning on January 1, 2003 ("Class Period"). For the purposes of these Settlements, the Class Period ends on August 16, 2016, inclusive.

---

[1] "BBSW-Based Derivatives" means any financial derivative instrument that is based or priced in whole or in part in any way on the Bank Bill Swap Rate ("BBSW") or in any way includes BBSW as a component of price (whether priced, benchmarked and/or settled by BBSW), entered into by a U.S. person, or by a person from or through a location within the U.S., including, but not limited to: (i) Australian dollar foreign exchange ("FX") derivatives, including Australian dollar FX forwards (also known as "outright forwards" or "outrights"), Australian dollar FX swaps (also known as "currency swaps"), Australian dollar currency options, Australian dollar futures contracts (such as the Chicago Mercantile Exchange ("CME") Australian dollar futures contract) and options on such futures contracts; (ii) BBSW-based interest rate derivatives, including interest rate swaps, swaptions, forward rate agreements ("FRAs"), exchange-traded deliverable swap futures and options on those futures, 90-day bank accepted bill ("BAB") futures and options on those futures, and other over-the-counter ("OTC") contracts or publicly traded vehicles that reference BBSW; (iii) Australian dollar cross-currency swaps; and (iv) any other financial derivative instrument or transaction based in whole or in part on BBSW, or that in any way incorporates BBSW as a component of price, or is alleged by Representative Plaintiffs in this Action to be based in whole or in part on BBSW, or to in any way incorporate BBSW as a component of price. For the avoidance of doubt, BBSW-Based Derivatives do not include: (i) any BBSW-based deposits or loans, including floating rate notes, deposit-taking facilities, and commercial loans that are priced or call for payments due, in whole or in part, based on BBSW, including Australian dollar deposits and loans ("BBSW-Based Deposits or Loans"); or (ii) any negotiable certificates of deposit ("NCDs") and bank accepted bills ("BABs") issued and accepted by Prime Banks (collectively, "Prime Bank Bills") or Prime Bank eligible securities. "Prime Banks" means the banks designated by AFMA as prime banks during the Settlement Class Period.

[2] "Representative Plaintiffs" means (i) as to JPMorgan, Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., FrontPoint Financial Horizons Fund, L.P., Fund Liquidation Holdings, LLC, and any subsequently named plaintiff(s), including but not limited to Orange County Employees Retirement System ("OCERS"), and any of their assignees that may exist now or in the future; (ii) as to Westpac, ANZ, CBA and Morgan Stanley, Richard Dennis and OCERS and any subsequently named plaintiff(s) that may be added to this Action through amended or supplemental pleadings; and (iii) as to NAB, Richard Dennis, OCERS, Fund Liquidation Holdings, LLC and any subsequently named plaintiff(s) that may be added to this Action through amended or supplemental pleadings.

The Settling Defendants in the Action are JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley. JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley each has denied and continues to deny each and every claim asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever. The Settling Defendants have agreed to the Settlements solely to avoid the continuing cost and burden of, and expense associated with, continued litigation. Accordingly, the Settlements may not be construed as an admission of any wrongdoing by any of the Settling Defendants. Representative Plaintiffs entered into a settlement with JPMorgan on November 20, 2018, amended on March 1, 2021 and on January 13, 2022 (the "JPMorgan Settlement Agreement"). JPMorgan, to resolve the claims against it, agreed to pay by wire transfer a total of $7,000,000 as follows: (a) $1,500,000 into the Escrow Account within seven (7) Business Days after the Court grants the Conditional Certification Order; and (b) $5,500,000 into the Escrow Account within seven (7) Business Days after entry of the Final Approval Order and Final Judgment. Representative Plaintiffs entered into a settlement with Westpac on March 1, 2021, amended on January 13, 2022 (the "Westpac Settlement Agreement"). Pursuant to the Westpac Settlement Agreement, Westpac has agreed to pay by wire transfer a total of $25,000,000 as follows: (a) 12,500,000 into the Escrow Account within ten (10) Business Days after the Court issues the Conditional Certification Order; and (b) $12,500,000 into the Escrow Account within seven (7) Business Days after entry of the Final Approval Order and Final Judgment. Representative Plaintiffs entered into a settlement with ANZ on December 10, 2021 (the "ANZ Settlement Agreement"). ANZ, to resolve the claims against it, agreed to pay by wire transfer a total of $35,500,000 as follows: (a) $17,750,000 into the Escrow Account within ten (10) Business Days after the Court grants the Conditional Certification Order; and (b) $17,750,000 into the Escrow Account within ten (10) Business Days after entry of the Final Approval Order and Final Judgment. Representative Plaintiffs entered into a settlement with CBA on December 10, 2021 (the "CBA Settlement Agreement"). CBA, to resolve the claims against it, agreed to pay by wire transfer a total of $35,500,000 as follows: (a) $17,750,000 into the Escrow Account within ten (10) Business Days after the Court grants the Conditional Certification Order; and (b) $17,750,000 into the Escrow Account within ten (10) Business Days after entry of the Final Approval Order and Final Judgment. Representative Plaintiffs entered into a settlement with NAB on December 10, 2021 (the "NAB Settlement Agreement"). NAB, to resolve the claims against it, agreed to pay by wire transfer a total of $27,000,000 into the Escrow Account within fifteen (15) Business Days after the Court grants the Conditional Certification Order. Representative Plaintiffs entered into a settlement with Morgan Stanley on October 1, 2021, amended on January 13, 2022 (the "Morgan Stanley Settlement Agreement"). Morgan Stanley, to resolve the claims against it, agreed to pay by wire transfer a total of $7,000,000 as follows: (a) $1,500,000 into the Escrow Account within seven (7) Business Days after the Court grants the Conditional Certification Order; and (b) $5,500,000 into the Escrow Account within seven (7) Business Days after entry of the Final Approval Order and Final Judgment. (the "Morgan Stanley Settlement Agreement" and together with the JPMorgan Settlement Agreement, Westpac Settlement Agreement, ANZ Settlement Agreement, CBA Settlement Agreement, and NAB Settlement Agreement, the "Settlement Agreements").[3] The foregoing payments from JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley, plus all interest earned thereon, constitute the Settlement Funds. The Settlements also require JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley to provide certain cooperation to the Representative Plaintiffs. *See* Section II below.

**Right to Submit a Proof of Claim and Release to Participate in the Settlements**. Settlement Class Members may be entitled to share in the Net Settlement Funds if they submit a valid and timely Proof of Claim and Release ("Claim Form") postmarked no later than _____, 20__. *See* Section III.A and Section IV below. The Claim Form will be posted on the Settlement Website and will be available for download no later than _____.

However, if you are a Settlement Class Member but do not file a Claim Form, you will still be bound by the releases set forth in the Settlement Agreements if the Court enters an order approving the Settlements. *See* Section II.H below.

**Fairness Hearing and Right to Object.** The Court has scheduled a public hearing on final approval for _____, 20__ ("Fairness Hearing"). The purpose of the Fairness Hearing is to determine, among other things, whether the Settlements, the Distribution Plan, the application by Class Counsel for attorneys' fees and reimbursement of expenses, and Representative Plaintiffs' application for Incentive Awards are fair, reasonable, and adequate. If you remain in the Settlement Class, then you may object to any aspect of the Settlements, the Distribution Plan, Class Counsel's request for attorneys' fees and expenses, or any other matters. *See* Section III.B below. All objections must be made in accordance with the instructions set forth below and must be filed with the Court and served on the attorneys set forth below on or before _____, 20__, or they will not be considered. *See* Section III.B below.

**Only Members of the Settlement Class Who Submit a Valid Claim Form Will Be Eligible to Share in the Settlement Fund.** Assuming final approval by the Court, one hundred thirty-seven million dollars ($137,000,000), plus interest, in the Settlement Funds obtained from JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley will, net of such attorneys' fees, costs, taxes, and other deductions as are provided for by the Settlements and approved by the Court, be distributed to Settlement Class Members who properly complete and timely return a valid Claim Form, and are entitled to distribution under the Distribution Plan.

**Right to Exclude Yourself from the Settlement Class for the Settlement**. The Court will exclude you from the Settlement Class if you make a written request for exclusion from one or more of the Settlements in the form described in Section III.C that is received by the Settlement Administrator (A.B. Data, Ltd.) at the address set forth in Section VIII below no later than _____, 20__. **To be valid, the request for exclusion must comply with the requirements set forth in the Court's order dated _____, 20__ and summarized in Section III.C below.** If you exclude yourself from the Settlement Class, you will not be entitled to share in the Net Settlement Fund.

---

[3] Capitalized terms not otherwise defined herein shall have the same meanings assigned to them in the Settlement Agreements, as applicable.

| I. | BACKGROUND OF THE LITIGATION |
|---|---|

### A. The Nature of this Lawsuit

Plaintiffs allege that, during the Class Period, Defendants JPMorgan, BNP Paribas, S.A. ("BNPP"), The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, RBS, N.V., RBS Group (Australia) Pty Limited, UBS AG ("UBS"), ANZ, CBA, NAB, Westpac, Deutsche Bank AG ("Deutsche Bank"), HSBC Holdings plc, HSBC Bank Australia Limited, Lloyds Banking Group plc, Lloyds Bank plc, Macquarie Group Ltd., Macquarie Bank Ltd., Royal Bank of Canada, RBC Capital Markets, LLC, Morgan Stanley, Credit Suisse Group AG, Credit Suisse AG (collectively, "Bank Defendants"), ICAP plc, ICAP Australia Pty Ltd., Tullett Prebon plc, and Tullett Prebon (Australia) Pty Ltd. (collectively, "Broker Defendants," and with Bank Defendants, "Defendants") agreed, combined, and conspired to manipulate BBSW and fix the prices of BBSW-Based Derivatives. Plaintiffs allege that Defendants did so by using several means of manipulation. For example, Plaintiffs allege that Defendants coordinated manipulative, uneconomic transactions of Prime Bank Bills during the daily BBSW "Fixing Window" in order to move the published BBSW rate in a direction that benefitted their BBSW-Based Derivatives trading positions and that the Broker Defendants assisted the Bank Defendants' effort to manipulate BBSW. Plaintiffs have asserted legal claims under various theories, including federal antitrust law, the Commodity Exchange Act ("CEA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and common law.

JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley (the "Settling Defendants") and the other non-settling Defendants have denied and continue to deny each and every allegation of any wrongdoing that has or could have been asserted by or on behalf of Plaintiffs. Settling Defendants further deny they have violated, in any way and to any degree, *inter alia*, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any claim available under U.S. common law, and maintain that they have meritorious defenses to all claims alleged in the Action. The Settling Defendants are entering into the Settlements solely to avoid the continuing cost and burden of, and business interruption associated with, the Action.

### B. Procedural History of the Action

On August 16, 2016, Plaintiffs Richard Dennis, Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., and FrontPoint Financial Horizons Fund, L.P. filed the first Class Action Complaint in the United States District Court for the Southern District of New York captioned *Dennis et al. v. JPMorgan Chase & Co.*, No. 16-cv-06496 (LAK) (S.D.N.Y.), individually and on behalf of a proposed class comprised of all persons or entities that engaged in transactions for BBSW-Based Derivatives, during the period of at least January 1, 2003 through the date on which the effects of Defendants' conduct ceased. The action was assigned to the Honorable Lewis A. Kaplan. ECF No. 1.

On December 19, 2016, Plaintiffs filed their Amended Class Action Complaint (the "FAC"). ECF No. 63. On February 24, 2017, Defendants moved to dismiss the FAC under FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), filing three separate memoranda of law and twenty-four declarations challenging Plaintiffs' claims. ECF Nos. 109-137. On April 28, 2017, Plaintiffs filed their opposition to Defendants' motion to dismiss, including two memoranda of law and two declarations. ECF Nos. 153-156. On May 25, 2017, Defendants filed their reply memoranda of law and a declaration in support of their motion to dismiss. ECF Nos. 163-166.

On May 31, 2017, the Court "so ordered" Plaintiffs' notice of voluntary dismissal of six alleged Australian branches of certain Bank Defendants, who were also named in the Action. ECF No. 168.

On October 31, 2017, Defendants filed a supplemental memorandum of law and a declaration in further support of their motion to dismiss the FAC under FED. R. CIV. P. 12(b)(1) and 12(b)(6). ECF Nos. 186-187. On November 14, 2017, Plaintiffs filed under seal a memorandum of law in opposition to Defendants' supplemental memorandum of law in support of their motion to dismiss the FAC. On November 21, 2017, Defendants filed under seal a reply memorandum of law in further support of their motion to dismiss the FAC. On November 28, 2017, Plaintiffs filed a motion for leave to file a sur-reply memorandum of law in opposition to Defendants' motion to dismiss the FAC. ECF Nos. 195-196. The Court denied this motion. ECF No. 199.

On January 23, 2018, counsel for Plaintiffs and Defendants appeared before the Court for oral argument on Defendants' motion to dismiss the FAC. ECF No. 205. On February 2, 2018, Defendants requested leave to file an additional motion to dismiss the FAC, which the Court granted on February 5, 2018. ECF No. 208. On February 23, 2018, Defendants filed under seal a memorandum of law in further support of their additional motion to dismiss the FAC under FED. R. CIV. P. 12(b)(1) and 12(b)(6). On March 13, 2018, Plaintiffs filed under seal a memorandum of law in opposition to Defendants' additional motion to dismiss the FAC. On March 23, 2018, Defendants filed under seal a reply memorandum of law in further support of their additional motion to dismiss the FAC.

On November 21, 2018, Plaintiffs moved for conditional class certification of Plaintiffs' Settlement with JPMorgan. ECF Nos. 223-226.

On November 26, 2018, the Court issued two Opinions granting in part and denying in part Defendants' motions to dismiss the FAC. The Court dismissed all claims asserted by Plaintiffs Sonterra Capital Master Fund, Ltd., FrontPoint Financial Services Fund, L.P., FrontPoint Asian Event Driven Fund, L.P., and FrontPoint Financial Horizons Fund, L.P. (ECF No. 227), and all of Plaintiff Richard Dennis' claims except for his antitrust claims against Defendants Morgan Stanley and RBC Capital Markets, LLC, and his common law claims against Defendant Morgan Stanley. ECF No. 228 (the "November 26 Omnibus Order"). On the same date, the Court issued a separate Order conditionally certifying the Settlement Class for Plaintiffs' Settlement with JPMorgan. ECF No. 229.

On December 10, 2018, Plaintiffs and Defendants Morgan Stanley and RBC Capital Markets, LLC each moved for reconsideration of the November 26 Omnibus Order. ECF Nos. 238-243. On December 20, 2018, the Court issued a Memorandum and Order denying all parties' motions for reconsideration of its November 26 Omnibus Order. ECF No. 255.

On January 15, 2019, Plaintiffs moved for leave to file a Proposed Second Amended Class Action Complaint, adding Orange County Employees Retirement System ("OCERS") as a Plaintiff and adding additional allegations against Defendants. ECF Nos. 260, 263. Plaintiffs also moved for jurisdictional discovery from Defendants NAB, HSBC Holdings plc, HSBC Bank Australia Limited, and Morgan Stanley. ECF Nos. 261-262.

On January 28, 2019, the Court issued an Order endorsing a stipulation entered by Plaintiffs and Broker Defendants, pursuant to which Plaintiff OCERS' claims against Broker Defendants are deemed dismissed and preserved for appeal. ECF No. 271. On March 4, 2019, the Court issued an Order endorsing a stipulation entered by Plaintiffs and Defendants Macquarie Bank Ltd., Macquarie Group Ltd., Lloyds Banking Group plc, Lloyds Bank plc, and Credit Suisse Group AG, pursuant to which Plaintiff OCERS' claims against these Defendants are deemed dismissed and preserved for appeal. ECF No. 276.

On March 4, 2019, the Court also issued an Order endorsing a stipulation entered by Plaintiffs and all Defendants not bound by ECF Nos. 271 and 276, pursuant to which Plaintiffs' Proposed Second Amended Class Action Complaint was to be filed on the docket as the Second Amended Class Action Complaint (the "SAC"). The Order also prescribed a briefing schedule for Defendants' motion to dismiss the SAC. ECF No. 277. On April 3, 2019, Plaintiffs filed the SAC, including twelve exhibits. ECF No. 281.

On May 20, 2019, Defendants moved to dismiss the SAC, filing three separate memoranda of law and four declarations challenging Plaintiffs' claims. ECF Nos. 298-304, 306-308. Defendants NAB, HSBC Holdings plc, HSBC Bank Australia Limited, and Morgan Stanley also filed their memorandum of law in opposition to Plaintiffs' motion for jurisdictional discovery from them. ECF No. 305.

On July 8, 2019, Plaintiffs filed their opposition to Defendants' motion to dismiss the SAC, including three separate memoranda of law and a declaration. ECF Nos. 314-315, 317-318. Plaintiffs also filed their reply memorandum of law in support of their motion for jurisdictional discovery from Defendants NAB, HSBC Holdings plc, HSBC Bank Australia Limited, and Morgan Stanley. ECF No. 316.

On August 7, 2019, Defendants filed their replies in support of their motion to dismiss. ECF Nos. 324-27.

On February 13, 2020, the Court issued an Order that: (1) denied the motion to dismiss OCERS's claims for lack of personal jurisdiction except with respect to seven Defendants (HSBC Bank Australia Limited, HSBC Holdings plc, Morgan Stanley Australia Limited, NAB, The Royal Bank of Scotland Group plc, RBS N.V., and RBS Group (Australia) Pty Limited) for which the motion was granted; (2) granted Defendants' motion to dismiss the claims of all other plaintiffs for lack of personal jurisdiction; (3) dismissed OCERS's CEA claim asserted in its representative capacity as untimely; (4) denied Plaintiffs' motion for jurisdictional discovery; (5) denied Morgan Stanley's motion to dismiss except with respect to OCERS's claim for breach of the implied covenant of good faith and fair dealing against Morgan Stanley for which the motion was granted; and (6) granted RBC Capital Markets' motion to dismiss for failure to state a claim. ECF No. 347.

On February 27, 2020, Defendants ANZ and CBA filed a motion for reconsideration of the Court's Order that found personal jurisdiction over ANZ and CBA under a consent theory of jurisdiction concerning OCERS's claims. ECF Nos. 350-51. On March 12, 2020, Plaintiffs filed their opposition to Defendants ANZ and CBA's motion for reconsideration. ECF No. 355. On March 19, 2020, Defendants ANZ and CBA filed their reply in support of their motion for reconsideration. ECF No. 360. On August 4, 2020, the Court denied Defendants' motion for reconsideration. ECF No. 394.

On March 27, 2020, Defendants submitted a revised proposed case management plan and scheduling order due to the COVID-19 pandemic. ECF No. 361. On April 10, 2020, the Court issued a scheduling order that incorporated the revisions to case deadlines. ECF No. 364.

On June 16, 2020, Defendants UBS, BNPP, RBC, CBA, Morgan Stanley, Credit Suisse AG, The Royal Bank of Scotland plc, Westpac, ANZ, and Deutsche Bank filed answers to the SAC. ECF Nos. 373, 375-85.

On July 27, 2020, BNPP filed a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). In the motion, BNPP argued that: (1) the FX Benchmark Litigation Settlement Agreement bars all claims arising out of the trades with BNPP identified by OCERS; and (2) the Court's prior personal jurisdiction rulings bar any remaining claims against BNPP. ECF Nos. 390-92. On August 5, 2020, Deutsche Bank, UBS, RBS, and RBC (the "Rule 12(c) Group Movants") also filed a motion for judgment on the pleadings pursuant to FED. R. CIV. P 12(c) that mirrored the arguments in BNPP's motion. ECF Nos. 396-98. On August 5, 2020, Defendant ANZ also filed a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).

On August 28, 2020, Plaintiffs Dennis and OCERS filed their omnibus memorandum in opposition to BNPP's and the Rule 12(c) Group Movants' motions for judgment on the pleadings. On September 11, 2020, they filed their opposition to ANZ's motion for judgment on the pleadings. ECF No. 415.

On September 14, 2020, BNPP and the Rule 12(c) Group Movants filed their replies in support of the motions for judgment on the pleadings. ECF Nos. 416-17. On September 25, 2020, ANZ filed its reply in support of its motion for judgment on the pleadings. ECF No. 420. The Court denied ANZ's motion on March 30, 2021 without prejudice. ECF No. 458. BNPP and the Rule 12(c) Group Movant's motions were denied on May 11, 2021. ECF No. 469.

On October 30, 2020, Dennis and OCERS filed motions for discovery concerning disputes about Defendants' objections to the scope of discovery ("Scope of Discovery Motion") and time period ("Time Period Motion"). ECF Nos. 427-28. On November 9, 2020, Defendants filed an opposition to Plaintiffs' motions (ECF Nos. 431-32), and ANZ filed a supplemental opposition to both motions. ECF No. 433. On July 12, 2021, the parties advised the Court that they had independently resolved the dispute that was the subject of the Scope of Discovery Motion, and on July 13, 2021, the Court denied Plaintiffs' motion without prejudice to renew it if the parties were unable to resolve any remaining discovery disputes by agreement.  ECF No. 471. On September 15, 2021, the Court denied without prejudice the Time Period Motion.  ECF No. 476.

On March 2, 2021, Plaintiffs Dennis and OCERS filed their motion to conditionally certify the Settlement Class in connection with the proposed class action settlement with Westpac and their motion for a superseding order conditionally certifying the Settlement Class in connection with an amendment to the JPMorgan Settlement.  ECF Nos. 450-54. The Court granted the motions on March 30, 2021.  ECF Nos. 457, 459-60.  On December 10, 2021, Plaintiffs Dennis and OCERS filed their motion to conditionally certify the Settlement Class in connection with the proposed class action settlements with ANZ, CBA, NAB and Morgan Stanley.  ECF Nos. 488-94. On January 13, 2022, Plaintiffs Dennis and OCERS moved the Court for: (i) an order directing issuance of the Notice as to the ANZ, CBA, JPMorgan, Morgan Stanley, NAB, and Westpac Settlements (the "Notice Order"); (ii) superseding orders conditionally certifying the Settlement Class in connection with a second amendment of the JPMorgan Settlement and an amendment of the Westpac settlement; and (iii) entering an amended proposed order conditionally certifying the Settlement Class in connection with an amendment to the Morgan Stanley Settlement.  The Court granted the motions to conditionally certify the Settlement Class in connection with the proposed class action settlements with ANZ, CBA, NAB and Morgan Stanley on [_____], entered the superseding orders conditionally certifying the Settlement Class in connection with the second amendment to the JPMorgan and amendment to the Westpac Settlements on [_____], and issued the Notice Order on  [_____].  ECF Nos. ____.

C.   **The Definition of the Settlement Class**

1.      **The JPMorgan Settlement**

The Court has conditionally certified, for purposes of the JPM Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during the period January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles[4] are not to be excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Settlement Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

2.      **The Westpac Settlement**

The Court has conditionally certified, for purposes of the Westpac Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed

---

[4] "Investment Vehicles" means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

### 3.       The ANZ Settlement

The Court has conditionally certified, for purposes of the ANZ Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

### 4.       The CBA Settlement

The Court has conditionally certified, for purposes of the CBA Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

### 5.       The NAB Settlement

The Court has conditionally certified, for purposes of the NAB Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in,

said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

### 6.     The Morgan Stanley Settlement

The Court has conditionally certified, for purposes of the Morgan Stanley Settlement only, the Settlement Class, defined as:

> All Persons (including both natural persons and entities) who purchased, acquired, sold, held, traded, or otherwise had any interest in, BBSW-Based Derivatives during January 1, 2003 through August 16, 2016, inclusive, provided that, if Representative Plaintiffs expand the putative or certified class in this Action in or through any subsequent amended complaint, class motion, or Other Settlement, the defined Settlement Class in this Settlement Agreement shall be expanded so as to be coterminous with such expansion.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Notwithstanding the sentence above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates, subsidiaries, parents or agents of Defendants or controlled by Defendants or affiliates, subsidiaries, parents or agents of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate, subsidiary, parent or agent thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.

## II.     SUMMARY OF THE PROPOSED SETTLEMENT

### A.     Settlement with JPMorgan

On behalf of the Settlement Class, Representative Plaintiffs entered into the Settlement Agreement with JPMorgan on November 20, 2018, which was amended by agreement on March 1, 2021 and again on January 13, 2022. The description herein of the proposed Settlement is only a summary.  This description and this Notice are qualified in their entirety by the JPMorgan Settlement Agreement, the Amendment to the JPMorgan Settlement Agreement, and the Second Amendment to the JPMorgan Settlement Agreement, which are on file with the Court at the address indicated in this Notice and are available at the official website for the Settlement, at www.BBSWSettlement.com (the "Settlement Website").

### 1.     JPMorgan's Payments for the Benefit of the Settlement Class

#### a.     Monetary Payment

Subject to the terms and conditions of the JPMorgan Settlement Agreement, JPMorgan has agreed to pay $7,000,000 for the benefit of the Settlement Class in order to settle the claims against it.

#### b.     No Right to Reversion

The JPMorgan Settlement Agreement does not provide JPMorgan with a right of reversion.  That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to JPMorgan.

#### c.     JPMorgan's Potential Right To Termination

Sections 21 and 23 of the JPMorgan Settlement Agreement describes JPMorgan's right to terminate the JPMorgan Settlement Agreement if certain events occur.  With respect to each such event, JPMorgan has the right (as qualified in the JPMorgan Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

#### d.     Changes or Further Orders by the Court

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

### 2.     The Cooperation Provided under the JPMorgan Settlement for the Benefit of the Class

As fully set forth in the JPMorgan Settlement, Agreement JPMorgan agreed to provide certain cooperation to Class Counsel for the benefit of the Class, including: (i) documents produced to government agencies in connection with their investigations of BBSW-related conduct, together with information sufficient to show the search parameters that were utilized in connection with such productions, and information sufficient to identify JPMorgan personnel who worked on relevant trading and treasury desks; (ii) reasonably available trade data pertaining to JPMorgan's transactions in BBSW-denominated interbank money market instruments and BBSW-Based Derivatives during the Class Period; (iii) documents concerning BBSW reporting rules and standards and JPMorgan's BBSW submissions; (iv) reasonably available documents reflecting the information reflected in JPMorgan's submissions to the Federal Reserve Bank of New York, Bank of International Settlements, and OTC Derivatives Supervisors Group relating to their surveys on turnover in foreign exchange and interest rate derivative markets for BBSW-Based Derivatives, for the years 2000, 2004, 2007, 2010,

and 2013; and (v) non-privileged declarations, affidavits, and statements concerning Plaintiffs' allegations regarding BBSW and BBSW-Based Derivatives, provided these documents exist and are reasonably available.

**B.** **Settlement with Westpac**

On behalf of the Settlement Class, Representative Plaintiffs entered into the Westpac Settlement Agreement with Westpac on March 1, 2021, which was amended by agreement on January 13, 2022. The description herein of the proposed Settlement is only a summary. This description and this Notice are qualified in their entirety by the Westpac Settlement Agreement and the Amendment to the Westpac Settlement Agreement, which are on file with the Court at the address indicated in this Notice and are available at the Settlement Website.

**1.** **Westpac's Payments for the Benefit of the Settlement Class**

**a.** **Monetary Payment**

Subject to the terms and conditions of the Westpac Settlement Agreement, Westpac has agreed to pay $25,000,000 for the benefit of the Settlement Class in order to settle the claims against it.

**b.** **No Right to Reversion**

The Westpac Settlement Agreement does not provide Westpac with a right of reversion. That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to Westpac.

**c.** **Westpac's Potential Right To Termination**

Sections 22 and 23 of the Westpac Settlement Agreement describes Westpac's right to terminate the Settlement Agreement if certain events occur. With respect to each such event, Westpac has the right (as qualified in the Westpac Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

**d.** **Changes or Further Orders by the Court**

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website at www.BBSWSettlement.com as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

**2.** **The Cooperation Provided under the Westpac Settlement for the Benefit of the Class**

As fully set forth in the Westpac Settlement Agreement, Westpac agrees to provide the following cooperation, and certain additional cooperation, to Class Counsel for the benefit of the Class: (i) non-privileged documents, data, information and other materials in Westpac's possession, custody or control that were previously produced by Westpac to the Australian Securities Investments Commission ("ASIC") in connection with (a) investigation(s) by ASIC regarding BBSW and/or (b) the action captioned *Australian Securities & Investments Commission v. Westpac Banking Corporation* (ACN 007 457 141) (VID282/2016) (hereinafter, "*ASIC v. Westpac*") which Westpac is free to produce to Representative Plaintiffs without a court order in Australia and/or third party consent; (ii) non-privileged documents, data, information and other materials in Westpac's possession, custody or control that were entered into the trial record in *ASIC v. Westpac* which Westpac considers it is free to produce to Representative Plaintiffs without a court order in Australia and/or third-party consent; and (iii) if requested, and if located after a reasonable search, Westpac's and other Panel Banks' BBSW submissions for all tenors of BBSW on a daily basis; and Westpac's and other market participants' bids, offers, purchases, sales, repurchases, issuances or acceptances of Prime Bank Bills for the period January 1, 2003 to August 16, 2016, inclusive.

**C.** **Settlement with ANZ**

On behalf of the Settlement Class, Representative Plaintiffs entered into the ANZ Settlement Agreement with ANZ on December 10, 2021. The description herein of the proposed Settlement is only a summary. This description and this Notice are qualified in their entirety by the ANZ Settlement Agreement, which is on file with the Court at the address indicated in this Notice and is available at the Settlement Website.

**1.** **ANZ's Payments for the Benefit of the Settlement Class**

**a.** **Monetary Payment**

Subject to the terms and conditions of the ANZ Settlement Agreement, ANZ has agreed to pay $35,500,000 for the benefit of the Settlement Class in order to settle the claims against it.

**b.** **No Right to Reversion**

The ANZ Settlement Agreement does not provide ANZ with a right of reversion. That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to ANZ.

**c.** **ANZ's Potential Right To Termination**

Sections 22 and 23 of the ANZ Settlement Agreement describes ANZ's right to terminate the Settlement Agreement if certain events occur. With respect to each such event, ANZ has the right (as qualified in the ANZ Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

### d. Changes or Further Orders by the Court

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website at www.BBSWSettlement.com as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

### 2. The Cooperation Provided under the ANZ Settlement for the Benefit of the Class

As fully set forth in the ANZ Settlement Agreement, ANZ agrees to provide cooperation, subject to a court order, that is, on the whole, at least the equivalent of the cooperation that Westpac agreed to provide, including the following cooperation, and certain additional cooperation, to Class Counsel for the benefit of the Class: (i) relevant, non-privileged documents, data, information and other materials in ANZ's possession, custody or control that were both previously reviewed for production in this Action and produced by ANZ to ASIC in connection with investigation(s) by ASIC regarding BBSW and/or the action captioned *Australian Securities & Investments Commission v. Australia and New Zealand Banking Group Limited* (VID197/2016) (hereinafter, "*ASIC v. ANZ*") that are not publicly available, that ANZ considers it is free to produce to Representative Plaintiffs without a court order in Australia and/or third-party consent, and that are "relevant" to the remaining claims against or defenses of the non-settling Defendants in this Action; (ii) non-privileged documents, data, information and other materials in ANZ's possession, custody or control that were entered into the trial record in *ASIC v. ANZ* which ANZ considers it is free to produce to Representative Plaintiffs without a court order in Australia and/or third-party consent, to the extent that any such material has not already been produced to the Representative Plaintiffs in this Action; (iii) documents reflecting ANZ's and other market participants' purchases, sales, repurchases, issuances or acceptances of Prime Bank Bills to the extent such documents were previously produced to ASIC, including, if produced to ASIC, any additional details concerning the purchases and sales; (iv) documents and data showing details of ANZ's purchases and sales of Bank Accepted Bills ("BAB") and Negotiable Certificates of Deposit (together, "Prime Bank Bills") for the time period January 1, 2005 through June 30, 2015; and (v) documents and data reflecting the details of ANZ's and other market participants' BBSW-Based Derivatives transactions.

## D. Settlement with CBA

On behalf of the Settlement Class, Representative Plaintiffs entered into the CBA Settlement Agreement with CBA on December 10, 2021. The description herein of the proposed Settlement is only a summary. This description and this Notice are qualified in their entirety by the CBA Settlement Agreement, which is on file with the Court at the address indicated in this Notice and is available at the Settlement Website.

### 1. CBA's Payments for the Benefit of the Settlement Class

#### a. Monetary Payment

Subject to the terms and conditions of the CBA Settlement Agreement, CBA has agreed to pay $35,500,000 for the benefit of the Settlement Class in order to settle the claims against it.

#### b. No Right to Reversion

The CBA Settlement Agreement does not provide CBA with a right of reversion. That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to CBA.

#### c. CBA's Potential Right To Termination

Sections 22 and 23 of the CBA Settlement Agreement describes CBA's right to terminate the Settlement Agreement if certain events occur. With respect to each such event, CBA has the right (as qualified in the CBA Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

#### d. Changes or Further Orders by the Court

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website at www.BBSWSettlement.com as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

### 2. The Cooperation Provided under the CBA Settlement for the Benefit of the Class

As fully set forth in the CBA Settlement Agreement, CBA agrees to provide cooperation, subject to a court order, that, as a whole, is at least the equivalent of the cooperation provided by Westpac, including the following cooperation, and certain additional cooperation, to Class Counsel for the benefit of the Class: (i) time-stamped Prime Bank Bill data that certain of the Broker Defendants provided to CBA during the course of ASIC's investigation showing information concerning CBA's transactions with each broker; (ii) relevant interbank emails and chats involving the document custodians; (iii) daily screen snapshots, of any of the Broker Defendants' posted bids and offers for Prime Bank Bills; (iv) electronic communications in CBA's possession reflecting CBA's and other market participants' bids and offers and Prime Bank Bill transactions; and (v) records indicating intra-day BAB futures transactions.

## E. Settlement with NAB

On behalf of the Settlement Class, Plaintiffs entered into the NAB Settlement Agreement with NAB on December 10, 2021. The description herein of the proposed Settlement is only a summary. This description and this Notice are qualified in their entirety by

the NAB Settlement Agreement, which is on file with the Court at the address indicated in this Notice and is available at the Settlement Website.

      1.   **NAB's Payments for the Benefit of the Settlement Class**

          a.   **Monetary Payment**

Subject to the terms and conditions of the NAB Settlement Agreement, NAB has agreed to pay $27,000,000 for the benefit of the Settlement Class in order to settle the claims against it.

          b.   **No Right to Reversion**

The NAB Settlement Agreement does not provide NAB with a right of reversion.  That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to NAB.

          c.   **NAB's Potential Right To Termination**

Sections 22 and 23 of the NAB Settlement Agreement describe NAB's right to terminate the Settlement Agreement if certain events occur.  With respect to each such event, NAB has the right (as qualified in the NAB Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

          d.   **Changes or Further Orders by the Court**

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website at www.BBSWSettlement.com as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

      2.   **The Cooperation Provided under the NAB Settlement for the Benefit of the Class**

As fully set forth in the NAB Settlement Agreement, NAB agrees to provide the following cooperation, and certain additional cooperation, subject to a court order, to Class Counsel for the benefit of the Class: (i) relevant, non-privileged, reasonably available email and chat communications concerning BBSW for the time period January 1, 2009 through December 31, 2012 that were previously produced in connection with the ASIC Investigation, and/or the action captioned *Australian Securities and Investments Commission v. National Australia Bank Limited*, No. VID604/2016 ("*ASIC v. NAB*"), and information sufficient to identify NAB personnel involved in the conduct described in the Statement of Agreed Facts related to NAB's resolution of the ASIC Investigation; (ii) relevant, non-privileged, reasonably available audio files reflecting relevant communications for the time period January 1, 2009 through December 31, 2012 that were previously produced in connection with the ASIC Investigation from one hour before, during, and one hour after, the BBSW fixing window from traders on NAB's Short Term Interest Rate Risk desk ("STIRR"); (iii) reasonably available data and details (including, without limitation, dates and times, if available) pertaining to NAB's transactions in Prime Bank Bills from January 1, 2008 through December 31, 2012; (iv) reasonably available data regarding NAB's transactions in BBSW-Based Derivatives from January 1, 2008 through December 31, 2012, to the extent previously produced in connection with the ASIC Investigation; and (v) reasonably available data and risk reports reflecting the BBSW exposure of NAB's STIRR desk from January 1, 2008 through December 31, 2012, to the extent previously produced in connection with the ASIC Investigation.

   F.   **Settlement with Morgan Stanley**

On behalf of the Settlement Class, Plaintiffs entered into the Morgan Stanley Settlement Agreement with Morgan Stanley on October 1, 2021, which was amended by agreement on January 13, 2022.  The description herein of the proposed Settlement is only a summary.  This description and this Notice are qualified in their entirety by the Morgan Stanley Settlement Agreement and the Amendment to the Morgan Stanley Settlement Agreement, which are on file with the Court at the address indicated in this Notice and are available at the Settlement Website.

      1.   **Morgan Stanley's Payments for the Benefit of the Settlement Class**

          a.   **Monetary Payment**

Subject to the terms and conditions of the Morgan Stanley Settlement Agreement, Morgan Stanley has agreed to pay $7,000,000 for the benefit of the Settlement Class in order to settle the claims against it.

          b.   **No Right to Reversion**

The Morgan Stanley Settlement Agreement does not provide Morgan Stanley with a right of reversion.  That is, no matter how many Settlement Class Members fail to file a Claim Form or opt-out, if the Settlement is finally approved by the Court, none of the Settlement monies will revert to Morgan Stanley.

          c.   **Morgan Stanley's Potential Right To Termination**

Sections 22 and 23 of the Morgan Stanley Settlement Agreement describes Morgan Stanley's right to terminate the Settlement Agreement if certain events occur.  With respect to each such event, Morgan Stanley has the right (as qualified in the Morgan Stanley Settlement Agreement), but not the obligation, to determine to exercise, in their sole discretion, their right to terminate if the event occurs.

**d.   Changes or Further Orders by the Court**

Any change by the Court to the time and place of the Fairness Hearing, or any other matter, and all further orders or requirements by the Court will be posted on the Settlement Website at www.BBSWSettlement.com as soon as practicable.

It is important that you refer to the Settlement Website as no other notice may be published of such changes.

**2.   The Cooperation Provided under the Morgan Stanley Settlement for the Benefit of the Class**

As fully set forth in the Morgan Stanley Settlement Agreement, Morgan Stanley agrees to provide the following cooperation, and certain additional cooperation, to Class Counsel for the benefit of the Class: (i) reasonably available and accessible data and details (including, without limitation, dates and times) pertaining to Morgan Stanley Affiliates' and other market participants' bids, offers, purchases, sales, repurchases, issues or acceptances in BBSW-Based Derivatives, and Prime Bank Bills for the years 2003 through 2016; (ii) reasonably available and accessible documents or information, including audiotapes, reflecting relevant communications one hour before, during, and one hour after, the BBSW fixing window; (iii) reasonably available and accessible documents or data reflecting pricing, including intraday and/or minute-by-minute pricing for BAB futures; and (iv) reasonably available and accessible non-privileged documents and data responsive to Plaintiffs' requests for the production of documents.

**G.   Proposed Distribution Plan**

The precise method of calculating the distribution of the Net Settlement Funds in respect of the Class Members' transactions will be determined in accordance with a Distribution Plan that will be formulated and proposed to the Court by Class Counsel. Class Counsel will present the proposed Distribution Plan to the Court for approval at least thirty (30) days before the deadline for objections set forth below. Such proposed Distribution Plan will be posted on the Settlement Website at the time it is filed. **Settlement Class Members are strongly encouraged to review the Settlement Website for important information about the proposed Distribution Plan and for any changes which may be made thereto.**

**H.   The Releases, Discharge, and Covenant Not to Sue Under the Settlements**

**IF YOU HAVE NOT REQUESTED TO BE EXCLUDED FROM THE SETTLEMENT CLASS FOR THE SETTLEMENTS, WHEN THE SETTLEMENTS BECOME FINAL, YOU WILL BE RELEASING THE CLAIMS DESCRIBED BELOW, AND YOU WILL BE BOUND BY THE RELEASES IN THE SETTLEMENT AGREEMENTS INCLUDING THE COVENANT NOT TO SUE—EVEN IF YOU DO NOT FILE A CLAIM FORM.**

In exchange for JPMorgan's, Westpac's, ANZ's, CBA's, NAB's, and Morgan Stanley's payments and other consideration, Settlement Class Members will release their claims against the Released Parties, as defined in the Settlement Agreements, arising in any way out of transactions in BBSW-Based Derivatives, whether or not asserted in the Action, as is more fully set forth below.

**1.   The JPM Settlement**

(A)      Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against JPMorgan and any John Doe Defendants to the extent they are current or former JPMorgan employees (solely in that capacity) with prejudice.

(B)      The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

(i)      BBSW-Based Derivatives;

(ii)     BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

(iii)    Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

(iv)    any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or of other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)     The following claims shall not be released by this Settlement: (i) any claims against former JPMorgan employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by JPMorgan; (ii) any claims against the named Defendants in this Action other than JPMorgan and other than any John Doe Defendants to the extent they are current or former employees of JPMorgan (solely in their capacity as employees of JPMorgan); or (iii) any claims against any Defendant not affiliated with JPMorgan who may be subsequently added in this Action.

(D)     Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)     Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

**2.     The Westpac Settlement**

(A)     Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against Westpac and any John Doe Defendants to the extent they are current or former Westpac employees (solely in that capacity) with prejudice.

(B)     The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

    (i)     BBSW-Based Derivatives;

    (ii)    BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

    (iii)   Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

    (iv)    any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or of other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)     The following claims shall not be released by this Settlement: (i) any claims against former Westpac employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by Westpac; (ii) any claims against the named Defendants in this Action other than Westpac and other than any John Doe Defendants to the extent they are current or former employees of Westpac (solely in their capacity as employees of Westpac); or (iii) any claims against any Defendant not affiliated with Westpac who may be subsequently added in this Action.

(D)     Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)     Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

**3.     The ANZ Settlement**

(A)     Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against ANZ and any John Doe Defendants to the extent they are current or former ANZ employees (solely in that capacity) with prejudice.

(B)     The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

(i)     BBSW-Based Derivatives;

(ii)    BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

(iii)   Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

(iv)    any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*., the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)     The following claims shall not be released by this Settlement: (i) any claims against former ANZ employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by ANZ; (ii) any claims against the named Defendants in this Action other than ANZ and other than any John Doe Defendants to the extent they are current or former employees of ANZ (solely in their capacity as employees of ANZ); or (iii) any claims against any Defendant not affiliated with ANZ who may be subsequently added in this Action.

(D)     Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)      Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

## 4.    The CBA Settlement

(A)      Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against CBA and any John Doe Defendants to the extent they are current or former CBA employees (solely in that capacity) with prejudice.

(B)      The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

(i)      BBSW-Based Derivatives;

(ii)     BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

(iii)    Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

(iv)     any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)      The following claims shall not be released by this Settlement: (i) any claims against former CBA employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by CBA; (ii) any claims against the named Defendants in this Action other than CBA and other than any John Doe Defendants to the extent they are current or former employees of CBA (solely in their capacity as employees of CBA); or (iii) any claims against any Defendant not affiliated with CBA who may be subsequently added in this Action.

(D)      Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any

such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)     Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

**5.    The NAB Settlement**

(A)     Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against NAB and any John Doe Defendants to the extent they are current or former NAB employees (solely in that capacity) with prejudice.

(B)     The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

(i)      BBSW-Based Derivatives;

(ii)     BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

(iii)    Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

(iv)     any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)     The following claims shall not be released by this Settlement: (i) any claims against former NAB employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by NAB; (ii) any claims against the named Defendants in this Action other than NAB and Bank of New Zealand ("BNZ") and other than any John Doe Defendants to the extent they are current or former employees of NAB (solely in their capacity as employees of NAB) or other Released Parties; or (iii) any claims against any Defendant not affiliated with NAB who may be subsequently added in this Action.

(D)     Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)     Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

**6.**   **The Morgan Stanley Settlement**

(A)      Upon the Effective Date, the Action shall be dismissed fully, finally and in its entirety against Morgan Stanley and any John Doe Defendants to the extent they are current or former Morgan Stanley employees (solely in that capacity) with prejudice.

(B)      The Releasing Parties fully, finally and forever release and forever discharge and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, set-offs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to the claims, allegations or conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties, concerning any:

(i)      BBSW-Based Derivatives;

(ii)     BBSW-Based Deposits or Loans (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.);

(iii)    Prime Bank Bills or Prime Bank eligible securities purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.); or

(iv)     any similar financial instruments priced, benchmarked, or settled to BBSW purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, members of the Settlement Class, and/or Settling Class Members (to the extent such financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including additional financial instruments or claims subsequently alleged in the Action, or in which any of the foregoing otherwise had any interest;

including, but not limited to, any alleged manipulation of BBSW under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or of other improper conduct relating to BBSW (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*., the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or the common law).

(C)      The following claims shall not be released by this Settlement: (i) any claims against former Morgan Stanley employees arising solely from those former employees' conduct or alleged conduct that occurred while not employed by Morgan Stanley; (ii) any claims against the named Defendants in this Action other than Morgan Stanley and other than any John Doe Defendants to the extent they are current or former employees of Morgan Stanley (solely in their capacity as employees of Morgan Stanley); or (iii) any claims against any Defendant not affiliated with Morgan Stanley who may be subsequently added in this Action.

(D)      Although the foregoing release is not a general release, the foregoing release constitutes a waiver by the Parties and each Settling Class Member of any and all rights and provisions under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  Releasing Parties and Settling Class Members shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of the Settlement Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Settlement Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

(E)      Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

**\*\*\*\*\***

The Settlement Agreements do not settle or compromise any claims other than those set out therein.  All rights of the Representative Plaintiffs or any Settlement Class Member against any other person or entity other than the parties released in the Settlement Agreements are specifically reserved by the Representative Plaintiffs and Class Members.

| III. | YOUR OPTIONS |
|------|--------------|

### A. Submit a Claim Form for the Settlement Agreements

As a Settlement Class Member, you may be entitled to share in the Net Settlement Funds if you submit a valid and timely Claim Form demonstrating that you are an Authorized Claimant as set forth in the Settlement Agreements. Claim Forms must be postmarked to the Settlement Administrator (*see* address in Section VIII below) no later than _____,20__. You will be able to obtain a Claim Form on the Settlement Website at www.BBSWSettlement.com by no later than _____.

### B. Object to the Settlements

Any Settlement Class Member may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness, and adequacy of any of the proposed Settlements or any related matter (including the request for attorneys' fees, the Distribution Plan or any other matter).

However, no person shall be heard in opposition to the Settlement Agreements, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless, on or before ____, 20__, such person files with the Court (and serves the same on or before such filing by hand or overnight mail on Class Counsel and all counsel for JPMorgan, Westpac, ANZ, CBA, NAB, and Morgan Stanley) a statement of the objection or motion to intervene, as well as the specific legal and factual reasons for each objection or motion to intervene, including all support that the objecting Settlement Class Member wishes to bring to the Court's attention and all evidence the objecting Settlement Class Member wishes to introduce in support of his, her, or its objection or motion. Such submission must contain: (i) a heading that refers to the Action by case name and case number; (ii) a statement of whether the objecting or intervening person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, address, and telephone number; (iii) a statement of the specific legal and factual basis for each objection or intervention argument, including whether the objection applies only to the objector, a specific subset of the Class, or the entire Class; (iv) a description of any and all evidence the objecting person or entity may offer at the Fairness Hearing, including but not limited to the names, addresses, and expected testimony of any witnesses; all exhibits intended to be introduced at the Fairness Hearing; and documentary proof of the objecting Person's membership in the Settlement Class; (v) a description of the BBSW-Based Derivatives transactions entered into by the Settlement Class Member that fall within the Settlement Class definition (including, (a) the number and extent of the transactions in BBSW-Based Derivatives which the Settlement Class Member purchased, acquired, sold, held, traded, or otherwise had any interest in during the Settlement Class Period, (b) the notional value or amount of each of the aforementioned transactions; and (c) the effective and maturity date and/or trade and value dates for each of the aforementioned transactions); and (vi) a list of other cases in which the objector or intervenor or counsel for the objector or intervenor has appeared either as an objector or counsel for an objector in the last five years.  Persons who have timely submitted a valid request for exclusion are not Settlement Class Members and are not entitled to object.  All written objections must be signed by the Settlement Class Member (or his, her, or its legally authorized representative), even if the Settlement Class Member is represented by counsel.

| Vincent Briganti<br>**Lowey Dannenberg, P.C.**<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br><br>Christopher Lovell<br>**Lovell Stewart Halebian Jacobson LLP**<br>500 Fifth Avenue, Suite 2440<br>New York, NY 10110 | Alan C. Turner<br>**Simpson Thacher & Bartlett LLP**<br>425 Lexington Avenue<br>New York, NY 10017 | Timothy G. Cameron<br>Lauren M. Rosenberg<br>**Cravath, Swaine & Moore LLP**<br>825 Eighth Avenue<br>New York, NY 10019 |
|---|---|---|
| *Counsel for Representative Plaintiffs*<br>*(Class Counsel)* | *Counsel for JPMorgan* | *Counsel for Westpac* |
| Penny Shane<br>Christopher M. Viapiano<br>**Sullivan & Cromwell LLP**<br>125 Broad Street<br>New York, NY 10004 | Jeffrey T. Scott<br>Mark A. Popovsky<br>**Sullivan & Cromwell LLP**<br>125 Broad Street<br>New York, NY 10004 | Matthew J. Porpora<br>Jonathan S. Carter<br>**Sullivan & Cromwell LLP**<br>125 Broad Street<br>New York, NY 10004 |
| *Counsel for ANZ* | *Counsel for CBA* | *Counsel for NAB* |
|  | Jon R. Roellke<br>**Morgan, Lewis & Bockius LLP**<br>1111 Pennsylvania Avenue<br>Washington, D.C. 20004 |  |

| | | |
|---|---|---|
| | *Counsel for Morgan Stanley* | |

**C.**   **Request to be Excluded from the Settlement Class for the Settlements**

The Court will exclude from the Settlement Class any member who requests exclusion.  To exclude yourself from the Settlement Class for any of the Settlements, you must submit a written request that clearly states: (i) the name, address, and telephone number of the Settlement Class Member; (ii) a list of all trade names or business names that the Settlement Class Member requests to be excluded; (iii) the name of the Action ("*Dennis et al. v. JPMorgan Chase & Co. et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.)"); (iv) a statement certifying such person is a Settlement Class Member; (v) a description of the BBSW-Based Derivatives transactions purchased, acquired, sold, held, traded or that the Settlement Class Member otherwise had any interest in that fall within the Settlement Class definition (including, for each transaction, the identity of the broker, the date of the transaction, the type (including direction) of the transaction, the counterparty (if any), the exchange on which the transaction occurred (if any), any transaction identification numbers, the rate, the effective and maturity dates and/or trade dates for each of the aforementioned transactions and the notional value or amounts of the transactions); and (vi) a statement that "I/we hereby request that I/we be excluded from the Settlement Class in *Dennis et al. v. JPMorgan Chase & Co. et al.*, No. 16-cv-06496 (LAK) (S.D.N.Y.) for the Settlements with" JPMorgan, Westpac, ANZ, CBA, NAB and/or Morgan Stanley.  All written requests must be signed by the Settlement Class Member (or his, her or its legally authorized representative), even if the Settlement Class Member is represented by counsel.

Requests for exclusion from the Settlement Class for the Settlement Agreements must be sent by U.S. first class mail (preferably certified mail) (or, if sent from outside the U.S., by a service that provides for guaranteed delivery within five (5) or fewer calendar days of mailing) to the Settlement Administrator (*see* address in Section VIII).  Requests for exclusion must be received no later than _____, 20__.

If you exclude yourself from the Settlement Class for any of the Settlements, you will not be bound by the Settlement(s) that you exclude yourself from and can independently pursue claims you may have against the relevant Defendant(s) at your own expense.  You may also enter an appearance through an attorney if you so desire.  However, if you exclude yourself from the Settlement(s), you will not be eligible to share in the portion of the Net Settlement Fund funded by the JPMorgan, Westpac, ANZ, CBA, NAB and/or Morgan Stanley Settlements.  In addition, if you exclude yourself from the Settlement Class, you will not be entitled to object to the Settlement(s) or to appear at the Fairness Hearing regarding the Settlement(s).

| **IV.**   **CLAIM FORM** |
|---|

By no later than ____, the Claim Form will be available on the Settlement Website at www.BBSWSettlement.com, or you may request that a Claim Form be mailed to you by calling the Settlement Administrator toll free at XXX-XXX-XXXX.  You should consider reading the Settlement Agreements, and you should read the Claim Form carefully before submitting your Claim Form or determining another course of action.

| **V.**   **ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** |
|---|

Settlement Class Members are not personally responsible for payment of attorneys' fees or expenses.  As compensation for their time and their risk in prosecuting the litigation on a wholly contingent fee basis for more than three years, Class Counsel will ask the Court for an award of attorneys' fees in the amount of no more than one-third of the Settlement Funds as a common fund and may ask the Court for reimbursement of their costs and expenses of no more than $_____, all to be deducted from the Settlement Funds.  Additionally, Class Counsel may apply, at the time of any application for distribution to qualifying Settlement Class Members, for an award from the Settlement Funds of attorneys' fees for services performed and reimbursement of costs and expenses incurred in connection with the administration of the Settlement Agreements after the date of the Fairness Hearing.  Representative Plaintiffs may seek an award from the Settlement Funds of no more than $_____ as reimbursement of their own expenses and compensation for their time devoted to this litigation. Any such amount constitutes the Incentive Award.

| **VI.**   **FAIRNESS HEARING AND RIGHT TO OBJECT** |
|---|

The Court has scheduled a Fairness Hearing for _____,2022 at __:__ A.M./P.M. to be held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007-1312, Courtroom 21B.  At the Fairness Hearing, the Court will determine, among other things, if the proposed Settlements are fair, reasonable, and adequate.  The Court will also consider Class Counsel's request for attorneys' fees and reimbursement of litigation expenses, and Representative Plaintiffs' Incentive Award.

The time and date of the Fairness Hearing may be continued from time to time or held remotely without further notice and you are advised to confirm the time and location if you wish to attend.  As soon as practicable after any change in the scheduled date and time, such change will be posted on the Settlement Website.

If you are a Settlement Class Member, you are entitled to appear, in person or through duly authorized attorneys, and to show cause why the Settlements or other applications should or should not be approved.  However, if you wish to appear, you must submit a written statement, along with any materials you wish the Court to consider.  This written statement must be received by the Court (at the address provided above) no later than _____, 20__ or it will not be considered.  Such materials must also be served on Class Counsel and Counsel for JPMorgan, Westpac, ANZ, CBA, NAB and/or Morgan Stanley at the addresses set forth in Section III.B by overnight mail, first-class mail, or by hand or they will not be considered.

| **VII.** | **CHANGE OF ADDRESS** |
|---|---|

If this Notice reached you at an address other than the one on the mailing label, or if your address changes, please enter your current information online at www.BBSWSettlement.com, or send it to the Settlement Administrator at the address set forth in Section VIII below.

| **VIII.** | **THE SETTLEMENT ADMINISTRATOR** |
|---|---|

The Court has appointed A.B. Data, Ltd. as the Settlement Administrator.  Among other things, the Settlement Administrator is responsible for providing notice of the Settlements to the Settlement Class and processing Claim Forms.  You may contact the Settlement Administrator through the Settlement Website, by telephone toll free at XXX-XXX-XXXX, or by writing to the Settlement Administrator at the below address:

BBSW Settlement
c/o A.B. Data, Ltd.
P.O. Box 17____
Milwaukee, WI 53217

| **IX.** | **ADDITIONAL INFORMATION** |
|---|---|

The Settlement Agreements and other important documents related to this Action are available online at www.BBSWSettlement.com and also available for review during normal business hours at the office of the Clerk of Court, United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007-1312.  If you have questions about this Notice, the procedure for registering, or the Settlement Agreements, you may contact Class Counsel at the address listed in Section III.B above.

<u>**DO NOT CONTACT THE DISTRICT COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**</u>

Dated: _____, 20__               **BY ORDER OF THE COURT.**

Clerk of the United States District Court
Southern District of New York