UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD DENNIS, SONTERRA CAPITAL MASTER FUND, LTD., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., FRONTPOINT FINANCIAL HORIZONS FUND, L.P., and ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-*against*-<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., BNP PARIBAS, S.A., THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS N.V., RBS GROUP (AUSTRALIA) PTY LIMITED, UBS AG, AUSTRALIA AND NEW ZEALAND BANKING GROUP LTD., COMMONWEALTH BANK OF AUSTRALIA, NATIONAL AUSTRALIA BANK LIMITED, WESTPAC BANKING CORPORATION, DEUTSCHE BANK AG, HSBC HOLDINGS PLC, HSBC BANK AUSTRALIA LIMITED, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, MACQUARIE GROUP LTD., MACQUARIE BANK LTD., ROYAL BANK OF CANADA, RBC CAPITAL MARKETS LLC, MORGAN STANLEY, MORGAN STANLEY AUSTRALIA LIMITED, CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, ICAP PLC, ICAP AUSTRALIA PTY LTD., TULLETT PREBON PLC, TULLETT PREBON (AUSTRALIA) PTY LTD., AND JOHN DOES NOS. 1-50.<br><br>Defendants. | Docket No. 16 CV 6496 |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL
OF THE PROPOSED PLAN OF DISTRIBUTION**

I.  **Standards Governing Approval Of A Proposed Plan Of Distribution**

Class Counsel[1] in this class action respectfully submit this memorandum in support of their Proposed Plan of Distribution ("Plan") annexed as Exhibit 1 to the Memorandum and accompanying Proof of Claim and Release ("Claim Form"). The Plan, if approved, will govern the distribution of the Net Settlement Funds from the Settlements reached with Settling Defendants.[2] As provided in the Orders granting conditional certification entered on May 11, 2022[3] and the Orders approving the Class Notice plan entered February 1, 2022 and amended on May 11, 2022,[4] Plaintiffs' Counsel will post the Plan and Claim Form on the Settlement Website for the Class to review and utilize.

The standard for **approval** of a plan of distribution is that it must be "fair and reasonable" or "fair and adequate." Order Approving Plan of Allocation, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK) (S.D.N.Y. April 14, 2021), ECF No. 429 (Kaplan, J) (the "formula for the calculation of the claims of Authorized Claimants … provides a fair and reasonable basis upon which to allocate the proceeds … with due consideration having been given to administrative convenience and necessity, and the plan of allocation …is … fair and reasonable"); *Maley v. Del. Global Tech. Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002); *see also In re Payment Card Interchange Fee & Merch. Disc.*

---

[1] Lowey Dannenberg, P.C. and Lovell Stewart Halebian Jacobson LLP.

[2] "Settling Defendants" means Australia and New Zealand Banking Group Limited; Commonwealth Bank of Australia; National Australia Bank Limited; Morgan Stanley and Morgan Stanley Australia Limited; Westpac Banking Corporation; JPMorgan Chase & Co. and JPMorgan Chase Bank; Credit Suisse AG and Credit Suisse Group AG; BNP Paribas, S.A.; Deutsche Bank AG; Royal Bank of Canada; The Royal Bank of Scotland plc (n/k/a NatWest Markets plc); and UBS AG.

[3] ECF Nos. 542, 544

[4] ECF Nos. 525-30, 543.

*Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F.Supp.2d at 367).

"As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (internal quotation omitted).

"'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (same); see also *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 40 ("[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel").

## II. The Plan Satisfies The Standards For Approval

Numerous class actions alleging antitrust conspiracy claims have approved plans of distribution that were based on the volume of transactions by Class members, including claims alleging that the daily fix of an interest rate or other item was manipulated. *E.g.,* Plan of Distribution, *Fund Liquidation Holdings, LLC v. Citibank, N.A.,* No. 16-cv-5263 (AKH), 2022 WL 2073927, at *2 (S.D.N.Y. June 9, 2022), *Alaska Elec. Pension Fund, et. al., v. Bank of Am., N.A., et. al.*, No. 14-cv-7126 (S.D.N.Y. Mar. 30, 2018), ECF No. 602-1; Plan of Distribution, *Alaska Elec. Pension Fund, et. al., v. Bank of Am., N.A., et. al.*, No. 14-cv-7126 (S.D.N.Y. Sept. 28, 2018), ECF No. 681-1; Final Judgments and Orders of Dismissal at ¶16, *Alaska Elec. Pension Fund, et. al., v. Bank of Am., N.A., et. al.*, No. 14-cv-7126 (S.D.N.Y. June 1, 2018), ECF

Nos. 648-57 (approving plan of distribution as fair, reasonable, and adequate); Final Judgment and Order of Dismissal at ¶ 15, *Alaska Elec. Pension Fund, et. al., v. Bank of Am., N.A., et. al.*, No. 14-cv-7126 (S.D.N.Y. Nov. 13, 2018), ECF No. 738 (same); Distribution Plan, *In re London Silver Fixing, Ltd. Antitrust Litig.,* Nos. 14-md-2573, 14-mc-2573 (S.D.N.Y. June 25, 2020), ECF No. 451-5; Final Approval Order, *In re London Silver Fixing, Ltd. Antitrust Litig.,* Nos. 14-md-2573, 14-mc-2573 (S.D.N.Y. June 15, 2021), ECF No. 536 (approving plan of distribution as fair, reasonable, and adequate); Plan of Allocation for the Third Settlement Agreement, *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.,* Nos. 14-md-2548, 14-mc-2548 (S.D.N.Y. Nov. 12, 2021), ECF No. 610-3; Updated Plan of Allocation for Deutsche Bank and HSBC Settlements, *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.,* Nos. 14-md-2548, 14-mc-2548 (S.D.N.Y. Nov. 12, 2021), ECF No. 610-4; Order Regarding Notice of a Revised Plan of Allocation, *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.,* Nos. 14- md-2548, 14-mc-2548 (S.D.N.Y. Jan. 13, 2022), ECF No. 624 at ¶ 4 (preliminarily approving updated Plan of Allocation and Plan of Allocation for a subsequent settlement, with final approval to follow at or after the Fairness Hearing).

Plaintiffs make similar claims here, and the Plan similarly proposes to distribute the Net Settlement proceeds based on the respective volumes of Class Member transactions. In this case, the allegedly conspiratorially fixed interest rate is the Australian Bank Bill Swap Reference Rate ("BBSW").

Plaintiffs and Class Members allegedly purchased or sold BBSW-Based Derivatives[5] or received or made payments thereunder at allegedly artificial levels caused by Defendants' alleged manipulation of the BBSW rate.

### A. The Plan Fairly Distributes Settlement Proceeds, Easily Permits Class Members To File Claims And Furthers Efficient Claims Administration.

Similar to other plans, the Plan specifies how the volume will be calculated for various types of BBSW-Based Derivatives. *See* Plan *e.g.,* ¶¶9-12 (Interest Rate Swaps and Forward Rate Agreements), ¶13 (Interest Rate Swaptions), ¶14 (90-Day Bank Accepted Bill ("BAB") Futures), ¶15 (Options on BAB Futures), ¶¶16-18 (Foreign Exchange ("FX") Forwards and FX Swaps), ¶19 (FX Futures), ¶20 (FX Options).

The Proposed Plan specifically explains how different transactions that are impacted by manipulation of BBSW will be included in the volume calculation for that instrument. Plan, *e.g.,* ¶10 ("the 'Transaction Notional Amount' for each transaction [is] the quotient of the sum of the

---

[5] "BBSW-Based Derivatives" means any financial derivative instrument that is based or priced in whole or in part in any way on BBSW or in any way includes BBSW as a component of price (whether priced, benchmarked and/or settled by BBSW), entered into by a U.S. Person, or by a person from or through a location within the U.S., including, but not limited to: (i) Australian dollar foreign exchange ("FX") derivatives, including Australian dollar FX forwards (also known as "outright forwards" or "outrights"), Australian dollar FX swaps (also known as "currency swaps"), Australian dollar currency options, Australian dollar futures contracts (such as the Chicago Mercantile Exchange ("CME") Australian dollar futures contract) and options on such futures contracts; (ii) BBSW-based interest rate derivatives, including interest rate swaps, swaptions, forward rate agreements ("FRAs"), exchange-traded deliverable swap futures and options on those futures, 90-day bank accepted bill ("BAB") futures and options on those futures, and other over-the-counter ("OTC") contracts or publicly traded vehicles that reference BBSW; (iii) Australian dollar cross-currency swaps; and (iv) any other financial derivative instrument or transaction based in whole or in part on BBSW, or that in any way incorporates BBSW as a component of price, or is alleged by Representative Plaintiffs in this Action to be based in whole or in part on BBSW, or to in any way incorporate BBSW as a component of price. For the avoidance of doubt, BBSW-Based Derivatives do not include: (i) any BBSW-Based Deposits or Loans; or (ii) any Prime Bank Bills or Prime Bank eligible securities.

notional values for all interest payment dates during the Class Period divided by the number of interest payment dates in a one-year period").

Thus, the Plan is structured to be simple for Class members, encouraging the submission of proofs of claim and participation. *See* William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2021) ("the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible"); *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y.) ("*CDS Antitrust*") ("A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."). *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (noting that plan of distribution adopting a volume-based approach "represents a reasonable method of ensuring 'the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.'") (citing *CDS Antitrust,* 2016 WL 2731524, at *9).

For example, to receive a portion of the Net Settlement Fund, Class Members will be required to submit a Proof of Claim and Release form ("Claim Form"), annexed as Exhibit 2 to this Memorandum. The Claim Form is straight-forward and simple, only requiring a claimant to provide certain background information and readily accessible data about their BBSW-Based Derivatives transactions, including the transaction type, trade date, applicable BBSW rate, and notional (face) value of the transaction. This information is comparable to the information requested in other benchmark litigation cases.[6]

---

[6] *See* Proof of Claim and Release Form, *Alaska Elec. Pension Fund, et. al., v. Bank of Am., N.A., et. al.*, No. 14-cv- 7126, (S.D.N.Y.), ECF No. 512-3 (claim form requiring submission of, *inter alia*,

The Plan allocates the Net Settlement Fund *pro rata* to Authorized Claimants based on the volume proxy of their total exposure to Defendants' alleged manipulations of BBSW-Based Derivatives. Plan ¶23. The Plan calculates for each BBSW-Based Derivatives transaction a "Transaction Notional Amount," which is a score that reflects the exposure of the Class Member to the alleged manipulations of the BBSW-Based Derivatives. Plan ¶7. If all other factors are held constant, Claimants with a higher adjusted trading volume (see II.C *infra* and Plan ¶21) can expect a proportionally higher Transaction Notional Amount. *Id.* at ¶10.

Further, BBSW-Based Derivatives transactions that include multiple interest payments based on the notional value of the transaction (*e.g.*, interest rate swaps) will have higher Transaction Notional Amounts than BBSW-Based Derivatives transactions that have the same notional value but are based on fewer interest rate payments. *Id.* The greater exposure of a Class member to BBSW manipulations through a higher number of interest rates is thus reflected in the method of volume calculation.

An Authorized Claimant's Transaction Notional Amounts for all of its eligible BBSW-Based Derivatives transactions will be summed together (the "Transaction Claim Amount") and divided by the sum of all calculated Transaction Claim Amounts to determine the Authorized Claimant's *pro rata* fraction. *Id.* at ¶23. Each Authorized Claimant's *pro rata* fraction will then be multiplied by the Net Settlement Fund to determine the Authorized Claimant's payment amount. *Id.*

Authorized Claimants whose expected distribution based on their *pro rata* fraction is less than the costs of administering the Claim will instead receive a Minimum Payment

---

transactions entered into, received or made payments on, settled, terminated, transacted in, or held during the Settlement Class Period).

Amount. *Id*. at ¶24. The amount will be determined after the Claim Forms are reviewed and calibrated to ensure that a minimal portion of the Net Settlement Funds is reallocated towards Authorized Claimants receiving the Minimum Payment Amount. *Id.*

**B. The Plan Fairly Provides For Weighting Of Certain Volumes.**

This is a situation in which the Plan need only have a reasonable rational basis. Class Counsel have had extensive experience this case, including in litigating motions before this Court. *E.g.,*

- *Dennis v. JPMorgan Chase & Co.,* 343 F. Supp. 3d 122, 171 (S.D.N.Y. 2018) ("*BBSW I*") (holding that Plaintiffs plausibly alleged that Defendants conspired to fix the BBSW rate; that Plaintiffs plausibly alleged that these rate manipulations adversely affected BBSW-Based Derivatives; but acknowledging that "the damage calculations in this case may indeed be complex").

- *Dennis v. JPMorgan Chase & Co*., No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018) ("*BBSW II*") (denying motion to dismiss Plaintiffs' claims by alleged conspirator Defendants who were not on the Panel which made the daily fixes of the BBSW rate).

- *Dennis v. JPMorgan Chase & Co*., 439 F. Supp. 3d 256 (S.D.N.Y. 2020) ("BBSW IV") (denying in significant part the motion to dismiss claims by Plaintiff Orange County Employees Retirement System ("OCERS")).

- ECF 394 (Order of this Court dated August 4, 2020 denying motion by Australia And New Zealand Banking Group Ltd. ("ANZ"), and Commonwealth Bank Of Australia ("CBA") for reconsideration of this Court's order denying their motions to dismiss OCERs' claims on statute of limitations and other grounds).

7

- ECF 458 (Order of this Court's dated March 30, 2021 denying the Rule 12(c) motion of Defendant ANZ to dismiss on statute of limitations and other grounds).

- *Dennis v. JPMorgan Chase & Co.,* No. 16-CV-6496 (LAK), 2021 WL 1893988, at *2 (S.D.N.Y. May 11, 2021) ("BBSW V") (denying Rule 12(c) motion by numerous Defendants to dismiss Plaintiffs' claims relating to the BBSW-Based Derivatives consisting of FX forwards supposedly because the claims had been released and dismissed by the terms of an earlier class action settlement.).

Class Counsel have reviewed truly voluminous discovery including millions of pages of documents. Class Counsel have conferred with economists about, among other things, the quality and impact of the conduct of the Defendants and the import of communications among Defendants. The motion before the Court presents a Plan that has been "formulated by competent and experienced class counsel" *See* cases collected at p.2 above. Thus, the Plan need only have a reasonable and rational basis.

Class Counsel's decision to use the tried and true method of a volume-based distribution, suitably applied to the facts of this case, has a reasonable and rational basis.

### C. The Plan Appropriately Weights The Volume of Class Member's Transactions During 2005-2012.

The Class Period here is long: fourteen years. There are much less indications of manipulation at the beginning and end of the Class Period. There are many indications that the frequency of manipulations likely became significantly larger during 2005 and 2012. Recognizing the potential differential in impact, the Plan follows an adjustment used in other volume-based plans that provides for more weighting of volume during a year in which a class member experiences more transactions (and, accordingly, more exposure to harm from manipulation). Where a Class Member experiences more exposure to harm from manipulation

8

because there appear to be more manipulations, a plan may provide a greater weighting of volume. *See Charron v. Wiener*, 731 F.3d 241, 253 (2d Cir. 2013) ("*Charron*") ("All class settlements value some claims more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments").

Consistent with the foregoing, the Plan provides no additional volume weight for transactions during 2003-2004, and 2013-2016. See Plan ¶21. The Plan does provide additional volume weightings for the years 2005-2012. *Id*. The amount of volume weighting significantly increases from 2005 until 2009. Consistent with Class Counsel's judgment of the indications of the frequencies of manipulation, the Plan weights volume for each year between 2009 and 2012 six times higher than the weighting of the volume during the years 2003-2004 and 2013-2016. In Class Counsel's judgment of the indications of the frequency of manipulation, this weighting has a reasonable and rational basis, and is fair and reasonable. *Charron*, 731 F.3d at 253.

### D. The Court May Amend The Plan At Any Time

Here, the Plan specifically provides that the Court may amend the Plan at any time on the Court's own initiative or based on motion. Plan ¶29. Extensive precedent recognizes that courts may amend methods of distribution at any time, including after final judgment.[7]

### Conclusion

---

[7] *E.g., In re Worldcom, Inc. Sec. Litig*., 02 CIV. 3288 (DLC), 2005 WL 3577135, at *1 (S.D.N.Y. Dec. 30, 2005) (supplemental plan of allocation approved, after final judgment, over objections that certain class members would then not share in settlement proceeds); *see also In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *3 (S.D.N.Y. July 15, 2014) (Pauley, J.) (preliminarily approving plan of allocation "subject to revision by this court"); *In re Stock Exchange Options Trading Antitrust Litig*., No. 99 Civ. 0962(RCC), 2005 WL 1635158, at *16-17 (S.D.N.Y. July 8, 2005) (preliminarily approving amended plan of distribution providing for *pro rata* distribution and deferring consideration of distributing remaining excess funds, if any); *accord, Park v. The Thomson Corp*., No. 05 Civ. 2931(WHP), 2008 WL 4684232, at *5 (S.D.N.Y. Oct. 22, 2008) (approving amended allocation plan enabling payouts to additional reasonably identifiable class members).

The Plan has a reasonable and rational basis. It is within the range of what may be found to be fair and adequate at the final approval stage. Accordingly, it also satisfies Rule 23(e)(2)(C)(ii) of the Federal Rules of Civil Procedure for purposes of approving the settlements.

Dated: August 3, 2022
New York, New York

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By: /s/ Christopher Lovell
Christopher Lovell
Benjamin M. Jaccarino
500 Fifth Avenue, Suite 2440
New York, NY 10110
Tel: (212) 608-1900
clovell@lshllp.com
bjaccarino@lshllp.com

*Counsel for Representative Plaintiffs and the Proposed Class*

**LOWEY DANNENBERG, P.C.**

By: /s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com


Todd Seaver
Carl N. Hammarskjold
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel.: (415) 433-320
Fax: (415) 433-6382
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com
Patrick T. Egan (PE-6812)
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel.: (617) 542-8300
Fax: (617) 542-1194
pegan@bermantabacco.com
*Additional Counsel for Orange County Employees Retirement System*

10