UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RICHARD DENNIS, et al.,

                    Plaintiffs,

       -against-                               16-cv-6496 (LAK)

JPMORGAN CHASE & CO., et al.,

                      Defendants.
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-25-2023

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        This is an antitrust class action that has been litigated for nearly seven years. On November 1, 2022, the Court approved eight proposed class action settlements, creating a common fund of $185,875,000. Lead counsel Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") and Lowey Dannenberg, P.C. ("Lowey Dannenberg," and together with Lovell Stewart, "Class Counsel") now seek attorneys' fees of $47,218,750, or 25.4 percent of the settlement common fund, and litigation expenses of $845,471.57, to be split among themselves and another law firm, Berman Tabacco ("Berman"), with which Class Counsel has a fee sharing agreement.[1] Familiarity with all prior proceedings is assumed.

I.    *Attorneys' Fees*

        Federal Rule of Civil Procedure 23(h) allows the Court to "award reasonable

---

[1] Dkt 555, at 16 n.9, 20.

2

attorney's fees and nontaxable costs" in a certified class action. What is "reasonable" is left to the discretion of the Court, which is "intimately familiar with the nuances of the case."[2] In exercising that discretion, the Court acts as a fiduciary for the class, which it must protect from excessive awards.[3] Counsel bear the burden of establishing the reasonableness of their requested fee award.[4]

The Court may evaluate the reasonableness of a fee request using either the percentage of the fund obtained for the class or the lodestar method.[5] The latter, which the Court employs here, requires the Court to compute a reasonable lodestar amount. To do this, the Court first ascertains "the number of hours reasonably billed to the class," and then multiplies that figure by "an appropriate hourly rate."[6] That figure then may be increased by applying an appropriate multiplier. The Court's analysis is guided by the six factors that the Second Circuit described in *Goldberger v. Integrated Resources*: (1) counsel's time and labor, (2) the litigation's magnitude and complexity, (3) the risk of the litigation, (4) the quality of representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations.[7]

Counsel submit a proposed lodestar of $29,908,595.15 based on 53,814.49 hours of

---

[2] *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam).

[3] *City of Detroit v. Grinell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977), abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

[4] *Cruz v. Local Union No. 3 of Int'l Bhd. Of Elc. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994).

[5] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

[6] *Goldberger*, 209 F.3d at 47.

[7] *Id.* at 50.

fee compensable work by many individuals, including lawyers, paralegals, and analysts.[8] Counsel based their calculation on the timekeepers' historic hourly rates and capped the hourly rates for paralegals at $200 per hour and for first-level document review at $350 per hour.[9] Counsel provided the Court with information including (1) each timekeeper's hours, tasks, and historic hourly rates, (2) the categories of work for which compensation is sought, (3) biographical information for the individuals for whom compensation is sought, and (4) additional facts supporting the reasonableness of the hourly rates, including market rates for similar professionals.[10] This information revealed that counsel seek compensation for time billed by 79 attorneys,[11] ten paralegals, and four "analysts."[12]

### A.   *The Hourly Rates*

As an initial matter, the Court finds that counsel have not shown that it was appropriate to include the hourly rates of the four "analysts" in the calculation of the lodestar. Collectively, these analysts – comprising a "financial analyst," "investigator researcher," "derivatives expert," and "analyst" – billed approximately 3,027.5 hours at historic hourly rates ranging from $165 to $545 per hour, which, at the higher end, is more than many of the firms' associates were billed out at.  Counsel have included a total of $1,054,236.75 in their fee

---

[8] Dkt 555, at 17.

[9] *Id.* at 17, 21-22.

[10] *See* Dkt 555; Dkt 557-1; Dkt 562; Dkt 563.

[11] This group of attorneys included 27 partners, two counsel, 44 associates, one project attorney, and five staff attorneys.

[12] *See* Dkt 555; Dkt 557-1; Dkt 562; Dkt 563.

4

compensable lodestar for hours billed by the four "analysts," the vast majority of which were billed by counsel's "derivatives expert."

Hourly rates of non-lawyers may be included in the lodestar "if . . . consistent with market rates and practices."[13] Counsel have not provided data on the hourly rates charged by other firms for such personnel, assuming that other firms charge for them on an hourly basis. Nor have they furnished any information regarding the practices of the Bar concerning "analysts," "investigator researchers," or "derivatives experts." Indeed, the work of these types of professionals, "like that of others 'whose labor contributes to the work product,' is likely 'included in calculation of the lawyers' hourly rates,' as ordinarily is true of other overhead costs like rent, firm administrative staff, and the like."[14] Accordingly, the Court will not include the hours billed by the four analysts in the lodestar calculation.

The Court finds that the hourly rates for the remaining timekeepers – the attorneys, staff attorneys, project attorney, and paralegals – were appropriate.

B.  *Hours Billed*

The Court now addresses whether the number of hours for which counsel request compensation is reasonable. Removing the hours billed by the four analysts, counsel seek compensation for approximately 50,787 hours of work.

---

[13] *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).

[14] *Rudman v. CHC Grp. Ltd.*, No. 15-cv-3773 (LAK), 2018 WL 3594828, at *5 (S.D.N.Y. July 24, 2018) (quoting *W. Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, 99 (1991), *superseded by statute, Landgraf v. USI Film Prods., et al.*, 511 U.S. 244 (1994)).

5

The Court notes that counsel appropriately expended significant time and labor litigating this class action. Over the course of approximately six years, they have, among other things, amended the complaint twice, opposed five motions to dismiss and one motion for reconsideration, conducted at least 70 meet and confers with defendants' counsel regarding discovery, received and reviewed more than 2.4 million documents produced by defendants, obtained certification of the class, and negotiated eight separate settlements involving twelve different banks.[15]

Nevertheless, the sheer amount of hours billed, particularly with respect to document review and other discovery, indicates a certain amount of duplication and inefficiencies in the timekeeping. Even after removing the hours billed by counsel's four analysts, counsel assert that they spent approximately 16,937.1 hours on document review, 3,614.8 hours on discovery motion practice, and 5,818.4 hours on "other discovery," accounting for the majority of the 50,787 hours billed.[16] Though discovery in this case was substantial, the Court finds these numbers to be excessive and redundant.

The Court finds that the simplest way to account for the inefficiencies and redundancy of the timekeeping in these three categories is to employ a 15 percent across the board reduction of counsel's lodestar, which the Court will employ after the reductions described above regarding hourly rates are rendered.[17] Applying all of these reductions, counsel's revised aggregate

---

[15] *See* Dkt 555, at 22-23.

[16] *See* Dkt 555; Dkt 557-1; Dkt 562; Dkt 563.

[17] *See Kirsch*, 148 F.3d at 173 ("Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a

lodestar is $24,526,204.64.

C. *Multiplier*

The Court finds that a multiplier of 1.5 is reasonable here, which is well within the range of multipliers typically approved in this Circuit.[18] Such a multiplier amply accounts for the time value of money and the nearly seven-year delay in counsel's payment. Additionally, a multiplier of 1.5 adequately accounts for the risk of this litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys on both sides, as well as the efforts of the many support staff who contributed to counsel's success. After approximately six years of hard-fought litigation, counsel obtained eight class action settlements with twelve settling defendants, creating a common fund of $185,875,000.[19] This was a good result for the class and counsel deserve to be compensated adequately.[20]

Applying the 1.5 multiplier to the Court's revised aggregate lodestar, counsel's fee

---

practical means of trimming fat from a fee application.'" ( citation omitted)); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

[18] *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-cv-5450, 2018 WL 3863445, at *4 (S.D.N.Y. Aug. 14, 2018) ("The mean multiplier in this Circuit is approximately 1.55, with multipliers in antitrust and securities cases recently averaging 1.77 and 1.43, respectively."); *see also* Theodore Eisenberg *et al., Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (average lodestar multiplier of 1.61 in fifteen different antitrust class actions studied during 2009-2013).

[19] Dkt 555, at 10.

[20] *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This Court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.").

award is $36,789,306.96. Counsel request that the fee award be allocated as follows: 41.82% to Lovell Stewart, 41.82% to Lowey Dannenberg, and 16.36% to Berman.[21] In view of counsel's supplemental briefing on this issue and the opinion of counsel's expert, the Court finds that this constitutes an appropriate percentage allocation of the total attorneys' fees.[22] Accordingly, the Court allocates the total fee award of $36,789,306.96 as follows: $15,385,288.17 to Lovell Stewart, $15,385,288.17 to Lowey Dannenberg, and $6,018,730.62 to Berman.

## II.   *Litigation Expenses*

Counsel seek also reimbursement for $845,471.57 in litigation expenses.[23] The majority of the expenses are attributable to counsel's retained experts and consultants and to document discovery and computer research costs. The Court finds nothing objectionable and grants this request.[24]

---

[21] *See* Dkt 620, at 7 ("If the Court [reduces the overall attorneys' fee from $47,218,750], then Class Counsel respectfully requests that the percentages proposed above --- 41.82% to Lovell Stewart, 41.82% to Lowey Dannenberg, and 16.36% to Berman Tabacco --- still constitute an appropriate percentage allocation of the total attorneys' fees.").

[22] *See* Dkt 620, at 8-10; *id.* Ex. 2 (Hyland Decl.).

[23] *See* Dkt 555, at 37.

[24] *See In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (quoting *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (WHP), 2012 WL 3878825, *2 (S.D.N.Y. Aug. 22, 2012)) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.")

*Conclusion*

Lead counsel's application for attorneys' fees is granted in accordance with the following: lead counsel are awarded $36,789,306.96 in attorneys' fees, to be allocated as set forth above, and $845,471.57 in expenses. The Clerk shall terminate Dkt 554.

SO ORDERED.

Dated:    May 25, 2023

_____
Lewis A. Kaplan
United States District Judge